# Exhibit 1



*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

February 5, 2020

Mark J.F. Schroeder
Acting Commissioner
New York State Department
 of Motor Vehicles
6 Empire State Plaza
Albany, NY  12228
mark.schroeder@dmv.ny.gov

Theresa L. Egan
Executive Deputy Commissioner
New York State Department
 of Motor Vehicles
6 Empire State Plaza
Albany, NY  12228
theresa.egan@dmv.ny.gov

*Via email and U.S. mail*

Dear Mr. Schroeder and Mrs. Egan:

On June 17, 2019, the State of New York (New York) enacted the Driver's License Access and Privacy Act (the Act), effective December 14, 2019.[1]  The Act forbids New York Department of Motor Vehicles (DMV) officials from providing, with very limited exceptions, pertinent driver's license and vehicle registration information to the United States Department of Homeland Security (DHS).  Specifically, this Act precludes U.S. Customs and Border Protection (CBP) and Immigration and Customs Enforcement (ICE) from accessing and validating pertinent information contained in New York DMV records that is operationally critical in DHS's efforts to keep our Nation secure.  The Act also threatens to block access to other state law enforcement agencies and departments if those agencies or departments provide New York DMV records to CBP and ICE.

Over the years, CBP has utilized New York DMV records in several ways to promote national security and to enforce federal customs and immigration laws.  Having access to New York DMV information has enabled CBP to validate that an individual applying for Trusted Traveler Programs (TTP) membership qualifies for low-risk status or meets other program requirements.  An individual's criminal history affects their eligibility for TTP membership. TTP permits expedited processing into the United States from: international destinations (under Global Entry); Canada only (under NEXUS); and Canada and Mexico only (under SENTRI). TTP also allows quicker processing for commercial truck drivers entering or exiting the United States (under FAST).  Furthermore, CBP has needed New York DMV records to establish ownership and thus to determine whether a used vehicle is approved for export.

---

[1] N.Y. Veh. & Traf. § 201 (2019).

The Act prevents DHS from accessing relevant information that only New York DMV maintains, including some aspects of an individual's criminal history. As such, the Act compromises CBP's ability to confirm whether an individual applying for TTP membership meets program eligibility requirements. Moreover, the Act delays a used vehicle owner's ability to obtain CBP authorization for exporting their vehicle.

Furthermore, on a daily basis, ICE has used New York DMV data in its efforts to combat transnational gangs, narcotics smuggling, human smuggling and trafficking, trafficking of weapons and other contraband, child exploitation, exportation of sensitive technology, fraud, and identity theft. In New York alone, last year ICE arrested 149 child predators, identified or rescued 105 victims of exploitation and human trafficking, arrested 230 gang members, and seized 6,487 pounds of illegal narcotics, including fentanyl and opioids.[2] In the vast majority of these cases, ICE relied on New York DMV records to fulfill its mission. ICE also needs New York DMV information to safeguard Americans' financial and intellectual property rights.

New York DMV records have long been used by ICE law enforcement personnel to verify or corroborate an investigatory target's Personally Identifiable Information (PII), which can include their residential address, date of birth, height, weight, eye color, hair color, facial photograph, license plate, and vehicle registration information. Moreover, ICE's expeditious retrieval of vehicle and driver's license and identification information has helped identify targets, witnesses, victims, and assets. ICE has used DMV records to obtain search warrants, and DMV records are also critical for ICE to identify criminal networks, create new leads for investigation, and compile photographic line-ups. Additionally, during the execution of search and arrest warrants, ICE officers have used DMV information to identify individuals whose criminal history renders them a threat. The Act prohibits the sharing of vehicle registration information, including the identity of the person to whom the vehicle is registered, with DHS. That prohibition prevents ICE from running license plate searches, even when ICE is aware that the vehicle's owner has committed a heinous crime. In short, this Act will impede ICE's objective of protecting the people of New York from menacing threats to national security and public safety.

Although DHS would prefer to continue our long-standing cooperative relationship with New York on a variety of these critical homeland security initiatives, this Act and the corresponding lack of security cooperation from the New York DMV requires DHS to take immediate action to ensure DHS's efforts to protect the Homeland are not compromised.

---

[2] Nationwide, last year ICE arrested nearly 4,000 child predators, identified or rescued 1,400 victims of exploitation and trafficking, arrested 3,800 gang members, and seized 633,000 pounds of contraband, including fentanyl and opioids.

Due to the Act's negative impact on Department operations, DHS will immediately take the following actions:

(1) **Trusted Traveler Programs—Global Entry, NEXUS, SENTRI, and FAST**.  Because the Act prevents DHS from accessing New York DMV records in order to determine whether a TTP applicant or re-applicant meets program eligibility requirements, New York residents will no longer be eligible to enroll or re-enroll in CBP's Trusted Traveler Programs.

(2) **Vehicle Exports**.  Because the Act hinders DHS from validating documents used to establish vehicle ownership, the exporting of used vehicles titled and registered in New York will be significantly delayed and could also be costlier.

These actions are the result of an initial assessment conducted by DHS.  We will continue to review Department-wide operations related to New York to assess and mitigate the Act's adverse impact on national security and law enforcement.

Sincerely,

Chad F. Wolf
Acting Secretary