April 14, 2020

The Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' letter regarding production of a privilege log identifying all materials
              withheld from the administrative record in *State of New York v. Wolf, et al.*, 20-
              CV-1127 (JMF), and *Lewis-McCoy v. Wolf, et al.*, 20-CV-1142 (JMF).

Dear Judge Furman,

       This Court properly directed Defendants to provide, by May 1, 2020, "a privilege log
listing any documents withheld, in whole or in part, from the Administrative Record on the basis
of privilege." Docket No. 22. Defendants have sought relief from this obligation, and ask the
Court to consider Plaintiffs' Administrative Procedure Act challenges to the Trusted Traveler Ban
not on the "whole record" of agency action, 5 U.S.C. § 706, but instead on a partial—and
admittedly incomplete—record. Consistent with Second Circuit law and the Court's own prior
decisions on this precise question, the Court should reject Defendants' arguments.

       *1. The APA requires review of the "whole record."* The APA requires this Court to
conduct "plenary review of the Secretary's decision, . . . to be based on the full administrative
record that was before the Secretary at the time he made his decision."[1] *Citizens to Pres.
Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also* 5 U.S.C. § 706 (in evaluating agency
action, "the court shall review the whole record"). The Court's review is to be "thorough,
probing, [and] in-depth." *Citizens to Pres. Overton Park*, 401 U.S. at 415. Rigorous judicial
review under the APA was intended to maintain the balance of power between the branches of
government: "[I]t would be a disservice to our form of government and to the administrative
process itself if the courts should fail, so far as the terms of the [APA] warrant, to give effect to
its remedial purposes." *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41 (1950).

       The "whole administrative record" mandated by the APA "consists of all documents and
materials directly or indirectly considered by agency decision-makers," including "evidence
contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th
Cir. 1989) (emphasis omitted); *see also Schicke v. Romney*, 474 F.2d 309, 315 (2d Cir. 1973)
(noting that to conduct the "substantial inquiry" required under the APA, "the court . . . must

---

[1] Although judicial review of agency action under the APA is ordinarily limited to the
Administrative Record (subject to certain exceptions, *see Nat'l Audubon Soc'y v. Hoffman*, 132
F.3d 7, 14 (2d Cir. 1997)), the Court's review of Plaintiffs' constitutional claims in these actions
is not limited to information in the Administrative Record. *See, e.g.*, *Saget v. Trump*, 375 F.
Supp. 3d 280, 368 (E.D.N.Y. 2019); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502,
667-69 (S.D.N.Y. 2019). Plaintiffs' discussion in this memorandum of the Administrative
Record and the appropriate basis for the Court's review is therefore limited to Plaintiffs' APA
claims and not their constitutional challenges to the Trusted Traveler Ban.

have before it the full administrative record which was before the agency and on which the decision was based"); *see generally New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 630-33 (S.D.N.Y. 2019), *aff'd in part, rev'd in part, & remanded sub nom. Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019).

This "whole record" requirement is a necessary element of effective judicial review, because the standard for reviewing Plaintiffs' arbitrary-and-capricious claims under § 706(2) of the APA requires the Court to determine, *inter alia*, whether the agency "relied on factors which Congress has not intended it to consider," made a decision that "runs counter to the evidence" before it, or failed to offer a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). The Court cannot properly conduct the inquiry mandated by the APA without access to the whole record, as opposed to simply those parts of the record Defendants have selectively presented. *See, e.g.*, *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) ("Determining what constitutes an agency's informational base is vital, for review must be based on the whole administrative record.") (citing *Citizens to Pres. Overton Park*, 401 U.S. at 420).

*2. Excluding Administrative Record materials on unsubstantiated claims of privilege would subvert the Court's review.* Defendants claim that the agency may unilaterally determine which materials it may withhold from among those it considered in formulating the Trusted Traveler Ban. Docket No. 23, at 1–2. Excluding probative material—without even stating the claim of privilege or allowing it to be tested—would usurp the judicial role and undermine the Court's obligation to review the "whole record." 5 U.S.C. § 706.

