UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>                              Plaintiff,<br><br>        -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>                              Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals*,<br><br>                              Plaintiffs,<br><br>        -v-<br><br>CHAD WOLF, *in his official capacity as Acting Secretary of Homeland Security*, et al.,<br><br>                              Defendants. | No. 20 Civ. 1142 (JMF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS NEW YORK'S COMPLAINT
AND THE CLASS ACTION AMENDED COMPLAINT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:  (212) 637-2728, 2745, 2761
Fax:  (212) 637-2717
E-mail: Zachary.Bannon@usdoj.gov
           Elizabeth.Kim@usdoj.gov
           Christopher.Connolly@usdoj.gov

ZACHARY BANNON
ELIZABETH J. KIM
CHRISTOPHER K. CONNOLLY
Assistant United States Attorneys
        – Of Counsel –

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. I

TABLE OF AUTHORITIES ...................................................................................................... II

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    THE TTP DECISION DOES NOT VIOLATE NEW YORK'S EQUAL SOVEREIGNTY .................... 2

        A.    *The TTP Decision Is Sufficiently Related to New York's Data Restriction.* ................... 2

        B.    *The TTP Decision Does Not Intrude on Sensitive Areas of State and Local Policymaking.* ................................................................................................................ 3

    II.    THE TTP DECISION IS NOT UNDULY COERCIVE. ................................................................ 5

        A.    *The TTP Decision Is Not Unlawful Compulsion.* ............................................................ 6

        B.    *The TTP Decision Is Not a Financial Inducement Subject to the Coercion Doctrine.* .... 6

    III.    THE TTP DECISION HAS A RATIONAL BASIS. ..................................................................... 7

        A.    *The TTP Decision Bears a Rational Relationship to Vetting TTP Applicants.* .............. 8

        B.    *The TTP Decision Pursues a Legitimate End.* ................................................................ 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beatie v. City of New York*,
   123 F.3d 707 (2d Cir. 1997) ............................................................................................. 7, 8
*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ......................................................................................................... 9
*FCC v. Beach Communications, Inc.*,
   508 U.S. 307 (1993) ......................................................................................................... 7, 8
*Heller v. Doe by Doe*,
   509 U.S. 312 (1993) ............................................................................................................. 8
*In re Border Infrastructure Envtl. Litig.*,
   284 F. Supp. 3d 1092 (S.D. Cal. 2018) ............................................................................. 3, 4
*Jones v. Schneiderman*,
   888 F. Supp. 2d 421 (S.D.N.Y. 2012) ................................................................................... 7
*Lehnhausen v. Lake Shore Auto Parts Co.*,
   410 U.S. 356 (1973) ............................................................................................................. 7
*Mayhew v. Burwell*,
   772 F.3d 80 (1st Cir. 2014) .................................................................................................. 4
*Murphy v. NCAA*,
   138 S. Ct. 1461 (2018) ..................................................................................................... 3, 6
*NCAA v. Gov. of New Jersey*,
   730 F.3d 208 (3d Cir. 2013) .............................................................................................. 3, 4
*New York v. United States*,
   505 U.S. 144 (1992) ............................................................................................................. 6
*NFIB v. Sebelius*,
   567 U.S. 519 (2011) ......................................................................................................... 5, 6
*Northwest Austin Mun. Util Dist. No. One v. Holder*,
   557 U.S. 193 (2009) ............................................................................................................. 2
*Printz v. United States*,
   521 U.S. 898 (1997) ............................................................................................................. 6
*Shelby County v. Holder*,
   570 U.S. 529 (2013) ......................................................................................................... 2, 3
*South Carolina v. Katzenbach*,
   383 U.S. 301 (1966) ............................................................................................................. 3
*South Dakota v. Dole*,
   483 U.S. 203 (1987) ......................................................................................................... 4, 5
*State of New York v. Mnuchin*,
   408 F. Supp. 3d 399 (S.D.N.Y. 2019) .................................................................................. 6
*Steward Machine Co. v. Davis*,
   301 U.S. 548 (1937) ............................................................................................................. 5
*U.S. Dep't of Agriculture v. Moreno*,
   413 U.S. 528 (1973) ............................................................................................................. 9
*U.S. R.R. Ret. Bd. v. Fritz*,
   449 U.S. 166 (1980) ............................................................................................................. 8

