May 11, 2020

**Via ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

Re:  Motion to complete the Administrative Record
   *State of New York v. Wolf*, 20 Civ. 1127
   *Lewis-McCoy v. Wolf*, 20 Civ. 1142

Dear Judge Furman:

Pursuant to the Court's April 1, 2020 Order, ECF No. 22,[1] Plaintiffs jointly move the Court to compel completion of the Administrative Record underlying Acting Secretary Wolf's decision to bar millions of New Yorkers from federal Trusted Traveler Programs ("TTPs").[2] Defendants certified the completeness of the Administrative Record filed on May 1, 2020, *see* ECF No. 53, but a review of those 64 pages reveals a series of deficiencies that, left uncorrected, will prevent this Court from evaluating the Acting Secretary's decision in light of the "whole record." 5 U.S.C. § 706. *See also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[C]ourt review is to be based on the full administrative record that was before the Secretary at the time he made his decision."), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Plaintiffs met and conferred with Defendants regarding these issues on Thursday, May 7, but Defendants have not produced any additional material.[3]

   1. ***Defendants' Improper Assertions of the Law Enforcement Privilege.***

Defendants have erroneously withheld all or portions of approximately 25 documents pursuant to the law enforcement privilege. That privilege is intended to prevent disclosure of "'law enforcement techniques and procedures,' information that would undermine 'the confidentiality

---

[1] Unless otherwise noted, all docket citations refer to the *Lewis-McCoy* docket.
[2] Plaintiffs do not seek extra-record discovery at this time, but may seek leave to do so if additional materials produced by Defendants — in relation to this motion or otherwise — demonstrate that extra-record discovery is warranted.
[3] During the same discussion, Plaintiffs advised Defendants that certain items on the privilege log did not have sufficient specificity to support Defendants' claims of privilege or comply with Local Rule 26.2. *See, e.g.* Ex. 1, Defendants' Privilege Log, Priv_008 (identifying record as a "deliberative document" described as containing "internal communications" without specifying any author or recipient); *id.*, Priv_081 (same with respect to "internal draft notes"). Because Defendants are still determining whether to provide a replacement privilege log, Plaintiffs do not move to compel on this ground at this time.

of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise . . . interfere[] with an investigation.'" *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (quoting *Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988)).  Defendants bear the burden of "show[ing] that the documents contain information" within these well-defined categories.  *Id.*  They have not met that burden here.

First, Defendants have redacted information under the law enforcement privilege that appears to be of such a basic and general nature that it could not plausibly implicate any categories of information the privilege was intended to protect.  *See, e.g.*, DHSGLL011–12 (redacting number of TTP applicants and members who are New York residents, frequency of northern land border crossings and air arrivals into New York area, and export volume of New York-titled vehicles); DHSGLL034 (same); DHSGLL018–19 (redacting description of DMV data access restrictions imposed by states other than New York); DHSGLL032 (same, under the heading "Other States and Territories Restricting DMV Information Access to DHS"); DHSGLL023 (redacting one-sentence description of general, long-term operational impacts on ICE of lack of access to DMV data); DHSGLL037 (same).  Defendants' privilege log, which invokes the law enforcement privilege by conclusory reference to documents containing "law enforcement sensitive information" regarding unspecified "systems," "techniques," or "procedures," does not advance their burden.  *See, e.g.*, Ex. 1, Defendants' Privilege Log, Priv_032, Priv_052; *see also In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions.") (internal citations and quotation marks omitted).

Second, even if the law enforcement privilege could apply to some information Defendants have withheld from the Administrative Record, the privilege is "only a qualified privilege," and "in deciding whether to enforce it, the Court must balance the alleged need for the information against the public's interest in non-disclosure."  *Murchison-Allman v. City of New York*, 115 F.Supp.3d 447, 448 (S.D.N.Y. 2015) (internal citations omitted); *see In re Sealed Case*, 856 F.2d 268, 272 (listing balancing factors).  That balance weighs decidedly in Plaintiffs' favor here.  With respect to the TTP Handbook in particular, Defendants have withheld basic information about CBP's vetting process, including even the standards CBP uses to assess applicants.  *See, e.g.*, DHSGLL050 (redacting from "overview" section of TTP handbook portion of one sentencing describing fingerprinting process); DHSGLL052 (redacting standards according to which TTP applicants are vetted); DHSGLL054 (redacting examples of background records that would not automatically require denial of TTP membership); DHSGLL057 (redacting Risk Assessment Worksheet)[4]; DHSGLL058 (redacting TTP Handbook section entitled "Supervisory Discretion at the Vetting Center"); DHSGLL060 (redacting list of "denial codes" and possible bases for denial).  And with respect to at least two memoranda in the Administrative Record, Defendants have disclosed information they considered about New York's restrictions on DMV

---

[4] Notably, other components of DHS disclose as a matter of course comprehensive, detailed information about risk assessment tools that much more directly implicate law enforcement.  *See, e.g.*, ICE Parole-based National Detention Standards, Section 2.2., available at https://www.ice.gov/doclib/detention-standards/2011/2-2.pdf.

access while redacting similar information regarding other states. *See* DHSGLL018–19, 32.[5] That information cannot reasonably be expected to interfere with TTP vetting; is not otherwise especially sensitive; is not available to Plaintiffs by other means; and is critical to understanding the decision-making process at issue in this litigation, which affects millions of New York residents and implicates important issues of state sovereignty. *See Floyd v. City of New York*, 739 F.Supp.2d 376, 383–86 (S.D.N.Y. 2010) (law enforcement privilege overcome based on balancing of similar interests).

