UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                  :
STATE OF NEW YORK,                                :
                                                  :
                              Plaintiff,          :          20-CV-1127 (JMF)
                                                  :
             -v-                                  :
                                                  :
CHAD F. WOLF, *in his official capacity as Acting* :
*Secretary of Homeland Security*, et al.,         :
                                                  :
                              Defendants.         :
                                                  :
----------------------------------------------------------------------X
                                                  :
R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of*   :
*themselves and all similarly situated individuals*, :
                                                  :          20-CV-1142 (JMF)
                              Plaintiffs,         :
                                                  :
             -v-                                  :          OPINION AND ORDER
                                                  :
CHAD WOLF, *in his official capacity as Acting*   :
*Secretary of Homeland Security*, et al.,         :
                                                  :
                              Defendants.         :
                                                  :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiffs in these cases challenge a decision by the Acting Secretary of Homeland

Security to prohibit New York residents from enrolling or re-enrolling in the Trusted Traveler

Programs ("TTP"), including the Global Entry Program, in part on the ground that the decision

violates the Administrative Procedure Act ("APA").  *See* 20-CV-1127, ECF No. 1, ¶¶ 28, 51,

114-134; 20-CV-1142, ECF No. 1, ¶¶ 2, 90-93.[1]  On May 22, 2020, Defendants produced a

---

[1]        Unless otherwise noted, all ECF citations are to Docket No. 20-CV-1127.

revised Administrative Record ("AR"), ECF No. 54-1, as well as an updated privilege log noting

several redactions in the AR and 170 documents that Defendants withheld from the AR in full on

the basis of the deliberative-process privilege, the law-enforcement privilege, the attorney-client

privilege, or the attorney work-product doctrine, ECF No. 55-1.  Plaintiffs now move to compel

Defendants to produce all documents withheld or redacted on these grounds.  *See* ECF No. 50.

For the reasons that follow, the Court largely sustains Defendants' privilege invocations, but

orders disclosure of a few withheld or redacted documents.

## APPLICABLE LEGAL PRINCIPLES

### A.  The Deliberative-Process Privilege

Defendants assert that most of the documents at issue are protected under the

deliberative-process privilege ("DPP").  The DPP is a "sub-species" of the work-product

doctrine designed to protect the "process by which governmental decisions and policies are

formulated."  *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (internal quotation

marks omitted).  It does so by "preserving and encouraging candid discussion between officials."

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).  The DPP allows

Defendants to withhold "an inter- or intra-agency document . . . if it is: (1) predecisional, *i.e.*,

prepared in order to assist an agency decisionmaker in arriving at his decision, and (2)

deliberative, *i.e.*, actually related to the process by which policies are formulated."  *Id.*

(alterations and internal quotation marks omitted).  The DPP typically protects

"recommendations, draft documents, proposals, suggestions, and other subjective documents

which reflect the personal opinions of the writer rather than the policy of the agency."  *Dipace v.

Goord*, 218 F.R.D. 399, 403 (S.D.N.Y. 2003) (quoting *Grand Cent. P'Ship, Inc. v. Cuomo*, 166

F.3d 473, 482 (2d Cir. 1999)).  Notably, however, the DPP is only a "qualified" privilege and,

thus, must be balanced "against the need of the particular litigant for access to the privileged information." *MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (internal quotation marks and emphasis omitted).

