UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>                          Plaintiff,<br><br>  -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>                         Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals*<br><br>                         Plaintiffs,<br><br>  -v-<br><br>CHAD WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>                         Defendants. | No. 20 Civ. 1142 (JMF) |

**DECLARATION**

I, Scott Glabe, hereby state as follows:

1. I am an Assistant Secretary in the Office of Strategy, Policy, and Plans within the U.S. Department of Homeland Security (DHS). I have held this position since October 2019. In this position, I develop and coordinate border and immigration strategies, policies, and strategic planning for DHS, working closely with DHS components, including U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE"). I also advise the Secretary on policy matters within my portfolio.

2. I am familiar with the complaints filed in *State of New York v. Wolf*, Case No. 20-cv-1127 and *Lewis-McCoy v. Wolf*, Case No. 20-cv-1142, filed in the United States District Court for the Southern District of New York and plaintiffs' claims therein.

3. The purpose of this declaration is to provide background on the importance of information sharing within the federal government and to address the impact of New York Driver's License Access and Privacy Act, also known as the "Green Light" Law, on information sharing. This declaration is based on my personal knowledge, as well as information conveyed to me by my staff and other knowledgeable DHS personnel in the course of my official duties and responsibilities.

### A. Information Sharing is Critical to the Agency's Mission

4. Information-sharing among law enforcement agencies is at the heart of DHS's mission. The National Commission on Terrorist Attacks Upon the United States ("9-11 Commission"), an independent, bipartisan commission created by congressional legislation and President George W. Bush in late 2002, was tasked with preparing a full account of the circumstances surrounding the September 11, 2001 terrorist attacks, as well as providing recommendations designed to guard against future attacks.[1] Among the findings and recommendations of the 9-11 Commission's report was the critical importance of information sharing across the federal government and the need for the federal government to develop policies and systems to ensure that information was freely shared across agencies—including immigration and custom agencies.[2]

---

[1] National Commission on Terrorist Attacks Upon the United States, www.9-11commission.gov (Sept. 24, 2004).
[2] National Commission on Terrorist Attacks Upon the United States, *The 9-11 Commission Report*, p. 416–19 (July 22, 2004).

5. The Homeland Security Act of 2002 ("the Act") and Presidential Executive Order 13356 ("Executive Order 13356") set forth the national effort to improve information sharing and defined the Department's initial role in this effort. The Act provides that the Secretary shall have access to all information that the Secretary considers necessary relating to, among other things, threats of terrorism against the United States, and infrastructure or other vulnerabilities of the United States to terrorism, that may be possessed by an agency in the federal government.[3] The Act further requires the Secretary to facilitate terrorism-related information sharing within the federal government, as well as with state and local governments, as appropriate.[4]

6. The critical role of the Department in facilitating information sharing has been expanded and refined in subsequent statutes, such as the Intelligence Reform and Terrorism Prevention Act of 2004, as amended.

7. Fostering information sharing is a core DHS mission. Congress and the President have made it clear that one of the Department's core missions is to create the technological and organizational infrastructure necessary to promote the sharing of information regarding terrorism, homeland security, law enforcement, weapons of mass destruction, and incidents of all types within DHS's jurisdiction, across the federal government, and with state, local, tribal, territorial, private sector and international partners.

8. Since the Department was established, it has pursued policies and developed systems to ensure that information amongst its components—and the larger intelligence and law enforcement community—is free flowing. To do otherwise would be to invite the breakdown in information sharing that contributed to the September 11, 2001 terrorist

---

[3] 6 U.S.C. §§ 122(a)(1), 642.
[4] 6 U.S.C. § 122(d)(2).

attacks. One of those policies is the DHS Policy for Internal Information Exchange and Sharing ("One DHS Policy"), issued in February 2007, which is guided by the principle that it is critical to the security of our Nation that DHS shares information in an environment without unnecessary limitations or constraints. The One DHS Policy provides that no DHS component should consider another DHS component to be a separate agency for information-sharing purposes. Furthermore, the One DHS Policy prohibits DHS components from promulgating information-handling guidelines or entering into agreements that are inconsistent with any aspect of the policy without express permission from the Secretary.

### B. New York Green Light Law Criminalizes Critical Information Sharing

9. In 2019, New York enacted the New York Driver's License Access and Privacy Act (the "Green Light Law"), effective December 16, 2019. As a direct result of New York's implementation Green Light Law, CBP and ICE are prevented from accessing and validating information contained in New York Department of Motor Vehicles ("DMV") records that is operationally critical to the efforts of DHS to keep our officers and our Nation secure.

10. On February 5, 2020, the Acting Secretary of Homeland Security sent a letter to the New York DMV outlining the impact of the Green Light Law on DHS's operations. Specifically, that letter outlined the critical nature of New York DMV information in CBP's vetting of membership applications for Trusted Traveler Programs ("TTPs") and validation of used vehicle exports, and explained that without the New York DMV information, CBP was forced to stop enrolling or re-enrolling New York residents in TTPs and that vehicle exports would be significantly delayed.

11. On April 3, 2020, New York enacted the Fiscal Year 2020-2021 Budget, which amended the Green Light Law to permit the sharing of DMV information with CBP for TTP vetting and to facilitate vehicle imports and exports. N.Y. Veh. & Traf. Law § 201.12(a) (as amended April 2020) (hereinafter "the Amendment").

12. The Amendment purports to carve out exceptions from the Green Light Law's general prohibition on the sharing of DMV information with any agency that primarily enforces immigration law. However, beyond the two exceptions noted above, and with one very limited additional exception, the Amendment makes any information sharing for civil immigration purposes *or* with CBP and ICE—regardless of whether CBP or ICE will use that information for immigration purposes—a class E felony.

13. The inclusion of the criminal liability provision frustrates DHS's mission operations focused on securing the homeland. Significantly, the provision would prevent the sharing of DMV information within the Department and within the federal government even if it may relate to threats of terrorism against the United States. For example, the prohibition on interagency information sharing will hinder the ability of Joint Terrorism Task Forces to fully utilize the unique authorities that CBP and ICE bring to these task forces with their status as both customs and immigration officers. Moreover, this barrier also frustrates DHS internal operations. For example, if CBP were to acquire basic descriptive or biographic information from the DMV as a result of the Amendment's purported exception for TTP vetting, such as an individual's photograph, height, weight, or eye color, further sharing with HSI would be prohibited as a felony—even if ICE HSI were querying that DMV information for basic officer safety reasons, such as an undercover agent's support team attempting to learn an individual's identity, or to identify individuals

found on a premises prior to the execution of a criminal arrest warrant. The restrictions in the Green Light Law severely limit HSI Special Agents' ability to identify potentially armed and dangerous individuals with DMV information, even if that information were readily accessible to or in the possession of CBP.

14. As further explained by the declaration of Robert E. Perez, the inclusion of the criminal liability provision in the Amendment would mandate a barrier of information that is wholly antithetical to the 9-11 Commission's report and recommendations and antithetical to DHS's core mission of protecting the homeland. These restrictions would create gaps in the universe of information that CBP—as well as other DHS components and other federal agencies—rely on to carry out critical missions. For these reasons, the Amendment to the Green Light Law fails to cure the deficiencies of the Green Light Law and, in fact, imposes additional impediments to the fulfillment of the Department's mission to keep the Nation secure.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on the 19th day of June, 2020

SCOTT L GLABE
Digitally signed by SCOTT L GLABE
Date: 2020.06.19 16:31:31 -04'00'

_____
Scott Glabe
Acting Assistant Secretary, Border Security and Immigration;
Assistant Secretary, Trade and Economic Security
U.S. Department of Homeland Security