Where a litigant asserts that privilege doctrines justify withholding documents germane to the litigation, a court may direct the production of "an adequately detailed privilege log" in order "[t]o facilitate its determination" of that issue. *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quotation marks omitted). This requirement is no less applicable where the litigant is a federal agency, and the legal claims implicated by the document arise under the APA.

The Second Circuit has squarely rejected the argument that no privilege log should be produced in an APA challenge, reasoning that withheld materials may have been improperly excluded and that "without a privilege log, the District Court would be unable to evaluate the Government's assertion of privilege." *In re Nielsen*, No. 17-3345, slip op. at 3 (2d Cir. Dec. 27, 2017) (order denying mandamus petition) (Ex. 1). Other courts have reached the same conclusion. *See, e.g.*, *New York v. U.S. Immigration & Customs Enf't*, No. 19-cv-8876 (JSR), 2020 WL 604492, at *1–4 (Feb. 9, 2020); *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF), Order at 1 (S.D.N.Y. July 5, 2018) (memorializing order from the bench directing defendants to produce a privilege log of materials withheld from the administrative record) (Ex. 2; Ex. 3); *see also Ctr. for Envtl. Health v. Perdue*, No. 18-cv-01763, 2019 WL 3852493, at *2–3 (N.D. Cal. May 6, 2019); *Sierra Club v. Zinke*, No. 17-cv-7187, 2018 WL 3126401, at *1, 4–5 (N.D. Cal. June 26, 2018); *Gill v. Dep't of Justice*, No. 14-cv-120, 2015 WL 9258075, at *6–7 (N.D. Cal. Dec. 18, 2015); *Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, No. 10-cv-2008, 2011 WL 1102868, at *3 (D. Kan. Mar. 23, 2011); *New York v. Salazar*, 701 F. Supp. 2d 224, 235 (N.D.N.Y. 2010) (magistrate's order), *aff'd*, 2011 WL 1938232 (N.D.N.Y. Mar. 8, 2011).

Defendants contend that material considered by agency decisionmakers in formulating the Trusted Traveler Ban is not in fact part of the Administrative Record at all if that material is arguably protected by a claim of privilege, relying primarily on *Oceana, Inc. v Ross*, 920 F.3d 855 (D.C. Cir. 2019), and other out-of-Circuit precedent.  Docket No. 23, at 2.  But Second Circuit law is clear that in an APA challenge, "the possibility that some documents not included in the record may be deliberative does not necessarily mean that they were properly excluded." *In re Nielsen*, No. 17-3345, slip op. at 3 (Ex. 1).[2]  As other courts have recognized, "[i]f a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege."  *Inst. for Fisheries Res. v. Burwell*, 16-cv-01574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017), *mandamus denied sub nom. In re Thomas E. Price*, No. 17-71121 (9th Cir. Jan. 18, 2018).

To permit otherwise would be to allow DHS to designate a record for this Court's review that is *not* the "whole record" that was before agency decisionmakers at the time of decision. The APA prohibits Defendants from so impeding the Court's review: "Even the possibility that there is here one administrative record for the public and [the] court and another for the [agency] and those 'in the know' is intolerable."  *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 54 (D.C. Cir. 1977); *see also Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (an incomplete Administrative Record is a "fictional account of the actual decision making process"); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").

*3.  The "presumption of regularity" should not be applied to enfeeble this Court's review.*  Defendants argue that the "presumption of regularity" permits unilateral exclusion of agency materials from the Administrative Record solely on the agency's unexamined claim of privilege.  Docket No. 23, at 1–2.  But the "presumption of regularity" has never been understood to mean the utter absence of judicial scrutiny, because "[a]n agency may not unilaterally determine what constitutes the Administrative Record."  *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739–40 (10th Cir. 1993); *see also New York*, 2020 WL 604492, at *3 ("[A] privilege log is not necessarily inconsistent with th[e] presumption [of regularity].  Production of a privilege log does not give the Court any occasion to expand the administrative record to encompass any document not properly included; it simply allows the Court to have some oversight of the agency's assertions of privilege, the same role it would assume with respect to any other litigant.").  To hold otherwise would allow agencies to exclude *sub silentio* relevant materials from the judicial review contemplated by the APA, which requires