*United States v. Olea*,
    No. CR 14-10304 (DPW), 2016 WL 8730167 (D. Mass. Aug. 12, 2016) .........................................4
*United States v. Ramsey*,
    431 U.S. 606 (1977)..................................................................................................................3

**Statutes**

8 U.S.C. § 1103.................................................................................................................................3
28 U.S.C. § 3704..............................................................................................................................3

**Regulations**

8 C.F.R. § 235.12(b)(2)(i)...........................................................................................................7, 8

**PRELIMINARY STATEMENT**

New York's Green Light Law restricted U.S. Customs and Border Protection ("CBP") from accessing New York Department of Motor Vehicles ("DMV") records. CBP utilized those records "to validate that an individual applying for Trusted Traveler Programs (TTP) membership qualifies for low-risk status or meets other program requirements." Dkt. No. 1-1 at 2. Accordingly, Acting Secretary of Homeland Security Chad Wolf wrote a letter (the "TTP Decision") to the New York DMV informing it that "[b]ecause the [Green Light Law] prevents [the Department of Homeland Security] from accessing New York DMV records in order to determine whether a TTP applicant or re-applicant meets program eligibility requirements, New York residents [were] no longer . . . eligible to enroll or re-enroll in CBP's Trusted Traveler Programs." *Id.* at 2.

Plaintiffs in these cases argue that the TTP Decision violates the Fifth and Tenth Amendments. In doing so, they insist that the lack of legal authority to support their claims only proves the TTP Decision's unconstitutionality. *See* Pls. Br. 18-19; *id.* 22-23. But there was nothing unusual, let alone unconstitutional, about the federal government's response to the Green Light Law. Accordingly, Plaintiffs' constitutional claims should be dismissed.[1]

---

[1] Plaintiffs argue that New York's recent amendment to the Green Light Law should alter the Court's analysis. *New York v. Wolf*, No. 20 Civ. 1127 (JMF), Dkt No. 46 ("Pls. Br.") 2 n.1. However, they avoid addressing the fact, noted in Defendants' opening brief, that New York has not yet restored CBP's access to the DMV records. *See* Def. Br. 1 n.1. In light of New York's failure to restore CBP's access to DMV records, the unimplemented amendment fails to remedy the informational gap created by the Green Light Law.

1

**ARGUMENT**

Plaintiffs fail to rebut the central premise of Defendants' motion to dismiss: the TTP Decision was justified in light of New York's decision to restrict CBP's access to the DMV records CBP required for vetting TTP applicants.

## I. The TTP Decision Does Not Violate New York's Equal Sovereignty.

The TTP Decision does not violate the principle of equal sovereignty under the Tenth Amendment because its "disparate geographic coverage is sufficiently related to the problem that it targets." *See Northwest Austin Mun. Util Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009). Plaintiffs' equal sovereignty claim further fails because the TTP Decision implicates the power to regulate international trade and travel, over which the federal government retains control. Plaintiffs' opposition brief fails to rebut these dispositive points.