## 2. *Defendants' Improper Assertions of the Deliberative Process Privilege.*

Defendants also have asserted the deliberative process privilege with respect to vast swaths of the Administrative Record, withholding all or part of approximately 175 documents on the basis of that privilege. Those documents were improperly withheld.

The deliberative process privilege does not apply at all where, as here, "the party's cause of action is directed at the government's intent in rendering its policy decision," *Children First Found. v. Martinez*, No. 04-CV-0927, 2007 WL 4344915 at *7 (N.D.N.Y. Dec. 10, 2007), and thus "the deliberative or decisionmaking process is the 'central issue,'" *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011). "The historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery." *Children First Found.*, 2007 WL 4344915 at *7 (citing cases). Here, Plaintiffs based their APA claims in part on allegations that Defendants enacted the Ban in bad faith, and that Defendants' purported security concerns underlying the ban were a pretext for political retaliation. *See Tummino v. Torti*, 603 F. Supp. 2d 519, 541–42 (E.D.N.Y. 2009), *amended sub nom. Tummino v. Hamburg*, No. 05-CV-366 ERK VVP, 2013 WL 865851 (E.D.N.Y. Mar. 6, 2013) ("[P]roof of subjective bad faith by [agency decision-makers] . . . generally constitutes arbitrary and capricious action") (quoting *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C.Cir.1996) (bad faith is "material to determining whether the Government acted arbitrarily"). Plaintiffs could hardly prove the improper intent of agency decisionmakers were Defendants permitted to shield evidence of their true motivations using the deliberative process privilege.

And even were the deliberative process privilege not categorically inapplicable, it surely does not apply to most of the material withheld here, which is purely factual and thus not deliberative at all. *See Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991). Throughout the Administrative Record, Defendants have redacted information that does not appear to be deliberative, but rather is factual or part of Defendants' fact-gathering process. *See, e.g.* DHSGLL006–07 (redacting part of factual compilation of areas impacted by CBP's inability

---

[5] Whether Defendants actually assert the law enforcement privilege with respect to this information is unclear. Here and elsewhere in the Administrative Record, Defendants have asserted multiple privileges in a single document without specifying the privilege that applies to each of multiple redactions. Plaintiffs raised this concern with Defendants during the parties' May 7 meet and confer, and we understand that Defendants will clarify their assertions of privilege for each redaction.

to use New York's DMV databases through NLETS); DHSGLL016 (redacting TSA's response to "What information is currently available to your Component and how is it accessed?); DHSGLL017 (redacting TSA's response to "Are there alternative ways to obtain information contained in the DMV database?"); DHSGLL032 (redacting similar response from ICE) DHSGLL018 (redacting portion of list of states that restrict DMV access and description of restrictions); DHSGLL032 (same). The deliberative process privilege simply does not shield facts from the Court's review. *See Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) ("The privilege does not, . . . as a general matter, cover 'purely factual' material.") (quoting *Hopkins v. United States Dep't of Housing & Urban Dev.*, 929 F.2d 81, 85 (2d Cir.1991)); *E.B. v. N.Y.C. Bd. of Educ.*, 233 F.R.D. 289, 292 (E.D.N.Y. 2005) ("[F]actual findings and conclusions, as opposed to opinions and recommendations, are not protected.") (internal quotation marks and citation omitted).

Finally, even if the deliberative privilege otherwise applied, it must be overcome here. The deliberative process privilege is qualified and "may be overridden in circumstances where reason and experience suggest that the claim of privilege should not be honored." *Citizens Union of City of N.Y. v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 159 (S.D.N.Y. 2017); *see also In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979) (justification for the privilege is "attenuated" when "the public's interest in effective government would be furthered by disclosure."). "In assessing whether and to what extent the privilege bars disclosure, . . . relevant factors for the Court to consider include:"

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Winfield v. City of New York*, No. 15CV05236LTSKHP, 2018 WL 716013, at *6 (S.D.N.Y. Feb. 1, 2018), *decision set aside in part on other grounds sub nom. Noel v. City of New York*, No. 15 CV 5236-LTS-KHP, 2018 WL 6786238 (S.D.N.Y. Dec. 12, 2018).

These factors weigh strongly in favor of disclosure here. The withheld materials are relevant to understanding Defendants' decision-making process, the case involves important issues of state sovereignty affecting millions of people, the federal government is a party to the litigation, and there is little risk that disclosure will deter Defendants' from legitimate deliberative processes in the future. *See, e.g.*, *Allstate Ins. Co. v. Serio*, No. 97 CIV. 0023, 1998 WL 477961, at *2 (S.D.N.Y. Aug. 13, 1998). Moreover, disclosure is especially warranted where it "may shed light on government misconduct." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). Here, the documents withheld may shed light on whether, as Plaintiffs allege, Defendants' enacted the ban on New York residents' TTP enrollment and reenrollment in bad faith. Defendants should not be able to hide behind a privilege intended to protect good-faith government deliberations in order to cover up such conduct. *See id.* ("[T]he privilege is routinely denied" when "shielding internal government deliberations . . . does not serve 'the public's interest in honest, effective government.'").

\*\*\*

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Defendants to complete the Administrative Record.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: */s/ Antony P.F. Gemmell*
Antony P.F. Gemmell
Molly K. Biklen
Jessica Perry
Jordan Laris Cohen
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, NY 10004
212-607-3300
agemmell@nyclu.org

*Attorneys for Plaintiffs in 20 Civ. 1142*

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Elena Goldstein*
Elena Goldstein, *Deputy Chief, Civil Rights Bureau*
Matthew Colangelo, *Chief Counsel for Federal Initiatives*
Daniela Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6201
elena.goldstein@ag.ny.gov

*Attorneys for Plaintiff in 20 Civ. 1127*