Plaintiffs contend that the "deliberative process privilege does not apply at all where, as here, 'the party's cause of action is directed at the government's intent in rendering its policy decision.'"  ECF No. 50, at 3 (quoting *Children First Found. v. Martinez*, No. 04-CV-0927 (NPM/RFT), 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007)).  Separate and apart from the fact that such a rule would make it too easy to obtain otherwise privileged materials, *Children First Foundation* was not an APA case: It concerned claims under 42 U.S.C. § 1983 for viewpoint discrimination.  *Id.* at *2.[2]  The court relied on a case from the D.C. Circuit indicating that, in discrimination cases, the DPP may not apply at all.  *Id.* at *7 (citing *In re Subpoena Duces Tecum Served on the Off. of the Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("[I]t seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination.")).  But the same is not true in APA cases, which ordinarily do not concern the agency decision-maker's subjective intent.  *See In re Subpoena Duces Tecum Served on the Off. of the Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998).  The relevance of evidence of the agency's intent, if any, may be considered as part of the balancing test for determining whether the privilege, although applicable, is overcome by the need for disclosure.  *See In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011).  But the Court is not persuaded by Plaintiffs' assertion of a categorical rule.

---

[2]  To be sure, this is not solely an APA case either, as Plaintiffs also bring constitutional claims.  But their constitutional claims are the subject of a pending motion to dismiss.  *See* ECF No. 29.  The Court will address whether and to what extent Plaintiffs are entitled to discovery with respect to their constitutional claims if or when that motion is denied.

**B.  The Law-Enforcement Privilege**

Defendants also assert that several documents are protected under the law-enforcement privilege ("LEP").  The LEP protects "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witnesses and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation."  *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (internal quotation marks, alterations, and ellipsis omitted).  Like the DPP, the privilege is "qualified, not absolute," and thus subject to a balancing test.  *Id.* at 945.  Significantly, however, the presumption against lifting the privilege is "pretty strong."  *Goodloe v. City of New York*, 136 F. Supp. 3d 283, 294 (E.D.N.Y. 2015) (quoting *In re City of New York*, 607 F.3d at 945).

**C.  The Attorney-Client Privilege and Work-Product Doctrine**

Finally, Defendants assert that several documents are protected by the attorney-client privilege ("ACP") and work-product doctrine.  "In civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance."  *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  A party invoking the attorney-client privilege must show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."  *Id.* at 419.  The work-product doctrine protects "attorneys' mental impressions, opinions or legal theories concerning specific litigation."  *Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 283 (S.D.N.Y. 2013) (internal quotation marks omitted).  The latter is qualified, while the attorney-client privilege is absolute.  *Id.*

**DISCUSSION**

The Court has reviewed the documents at issue *in camera*.  Applying the standards set

forth above, the Court concludes that the following documents were properly withheld and that,

to the extent an applicable privilege is only qualified, Plaintiffs' need for the documents does not

outweigh the relevant privilege:

- Document Nos. PRIV_046, PRIV_048 to PRIV_052, PRIV_060 to PRIV_066, PRIV_072 to PRIV_073, PRIV_075 to PRIV_080, PRIV_082 to PRIV_084, PRIV_086 to PRIV_108, PRIV_112 to PRIV_165, and PRIV_167 to PRIV_170, which are draft documents and internal agency communications about various drafts and revisions, were properly withheld on the basis of the DPP.  *See Nat'l Res. Def. Council v. U.S. EPA*, No. 17-CV-5928 (JMF), 2019 WL 4142725, at *7 (S.D.N.Y. Aug. 30, 2019).[3]

- AR page numbers DHSGLL007 to DHSGLL008, and DHSGLL011 to DHSGLL014, and Document Nos. PRIV_004 to PRIV_005, PRIV_014, PRIV_016 to PRIV_021, PRIV_024 to PRIV_028, PRIV_030, PRIV_036 to PRIV_045, PRIV_054 to PRIV_057, and PRIV_109 to PRIV_111, which constitute "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer," were properly withheld or redacted on the basis of the DPP.  *See Dipace*, 218 F.R.D. at 403 (internal quotation marks omitted).

- AR page numbers DHSGLL050, and DHSGLL062 to DHSGLL064 were properly redacted on the basis of the LEP.  *See United States Longueuil*, 567 F. App'x 13, 16 (2d Cir. 2014) (summary order) (stating that the LEP was "designed to prevent disclosure of law enforcement techniques and procedures . . . [and] to safeguard the privacy of individuals involved in an investigation" (quoting *In re Dep't. of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988) (internal quotation marks omitted)).