---

[2] Plaintiffs recognize that the decision in *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305 (S.D.N.Y. 2012), is arguably to the contrary.  *See id.* at 312–13.  But the court in that case was addressing the plaintiff's motion to *expand* the administrative record.  *Id.* at 308. To the extent *Comprehensive Community Development* could be read to apply more broadly than its facts, the decision has since been overruled by *In re Nielsen*.  No. 17-3345, slip op. at 3 (Ex. 1); *see also New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF), Hearing Tr. 77 (S.D.N.Y. July 3, 2018) ("The first issue whether defendants need to produce a privilege log is easily resolved.  Put simply, defendants' arguments are, in my view, squarely foreclosed by the Second Circuit's December 17, 2017 rejection of similar arguments [in] *In re Nielsen*.") (Ex. 3).

reviewing courts to determine whether the agency "failed to consider an important aspect of the problem," "offered an explanation for its decision that runs counter to the evidence before the agency," or made no "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 42–43.

For this reason, judicial review of agency action—especially informal agency action—often does (and sometimes must) involve an examination of agency deliberations. Courts often conduct the probing examination required by *State Farm* by considering internal documents that evaluate evidence, discuss recommendations, weigh various considerations, and otherwise disclose agency decisionmaking.[3] The Supreme Court has in fact long recognized that internal agency considerations are a core part of the "whole record," 5 U.S.C. § 706, and may be critical to the Court's "searching and careful" judicial inquiry. *Citizens to Pres. Overton Park*, 401 U.S. at 416, 420. And, where appropriate, courts have overruled deliberative process privilege assertions in connection with materials in the agency's Administrative Record. *See, e.g.*, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921, 2018 WL 4853891, at *3 (S.D.N.Y. Oct. 5, 2018).

The deliberative process privilege of course plays an important function, but there is nothing inherent in that privilege that inevitably outweighs this Court's need to consider materials "germane to the [agency] decision and not duplicated elsewhere in the record." *Suffolk Cty. v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977). Deliberative process is, after all, a qualified privilege whose justification is "attenuated" when "the public's interest in effective government would be furthered by disclosure." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979). The Court cannot even begin to make that assessment if an agency is authorized by *ipse dixit* alone to enfeeble judicial review by excluding purportedly deliberative materials from the record of a challenged agency action.

*4. Plaintiffs need not successfully challenge the adequacy of the Administrative Record to be entitled to a privilege log.* Defendants assert that no privilege log may be required before

---

[3] *See, e.g.*, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569–70, 2573–76 (2019) (agency scientists' analyses, internal memoranda, and interagency communications); *NRDC v. Pritzker*, 828 F.3d 1125, 1136–40 (9th Cir. 2016) (agency scientists' analysis and recommendation); *NRDC v. U.S. EPA*, 808 F.3d 556, 570 (2d Cir. 2015) (agency advisory committee reports); *Native Vill. of Point Hope v. Jewell*, 740 F.3d 489, 499–505 (9th Cir. 2014) ("internal [agency] emails" and "draft scenario[s]"); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 479, 497 (9th Cir. 2011) (agency scientists' analyses); *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 768–69 (9th Cir. 2007) (agency "internal memoranda," "briefing packet," and "talking points"); *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 862–63 & n.4 (9th Cir. 2005) (agency emails); *Suffolk Cty. v. Sec'y of Interior*, 562 F.2d 1368, 1385 (2d Cir. 1977) (internal agency options document); *Tummino v. Torti*, 603 F. Supp. 2d 519, 547–48 (E.D.N.Y. 2009) (draft minutes of internal agency meeting); *NRDC v. Kempthorne*, 506 F. Supp. 2d 322, 372 (E.D. Cal. 2007) (interagency emails); *Wash. Toxics Coal. v. U.S. Dep't of Interior*, 457 F. Supp. 2d 1158, 1183–85 & n.19, 1190–93 & n.28 (W.D. Wash. 2006) (agency staff emails, draft letters, meeting minutes, and notes); *Bersani v. U.S. EPA*, 674 F. Supp. 405, 410 (N.D.N.Y. 1987) (internal agency recommendation).