### A.   The TTP Decision Is Sufficiently Related to New York's Data Restriction.

The TTP Decision applies only to New York due to the unique nature of the data restriction enacted by the state. Def. Br. 13-14. Rather than addressing that fact directly, Plaintiffs now assert that the TTP Decision is both over- and under-inclusive. Pls. Br. 6-7. They contend that the TTP Decision is over-inclusive as related to New York residents for whom the DMV maintains no records, and under-inclusive as related to former New York residents and to U.S. citizens residing in a foreign country. Pls. Br. 6.  However, the over- and under-inclusion issues that troubled the Supreme Court in *Shelby County* are not present here.  For example, Plaintiffs cannot argue that other jurisdictions have implemented similar or more-restrictive data policies than New York, but remain uncovered.  The equal sovereignty doctrine protects against distinctions *between* jurisdictions—not the means-end tailoring Plaintiffs emphasize.  *See Shelby County v. Holder*, 570 U.S. 529, 544 (2013) ("[D]espite the tradition of equal sovereignty, the Act applies to only nine States (and several additional counties)."). A law violates the principle of equal sovereignty when

it treats similarly situated jurisdictions differently and the disparate treatment is not sufficiently related to the problem it targets. *See Shelby County*, 570 U.S. at 542; *see also id.* at 541-42 ("[*c*]*overed jurisdictions* have far more black officeholders as a proportion of the black population than do *uncovered ones*") (emphasis added); *id.* at 542 ("[t]he five worst *uncovered jurisdictions* . . . have worse records than eight of the *covered jurisdictions*") (emphasis added). Even if the data restriction imposed by the Green Light Law may not affect all TTP applicants from New York, the TTP Decision's *geographic coverage* is sufficiently related to CBP's inability to vet the eligibility of TTP applicants from New York. That no other state has implemented a data restriction like that imposed by the Green Light Law "confirms the rationality of the formula." *South Carolina v. Katzenbach*, 383 U.S. 301, 331 (1966).[2]

**B.     The TTP Decision Does Not Intrude on Sensitive Areas of State and Local Policymaking.**

Plaintiffs' contention that the equal sovereignty doctrine applies beyond "sensitive areas of state and local policymaking," *Shelby County*, 570 U.S. at 545, is untenable. Defs. Br. 12-13 (collecting cases); *see NCAA v. Gov. of New Jersey*, 730 F.3d 208, 239 (3d Cir. 2013) ("[T]here is nothing in *Shelby County* to indicate that the equal sovereignty principle is meant to apply with the same force outside the context of 'sensitive areas of state and local policymaking.'"), *abrogated*

---

[2] Plaintiffs place much emphasis on the fact that the harm sought to be remedied in *Katzenbach* was entrenched racial discrimination in voting, which was aptly described by the Court as "an insidious and pervasive evil which had been perpetuated in certain parts of our country." *Katzenbach*, 383 U.S. at 309. Contrary to the intimations made by Plaintiffs, the government, of course, relies on *Katzenbach* insofar as it supplies the legal framework in which equal sovereignty claims are analyzed, not to compare the Green Light Law to literacy tests.

*on other grounds by* 138 S. Ct. 1461 (2018).[3] Plaintiffs do not cite any case in which a court suggested, let alone held, that the doctrine of equal sovereignty applies in contexts beyond the bounds of core areas of state sovereignty. The TTP Decision regulates international trade and travel, areas traditionally reserved to the federal government. *See United States v. Ramsey*, 431 U.S. 606, 619 (1977) ("The Constitution gives Congress broad, comprehensive powers '[t]o regulate Commerce with foreign nations.'") (quoting Const., Art. 1, s. 8, cl. 3). Accordingly, *Shelby County*'s equal sovereignty framework is inapplicable. *In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d at 1145 ("Here, unlike the State's power to regulate elections in *Shelby*, the authority vested in the Secretary of DHS concerning immigration and border security is broad.").