- Document Nos. PRIV_002 to PRIV_003, PRIV_006, PRIV_010 to PRIV_013, PRIV_015, PRIV_023, PRIV_029, PRIV_033 to PRIV_035, PRIV_058 to PRIV_059, PRIV_067 to PRIV_071, PRIV_074, and PRIV_085 were properly withheld on the basis of the ACP.

Next, the Court has identified several sets of documents that were improperly withheld or

redacted.  First, Defendants improperly withheld Document Nos. PRIV_007 and PRIV_166 and

---

[3]    Document No. PRIV_047, a Memorandum of Agreement, was improperly withheld on the basis of the DPP, but it is already in the AR (at DHSGLL042 to DHSGLL047A), and thus need not be produced again.

improperly redacted a portion of AR page number DHSGLL017 under the DPP because they involve purely factual material.  It is well established that the DPP "does not extend to purely factual material."  *See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 736, 757-58 (S.D.N.Y. 2011) (finding that a "briefing paper" was not protected because it "consists of factual reporting, rather than an agency's interpretation of the facts"); *see also Citizens Union of City of N.Y. v. Attorney Gen. of N.Y.*, 269 F. Supp. 3d 124, 161-62 (S.D.N.Y. 2017) (noting that "research conducted for use in drafting" may not be protected under the DPP, which, unlike the legislative privilege, does not extend to purely factual material).  Moreover, disclosure would not "reveal an agency's or official's mode of formulating or exercising policy-implicating judgment."  *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992).  Nor does Document No. PRIV_0166 qualify for the LEP, as Defendants fail to carry their burden of establishing that the statistics and general factual information it contains would jeopardize law enforcement sources, witnesses, personnel, or investigations, or would otherwise implicate information the LEP was designed to protect. Accordingly, Document Nos. PRIV_007 and PRIV_166 must be produced in full.

For the same reasons, portions of Document Nos. PRIV_008, PRIV_022, and PRIV_031 must be produced.  Although some portions of these documents were properly withheld pursuant to the DPP, they contain purely factual information that can be produced.  Specifically, for Document No. PRIV_008, Defendants may redact the fourth, fifth, and sixth bullet points under the "Background" section.  For Document No. PRIV_022, Defendants may redact everything except for the top email concerning the number of New York State titled vehicles exported in 2019.  For Document No. PRIV_031, Defendants may redact the portion of the top email following "while others are city or county-level."  The unredacted portion of PRIV_031 does not

qualify for the LEP, as it merely discusses in general terms the level of access that the Department of Homeland Security ("DHS") has to various state databases.  Accordingly, subject to these redactions, Defendants must produce these documents.

Next, the Court turns to a set of documents to which the DPP applies, but for which the balance of competing considerations is close.  These are the redactions on AR page numbers DHSGLL039 (beginning below "Options for addressing laws . . .") to DHSGLL041, and Document Nos. PRIV_001, PRIV_009, PRIV_053, and PRIV_081.  For each, the Court must determine "whether the public interest in disclosing the document is outweighed by the government's interest in preventing disclosure," considering factors such as "the relevance of the evidence sought, the availability of other evidence, the role for the government in the litigation, issues involved and the impact on the effectiveness of government employees, and the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable."  *City of New York v. Grp. Health, Inc.*, No. 06-CV-13122 (RJS) (RLE), 2008 WL 4547199, at *3 (S.D.N.Y. Oct. 10, 2008) (internal quotation marks omitted).  Balancing these considerations, the Court concludes that Defendants properly withheld Document Nos. PRIV_009, PRIV_053, and PRIV_081, and properly redacted AR page numbers DHSGLL039 (beginning below "Options for addressing laws . . .") to DHSGLL041.[4]  These documents reflect internal discussions about potential policy responses — the core of the DPP — including options that were not ultimately selected and therefore not relevant to this litigation.  Thus, any interest in disclosure is outweighed by the important interests protected by non-disclosure.