either (a) Plaintiffs make a strong showing of bad faith, or (b) the Court determines that it cannot decide this matter on Defendants' curated record.  Docket No. 23, at 3.  That is not the standard in the Second Circuit.  *In re Nielsen*'s discussion of whether the federal government should be required to produce a privilege log did not turn at all on the plaintiffs' challenge to the adequacy of the Administrative Record in that case.  Instead, the Second Circuit reasoned that even privileged material may be considered in the case of a nonadjudicatory, nonrulemaking agency decision (like the one at issue here) and that "without a privilege log, the District Court would be unable to evaluate the Government's assertions of privilege."  *In re Nielsen*, No. 17-3345, slip op. at 3.  And this Court's earlier determination in *New York v. U.S. Department of Commerce* that a privilege log was required under *In re Nielsen* did not relate to the plaintiffs' challenge to the completeness of the record.  *See* Ex. 3.  The fact that the plaintiffs in *In re Nielsen* and *New York v. U.S. Department of Commerce* had separately challenged the adequacy of the administrative record does not render those cases inapposite.

Even if Plaintiffs were required to assert that the record is incomplete to overcome a presumption that the agency has properly designated the Administrative Record, publicly available information raises significant concerns that the record here will *not* in fact contain "all documents and materials directly or indirectly considered by agency decision-makers."  *Thompson*, 885 F.2d at 555 (emphasis omitted).  In fact, Defendants' counsel volunteered during the March 26 case conference that the agency expected "that it might be a voluminous amount of material that would be a portion of that privilege log," Ex. 4 (Tr. at 8)—admitting that the agency intended to present this Court with an incomplete Administrative Record.

Further, press reports indicate that on January 27, 2020—just a few weeks before Defendants implemented the Trusted Traveler Ban—the Acting Director of the DHS Office of Policy proposed retaliating against states like New York that limit federal access to state driver's license information.  *See* Hamed Aleaziz, *DHS Considered How to Punish States that Deny Access to Driver Records, a Memo Says*, BuzzFeed News (Feb. 10, 2020), https://www.buzzfeednews.com/article/hamedaleaziz/dhs-memo-drivers-records-sanctuary.  Defendants' statement in response to this report acknowledged the existence of this retaliation memo, which Defendants described as "pre-decisional."  *See id.*  To the extent any showing of bad faith is required to warrant production of a privilege log at this stage—which it is not— Defendants' concession that a high-ranking Department official recommended that the Acting Secretary retaliate against New York would clear any such hurdle.  *See, e.g.*, *Tummino v. Torti*, 603 F. Supp. 2d 519, 544–45 (E.D.N.Y. 2009); *Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997).  And absent a privilege log, the Court's ability to determine whether the "whole record" should or should not contain the DHS retaliation memo would be undermined.  *See Dopico*, 687 F.2d at 654 ("Determining what constitutes an agency's informational base . . . may itself present a disputed issue of fact when there has been no formal administrative proceeding.").

"The reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public."  *Dep't of Commerce*, 139 S. Ct. at 2575–76.  The rule Defendants propose would defeat this scrutiny and is unsupported by the APA.  Plaintiffs therefore request that the Court deny Defendants' motion.

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Chief Counsel for Federal Initiatives*
Elena Goldstein, *Deputy Chief, Civil Rights Bureau*
Daniela Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for Plaintiff in 20-CV-1127


NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: */s/ Antony P.F. Gemmell*
Antony P.F. Gemmell
Molly K. Biklen
Jessica Perry
Jordan Laris Cohen*
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, NY 10004
212-607-3300
agemmell@nyclu.org

Attorneys for Plaintiffs and Putative Class in 20-CV-1142

* Application for S.D.N.Y. admission pending