Plaintiffs' remaining equal sovereignty arguments are unavailing. For example, Plaintiffs attempt to shift the focus from the subject matter regulated by the TTP Decision to that regulated by New York's own law by asserting that the TTP Decision involves regulation of public road safety. Pls. Br. 8. But in determining whether a federal law impermissibly intrudes on state sovereignty, the focus of inquiry is the *area of regulation* – not any local interest invoked by a state or any motive attributed to the federal government that a state may surmise. *See NCAA*, 730 F.3d at 238 ("The regulation of gambling vis the Commerce Clause thus is not of the same nature as the regulation of elections pursuant to the Reconstruction Amendments."); *cf. United States v. Olea*, No. CR 14-10304 (DPW), 2016 WL 8730167, at *4 (D. Mass. Aug. 12, 2016) (distinguishing *Shelby County* from a statute that criminalized marijuana because, in part, *Shelby*

---

[3] Plaintiffs argue that the cases Defendants rely upon are distinguishable because they "involved laws of general applicability." Pls. Br. 9. That is untrue. *NCAA* involved a challenge to a law that "treats *more favorably* a single state." 730 F.3d at 239 (emphasis in original); *see also* 28 U.S.C. § 3704 (setting out exclusions to the law at issue in *NCAA*). Moreover, *In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), involved a challenge to a law that could apply only "'in the vicinity of the United States border'"—necessarily a geographic limitation. *Id.* at 1103 (quoting 8 U.S.C. § 1103).

4

*County* "involved an area of regulation traditionally reserved to the states"). New York simply cannot claim that its interest in the eligibility of its residents for expedited screening and processing at the nation's borders involves "a core sovereign state function in the same way as is a state's ability to regulate the conduct of its elections." *Mayhew v. Burwell*, 772 F.3d 80, 95-96 (1st Cir. 2014).[4]

Indeed, even accepting New York's road safety argument, its equal sovereignty claim still falls beyond the bounds of *Shelby County*'s framework. Any interest New York has in road safety is not fundamental to its sovereignty in the same manner as its power to regulate its own elections. *Compare Shelby County*, 570 U.S. at 545 (noting that the Voting Rights Act was an "extraordinary departure from the traditional course of relations between the States and the Federal Government" because it impinged the state's "power to regulate elections"), *with South Dakota v. Dole*, 483 U.S. 203 (1987) (upholding restriction of highway funding pursuant to federal initiative to increase highway safety).

## II. The TTP Decision Is Not Unduly Coercive.

Nor do Plaintiffs' complaints establish that the TTP Decision violates the Tenth Amendment's protection against undue coercion. Indirect incentives designed to influence state regulation are unduly coercive only when they are "so coercive as to pass the point at which 'pressure turns to compulsion.'" *Dole*, 483 U.S. at 211 (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 590 (1937)). Accepting Plaintiffs' allegation that the TTP Decision was made to influence New York to alter the Green Light Law, Plaintiffs have not, and cannot, plead that the TTP Decision rises to the level of impermissible coercion.

---

[4] Because the relevant inquiry is the area of regulation, Plaintiffs' suggestion that discovery is necessary to determine Defendants' true motive, Pls. Br. 12 n.5, is unavailing.

### A.     The TTP Decision Is Not Unlawful Compulsion.

The TTP Decision does not constitute an unlawful "gun to the head," *NFIB v. Sebelius*, 567 U.S. 519, 581 (2011), that leaves New York "with no real option but to acquiesce," *id.* at 582. Rather than applying this settled coercion framework, Plaintiffs argue for a *per se* rule prohibiting the federal government from passing laws to incentivize state policy where the laws are "sticks" rather than "carrots." *See* Pl. Br. 18 ("[U]nlike non-coercive grant conditions, . . . New York has no ability here to counter the harms imposed by" the TTP Decision."). While "New York may not itself establish screening processes for international travelers," *id.*, the Trusted Traveler Programs are federal programs that confer the privileges of expedited international screening and processing procedures. Even on the facts alleged by New York, it can elect to have its residents forego the programs' privileges in order to maintain the data restrictions in the Green Light Law. That "remains the prerogative of [New York] not just in theory but in fact," *Dole*, 483 U.S. at 211-12, because the harm New York alleges does not amount to "economic dragooning," *NFIB*, 567 U.S. at 582. Plaintiffs do not meaningfully grapple with Defendants' argument that the effect of the TTP Decision is not sufficiently significant to constitute unconstitutional coercion. Def. Br. 19-21. Even as alleged in New York's complaint, the potential harms suffered by New York do not leave it with "no real option but to acquiesce" to federal policy. *NFIB*, 567 U.S. at 582. Accordingly, Plaintiffs' coercion claim fails.