---

[4]     The Court notes that, in Defendants' privilege log, nothing is listed in the "Privilege" column for Document No. PRIV_081.  *See* ECF No. 55-1, at 10.  The Court presumes, based on the "Privilege Description" column, that Defendants withheld the document on the basis of the DPP.  *See id.*

The balance weighs differently, however, for Document No. PRIV_001.  The public interest in disclosure of that document is strong enough to require that it be produced, as it bears directly on the "searching and careful" inquiry that the Court must conduct in its review under the APA.  *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 540 (S.D.N.Y. 2019) (internal quotation marks omitted).  Because Plaintiffs in both cases allege that the decision to terminate New Yorkers' eligibility for the TTP was arbitrary and capricious, the Court must evaluate whether "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* (internal quotation marks omitted).  The record reflects several justifications given by the agency for its decision, including DHS's inability to "determine whether a TTP applicant or re-applicant meets program eligibility requirements" without DMV records, the importance of maintaining access to state DMV records for "DHS's efforts to keep our Nation secure," and the "lack of security cooperation from the New York DMV."  DHSGLL001 to DHSGLL003; *see also* DHSGLL039 to DHSGLL040 (noting as an "[o]ption for addressing laws that restrict access to state DMV information" the decision to "[e]xclude residents of uncooperative states from participating in DHS Trusted Traveler Programs").  Document No. PRIV_001 bears on and clarifies these justifications and others present in the AR.  The need for disclosure is strengthened by the seriousness of the litigation and the limited availability of other evidence.  Finally, the risk of chilling agency deliberations is limited because the views expressed in Document No. PRIV_001 were incorporated in the agency's justifications of the Acting Secretary's decision.  *Cf. Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (noting that documents

can even lose DPP protection altogether if they are "adopted, formally or informally, as the agency position on an issue").  Ultimately, the public's interest in disclosure outweighs competing interests in non-disclosure.  Accordingly, Defendants shall produce the document.

Next, the Court concludes that there is a set of documents over which Defendants improperly asserted the LEP: AR page numbers DHSGLL018 to DHSGLL020, and Document No. PRIV_032.  These documents do not "contain information that the law enforcement privilege is intended to protect."  *In re City of New York*, 607 F.3d at 948.  Instead, they simply reflect the extent to which various states have limited DHS access to state DMV databases and what information DHS cannot access, as a result — the same information Defendants produced with respect to New York, *see* DHSGLL018; DHSGLL020 to DHSGLL021.  Accordingly, Defendants shall produce these documents.

In addition, the Court concludes that there is a set of documents to which the LEP attaches, but for which the strong presumption against disclosure is overcome: AR page numbers DHSGLL052, and DHSGLL054 to DHSGLL061.  The redacted material in these documents concerns the vetting process and standards for evaluating applicants for the TTP.  "To rebut that strong presumption, the party seeking disclosure bears the burden of showing (1) that the suit is non-frivolous and brought in good faith, (2) that the information sought is [not] available through other discovery or from other sources, and (3) that the party has a compelling need for the privileged information.  If the presumption against disclosure is successfully rebutted (by a showing of, among other things, a 'compelling need'), the district court must then weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required."  *In re City of New York*, 607 F.3d at 948 (internal quotation marks and citations omitted).  Here, the requirements for