### B.     The TTP Decision Is Not a Financial Inducement Subject to the Coercion Doctrine.

Even placing aside the fact that the TTP Decision is not coercive, courts have not considered coercion challenges unless the federal government has indirectly induced a state to legislate in accordance with federal prerogatives through taxing and spending legislation. Undeterred, Plaintiffs argue "[t]hat the courts may not yet have had an opportunity to review this precise type of federal coercion demonstrates only how far afield the federal government's current

6

conduct has strayed." Pls. Br. 18.  Far from being novel, however, courts have long recognized that "valid federal law does not offend the Constitution simply because it seeks to affect state policies." *State of New York v. Mnuchin*, 408 F. Supp. 3d 399, 419 (S.D.N.Y. 2019) (appeal filed Nov. 26, 2019).

Plaintiffs' reliance on the Supreme Court's anti-commandeering jurisprudence for the proposition that the coercion doctrine applies beyond taxing and spending legislation is misplaced. Pls. Br. 15.  Plaintiffs miss the distinction between the anti-commandeering principle and the anti-coercion principle.  The Tenth Amendment prohibits the federal government from commandeering, that is "directly command[ing] a State" to implement a federal regulatory system, or from engaging in coercion, that is "indirectly coerc[ing] a State" to adopt a federal regulatory system.  *NFIB v. Sebelius*, 567 U.S. 519, 578 (2012).  The anti-commandeering cases cited by Plaintiffs do not suggest that the Supreme Court's coercion cases apply "regardless of the source of the federal power used to effectuate that coercion."  Pls. Br. 15-16 (citing *New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997); *Murphy v. NCAA*, 138 S. Ct. 1461 (2018)).  Moreover, Plaintiffs have failed to state a claim that Defendants have violated the anti-commandeering doctrine.  They have failed to allege, for example, that the TTP Decision "directly command[s]" New York to regulate immigration in accordance with federal objectives. Plaintiffs' attempt to bring a coercion challenge to the TTP Decision is therefore not supported by law, and contradicts the longstanding principle that the federal government may seek to influence state policy through its enactments.

### III. The TTP Decision Has a Rational Basis.

Finally, New York's attempt to transform the limited scope of review available for its Fifth Amendment claim into a searching inquiry into the motives underlying the TTP Decision fails.

### A.     The TTP Decision Bears a Rational Relationship to Vetting TTP Applicants.

New York's suggestion that "the stated basis for the Ban is untrue," Pls. Br. 19, has no bearing on rational basis analysis. To survive rational basis review, an action need only have "'plausible reasons' . . . whether or not such reasons underlay the . . . action." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997).[5] The TTP Decision needs to be supported only by a "reasonably conceivable state of facts." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). It was New York's burden "to negative every conceivable basis which might support" the TTP Decision, *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973), and New York failed to do so.[6]

Defendants' opening brief explained that CBP utilized DMV records to verify information provided in TTP applications, as applications may be denied where an individual "'provide[s] false or incomplete information on [their] application.'" Def. Br. 22 (quoting 8 C.F.R. § 235.12(b)(2)(i)). New York has not attempted to negate this plausible rationale, and its failure to do so is fatal to its Fifth Amendment claim.[7] New York's attempts to rebut Defendants' other

---

[5] New York's unimplemented amendment to the Green Light Law does not change this result. *See, e.g.*, *Jones v. Schneiderman*, 888 F. Supp. 2d 421, 426 (S.D.N.Y. 2012) ("The Second Circuit has not invalidated a statute as irrational based on changed circumstances.").