overcoming the presumption against disclosure have been met: This suit is not frivolous and has been brought in good faith; the material is unique because it comes from the authoritative Consolidated Trusted Traveler Programs Handbook; and there is a "compelling need" for the information because a primary justification for Acting Secretary Wolf's decision was the assertion that losing access to DMV records "compromises CBP's ability to confirm whether an individual applying for TTP membership meets program eligibility requirements." DHSGLL002.  Evaluating that assertion requires an understanding of the vetting process and relevant standards, especially concerning criminal offenses.  *See id.* (specifically citing the lack of access to "some aspects of an individual's criminal history").  Defendants argue that "[e]xposing how CBP administers its programs and utilizes certain information including DMV data to adjudicate TTP applications would allow future TTP applicants and individuals crossing the border to exploit the information deficit created by the Green Light Law, hampering CBP's ability to conduct effective risk assessments of travelers."  *See* ECF No. 55, at 4; ECF No. 55-3, ¶¶ 9-15.  But the information at issue primarily concerns the discretion exercised in the vetting process, not firm rules that could conceivably be exploited.  Ultimately, the need for this evidence outweighs the countervailing interests Defendants identify, especially because, as Defendants acknowledge, DHS has already "made a considerable amount of information public regarding how vetting is conducted."  ECF No. 55-3, ¶¶ 11, 15.  Accordingly, Defendants shall produce these documents, except that Defendants may redact Section 5.10 appearing on AR page number DHSGLL061, as this information concerns law enforcement investigatory procedures outside the vetting process for TTP applicants, and disclosure would pose a significant risk to ongoing investigations.

Finally, the Court concludes that Defendants improperly redacted AR page numbers DHSGLL025 and DHSGLL038 to DHSGLL039 (up to "Options for addressing laws that restrict access . . ."). Defendants properly assert the DPP over some of the redacted information — specifically, those portions discussing long-term policy initiatives that are not relevant to this litigation. But Defendants also assert the DPP over information that directly concerns statements in the same paragraphs of the document that Defendants have chosen to disclose, including the assertion that "[w]ithout the ability to obtain DMV information independently and expeditiously, ICE HSI investigations and operations will suffer serious security consequences." DHSGLL025. By choosing to disclose these assertions, Defendants waived their right to invoke the DPP over statements in the same document qualifying or explaining those assertions. *See Am. Civil Liberties Union v. Dep't of Defense*, No. 17-CV-3391 (PAE), 2020 WL 419757, at *13 (S.D.N.Y. Jan. 27, 2020) (noting that the deliberative process privilege may be waived by voluntary disclosure of "all or part of a document"). In the alternative, Defendants' selective disclosure has shifted the balance of competing interests in favor of disclosure of the related statements. Defendants have also failed to demonstrate that the information qualifies under the LEP, as it reveals nothing specific that would jeopardize law enforcement efforts. Accordingly, for AR page number DHSGLL025, Defendants may redact the final two sentences in the first paragraph of subsection 6(a), as well as the entire second paragraph of subsection 6(a). For AR page numbers DHSGLL038 to DHSGLL039 (up to "Options for addressing laws that restrict access . . ."), Defendants may redact the final three sentences on AR page number DHSGLL038. Subject to these redactions, Defendants shall produce these documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is GRANTED in part and DENIED in part. In particular, no later than **June 17, 2020**, Defendants shall disclose the following in full: AR page numbers DHSGLL017 to DHSGLL020, DHSGLL052, DHSGLL054 to DHSGLL060, and Document Nos. PRIV_001, PRIV_007, PRIV_032, and PRIV_166.  No later than the **same date**, Defendants shall disclose Document Nos. PRIV_008, PRIV_022, and PRIV_031, and AR page numbers DHSGLL025, DHSGLL038 to DHSGLL039, and DHSGLL061 subject to the redactions approved above.  In all instances, Defendants may redact email addresses, telephone numbers, and other contact information, consistent with the Court's Order of April 29, 2020.  *See* ECF No. 45.  In addition, by **June 15, 2020**, the parties shall meet and confer and submit an agreed-upon proposed protective order governing the documents to be disclosed pursuant to this Opinion and Order.

The Clerk of Court is directed to terminate 20-CV-1127, ECF No. 50, and 20-CV-1142, ECF No. 56.

SO ORDERED.

Dated: June 10, 2020
     New York, New York

_____
JESSE M. FURMAN
United States District Judge