[6] Because Plaintiffs' allegations are accepted as true at the motion to dismiss stage, Defendants do not attempt to correct the factual inaccuracies presented by Plaintiffs' pleadings. However, as explained in the TTP Decision, and as further explained in a declaration in support of a response to a motion for summary judgment filed with the United States District Court for the District of Columbia, *see Jonathan Dimaio, et al. v. Wolf, et al.*, 20-445, Dkt. No. 14 (D.D.C.), the New York DMV has information used for TTP vetting that is unavailable elsewhere.

[7] To the extent New York argues that this plausible rationale is negated by its allegation that criminal records are available from other databases, Pls. Br. 22 (citing NY Compl. ¶¶ 33(d), 75), they have not explained how alternative access to criminal records is sufficient to determine whether an applicant "provide[d] false or incomplete information on [their] application." 8 C.F.R. § 235.12(b)(2)(i). Section (b)(2)(i) does not limit itself to information related to criminal history, nor does the TTP Decision. Dkt. No. 1-1 at 3 ("The Act prevents DHS from accessing relevant information that only New York DMV maintains . . . .").

8

proffered rationales are also defective. While New York alleges that criminal records are available from other sources, NY Compl. ¶¶ 33(d), 75; *but see* Class-Action Compl. ¶ 38, New York has not pleaded facts to contradict the plausible rationale that CBP may have relied on DMV records and that doing so may have been administratively convenient. New York's argument that administrative efficiency cannot be justified in light of the harms allegedly caused by the TTP Decision, Pls. Br. 21-22, runs contrary to the deferential rational basis standard. *See Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993) ("A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequity.") (quotation marks omitted).

**B.    The TTP Decision Pursues a Legitimate End.**

New York also contends that the TTP Decision does not pursue a legitimate end because it can be explained only by a desire to punish the state. Pls. Br. 22-25. Again, New York ignores the long-settled standards applicable on rational basis review: an action need only have "'plausible reasons' . . . whether or not such reasons underlay the . . . action." *Beatie*, 123 F.3d at 712; *see also U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("It is, of course, constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.") (quotation marks omitted). The Court should not accept New York's invitation to supplant its alleged rationale for the TTP Decision in place of DHS's rationale. The Supreme Court noted in *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019), that courts are "not required to exhibit a naiveté from which ordinary citizens are free," but this language came in the Supreme Court's discussion of whether a pretextual decision violates the Administrative Procedure Act's bar on arbitrary and capricious action. *Id.* at 2575 (quotation marks omitted). It did not alter the deference accorded the government's explanation for its actions on rational basis review.

In accordance with rational basis review, Defendants have set forth plausible reasons for the TTP Decision, which are consistent with the TTP Decision's stated purpose.  Specifically, the TTP Decision provided for exclusion of New York residents from TTPs  "[b]ecause the [Green Light Law] prevents DHS from accessing New York DMV records in order to determine whether a TTP applicant or re-applicant meets program eligibility requirements."  Dkt. No. 1-1 at 4.  As discussed above, this purpose sustains the TTP Decision's rationality.  Plaintiffs' Fifth Amendment claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening brief, Plaintiffs' constitutional claims should be dismissed.

Dated: May 6, 2020
      New York, NY

                                          Respectfully submitted,

                                          GEOFFREY S. BERMAN
                                          United States Attorney for the
                                          Southern District of New York

By:      /s/ Zachary Bannon
        ZACHARY BANNON
        ELIZABETH J. KIM
        CHRISTOPHER K. CONNOLLY
        Assistant United States Attorneys
        86 Chambers St. 3rd Floor
        New York, New York 10007
        Tel.:   212-637-2728, 2745, 2761
        Fax:   212-637-2717
        E-mail: Zachary.Bannon@usdoj.gov
                  Elizabeth.Kim@usdoj.gov
                  Christopher.Connolly@usdoj.gov