

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

June 24, 2020

**By ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *New York v. Chad F. Wolf, et al.*, No. 20 Civ. 1127 (JMF) (S.D.N.Y.)
             *Lewis-McCoy, et al. v. Chad Wolf, et al.*, No. 20 Civ. 1142 (JMF) (S.D.N.Y.)

Dear Judge Furman:

      This Office represents Chad Wolf, Acting Secretary of Homeland Security; Mark Morgan, Chief Operating Officer and Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection; the Department of Homeland Security ("DHS"); and U.S. Customs and Border Protection ("CBP") (together "Defendants") in the above-captioned actions. On June 22, 2020, Plaintiffs filed a letter motion asking the Court to strike certain declarations attached to Defendants' motion for summary judgment or, alternatively, to allow extra-record discovery and compel disclosure of materials that this Court has found privileged and properly withheld. Dkt. No. 70.[1] Plaintiffs' motion should be denied because, contrary to their assertions, Defendants did not provide these declarations to present "*post hoc* rationalizations" in support of the February 5, 2020 decision of the Acting Secretary Wolf (the "TTP Decision"); rather, the declarations were proffered in reasonable anticipation of Plaintiffs' arguments about New York's recent amendment to the Green Light Law (the "GLL Amendment"). Indeed, Plaintiffs have already expressly relied on the GLL Amendment as a basis to challenge the TTP Decision, Dkt. No. 46 at 21-22, notwithstanding the fact that it was passed on April 3, 2020, after the issuance of the challenged agency action. Plaintiffs' instant motion reflects an effort to have the Court consider changes in circumstances that Plaintiffs view as favorable to their cases, *id.*, while eliminating any opportunity for Defendants to respond. For the reasons that follow, Defendants oppose Plaintiffs' motion.

**I.    Background**

      These matters relate to Acting Secretary Wolf's February 5, 2020 letter, which advised that New York residents would no longer be eligible to enroll into CBP's Trusted Traveler Programs ("TTP" or "TTPs"). As more fully explained in Defendants' opening brief, Dkt. No. 67, the TTP

---

[1] Citations to docket entries refer to the docket of *New York v. Wolf*, No. 20 Civ. 1127 (JMF) (S.D.N.Y.).

Decision was issued in response to the December 16, 2019 implementation of New York's Green Light Law, which restricted CBP's access to New York Department of Motor Vehicles ("DMV") information that was used to vet TTP applicants and to facilitate vehicle exports. Plaintiffs filed suit on February 10, 2020, challenging the TTP Decision under the Constitution and the Administrative Procedure Act ("APA"). Dkt. No. 1.

Almost two months into this litigation, New York amended the Green Light Law. *See* Part YYY, New York Senate Bill No. 7508. The GLL Amendment purports to restore CBP's access to DMV information as needed to vet TTP applicants, but also criminalizes the sharing of DMV information with any employee or agent of CBP or Immigration and Customs Enforcement ("ICE"), which are both components of DHS. *Id.* To date, New York has not restored CBP's access to DMV records for TTP vetting or any other purpose. Nonetheless, in opposition to Defendants' motion to dismiss, Plaintiffs asked the Court to consider the GLL Amendment, which, in their view, "paint[s] an even starker picture of Defendants' irrationality." *See* Dkt. No. 46 at 21. Moreover, Plaintiffs contended that, "[a]s a result [of the GLL Amendment], the sole policy aim that Defendants purport to rely upon – access to DMV records for vetting applicants – no longer even arguably exists." *See id.*

The Administrative Record filed in these matters reflects the record before DHS at the time the TTP Decision was issued. It, therefore, does not include information related to the GLL Amendment, which postdates the TTP Decision. In anticipation of Plaintiffs' arguments about the GLL Amendment, which Plaintiffs emphasized in prior briefing, Defendants provided the Court with three declarations, Dkt. Nos. 68-1 (the "Acosta Decl."), -2 (the "Glabe Decl."), and -3 (the "Perez Decl."). These declarations explain that the GLL Amendment has not altered the status quo, as CBP's access to DMV records has not been restored. Acosta Decl. ¶ 24; Perez Decl. ¶ 6. They explain additional concerns DHS has with GLL Amendment, were it to be implemented. Glabe Decl. ¶¶ 4-6; Perez Decl. ¶¶ 10-16. And they provide background information on the operation of the TTPs. Acosta Decl. ¶¶ 9-16. These declarations do not advance *post hoc* rationalizations for the TTP Decision, but rather, demonstrate that the GLL Amendment, which Plaintiffs have injected into this litigation, does not undermine the rationality of the TTP Decision or compel DHS to rescind the TTP Decision.

Plaintiffs now move to strike these declarations. Dkt. No. 70 at 2-3. In the alternative, Plaintiffs seek extra-record discovery, *id.* at 3-4, and reconsideration of the Court's earlier order upholding several of Defendants' privilege assertions, *id.* at 4-5.

## II.   Should the Court Consider the GLL Amendment in Reviewing the TTP Decision, the Acosta, Glabe, and Perez Declarations Are Appropriately Before the Court.

New York—a party to this action—amended the Green Light Law almost two months after Plaintiffs filed their lawsuits. *See* Part YYY, New York Senate Bill No. 7508. Plaintiffs now seek to use the GLL Amendment as a basis to argue that the TTP Decision is irrational. Dkt. No. 46 at 21.[2] At the same time, they insist that Defendants should be precluded from providing any

---

[2] Defendants filed their declarations to oppose any argument that Plaintiffs may raise regarding the GLL Amendment. For the reasons that follow, the need to consider them may turn on the

response—even to advise the Court that, to date, the GLL Amendment has not been implemented (and therefore, has not altered the status quo or the rationale supporting the TTP Decision). This heads-I-win-tails-you-lose approach ignores the proper contours of the record rule.

As a preliminary matter, the GLL Amendment is not properly before the Court in this litigation. The GLL Amendment was passed almost two months after issuance of the TTP Decision. It is not appropriate "for either party to use post-decision information as a new rationalization either for sustaining or attacking [an agency's] decision." *Ass'n of Pacific Fisheries v. EPA*, 615 F.2d 794, 811-12 (9th Cir. 1980) (Kennedy, J.); *see also New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 633 (S.D.N.Y. 2019). By arguing that the GLL Amendment "paint[s] an even starker picture of Defendants' irrationality," and that "the sole policy aim that Defendants purport to rely upon. . . no longer even arguably exists," Dkt. No. 46 at 21, Plaintiffs improperly seek to use evidence that postdates the TTP Decision to challenge its validity. If Plaintiffs intend to argue that DHS should rescind the TTP Decision due to intervening changes in circumstance, they can do so by amending their complaint or filing a new action. *See, e.g.*, *Today's IV, Inc. v. Federal Transit Admin.*, No. 13 Civ. 378 (JAK), 2014 WL 5313943, at *13-14 (C.D. Cal. Sept. 12, 2014) (holding that plaintiffs could challenge an agency decision based on post-decision information only after "an administrative record [was] developed" based on that information). Having chosen to challenge the February 5, 2020 TTP Decision as issued, Plaintiffs should be limited to the record before DHS when it reached its decision. If the record is limited as such, Defendants do not object to exclusion of their declarations.

If, on the other hand, the Court chooses to consider the GLL Amendment, the declarations are appropriately before the Court. As noted above, the declarations explain some of DHS's concerns with the GLL Amendment. Glabe Decl. ¶¶ 4-6; Perez Decl. ¶¶ 6, 10-16. If Plaintiffs seek to argue that DHS has "failed to act" by not rescinding the TTP Decision after passage of the GLL Amendment, "review is not limited to the record as it existed at any single point in time." *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) (quotation marks omitted). "The rule barring consideration of *post hoc* agency rationalizations operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for that same determination when it is later reviewed by another body." *Indep. Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997). Here, the declarations do not explain why DHS issued the TTP Decision or offer *post hoc* rationalizations for the decision. Instead, they explain why DHS did not rescind the TTP Decision when New York passed the GLL Amendment long after the decision's issuance.

In short, the Court should treat Plaintiffs and Defendants with parity in its consideration of the GLL Amendment. If the Court permits Plaintiffs to argue that the GLL Amendment exposes the TTP Decision's legal infirmity, Defendants should be permitted to respond; the Administrative Record predates the GLL Amendment and accordingly does not discuss it. If the Court declines

---

arguments Plaintiffs choose to assert at summary judgment. As such, it may be difficult to resolve the issue of their propriety until after Plaintiffs file their motion for summary judgment.

to consider arguments premised on the GLL Amendment, Defendants do not object to exclusion of the declarations.[3]

### III. Extra-Record Discovery Is Not Appropriate Absent a Showing of Bad Faith and Improper Motive.

In the alternative, Plaintiffs seek extra-record document discovery and depositions to "probe the assertions of fact contained in the Acosta, Glabe, and Perez declarations." Dkt. No. 70 at 3; *see also id*. (discovery is required "in the interest of both completeness and fairness"). But extra-record discovery is warranted in an APA case only in specified circumstances. *New York*, 351 F. Supp. 3d at 633-35 (explaining those circumstances). And "a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official actions." *State v. U.S. Dep't of Commerce*, 333 F. Supp. 3d 282, 285 (S.D.N.Y. 2018) (quoting *Lederman v. New York City Dep't of Parks & Recreation*, 791 F.3d 199, 203 (2d Cir. 2013)). Plaintiffs make no attempt to show that they meet these standards. Their request for extra-record discovery accordingly should be denied.

The two cases on which Plaintiffs rely do not suggest a contrary result. In *Dopico v. Goldschmidt*, 687 F.2d 644 (2d Cir. 1982), the Second Circuit determined that the plaintiff was entitled to limited discovery to probe the completeness of the record "where there [was] a strong suggestion that the record before the Court was not complete." *Id*. at 654; *see also id*. ("It is almost inconceivable that such fundamental documents—the very basis for federal decision-making about mass-transit grants—would not have been part of the administrative record."). *Dopico* is consistent with both the principle that the Court may order an agency to complete an incomplete administrative record, *New York*, 351 F. Supp. 3d at 632-33, and that extra-record discovery may be ordered upon a showing of bad faith, *id*. at 634-35. And, contrary to Plaintiffs' argument, *Nw. Coal. for Alternatives to Pesticides v. U.S. EPA*, 920 F. Supp. 2d 1168 (W.D. Wash. 2013), is not an APA case. *See id*. ("Because the ESA citizen suit provision creates an adequate remedy for claims brought under that provision, the APA does not apply in such actions and the court may consider evidence outside the administrative record.") (quotation marks omitted). Neither case therefore stands for the proposition that Plaintiffs may avoid the standards applicable to a party seeking discovery in an APA case.

Moreover, Plaintiffs provide conclusory assertions regarding their purported need to serve document requests and conduct depositions of high-level DHS officials, arguing only that such discovery is necessary to "probe the assertions of fact in the . . . declarations" which they contend

---

[3] The Acosta Declaration is appropriately part of the record for another reason. The majority of that declaration serves to explain the statutory and regulatory regime underlying the TTPs, Acosta Decl. ¶¶ 6-21, and TTP vetting procedures. The non-statutory and non-regulatory information in that declaration highlight facts already available in the record. *Compare, e.g.*, Acosta Decl. ¶ 22 ("New York is the only state that has terminated CBP's access to driver license and vehicle data via Nlets"), *with* AR 9 ("At this time, CBP continues to receive DMV data from other states who have restricted access to ICE."). "It is well established that a court may allow parties to *supplement* the record with additional materials to provide, for example, background information." *New York*, 351 F. Supp. 3d at 633 (quotation marks omitted) (emphasis in original).

"conflict with the allegations in Plaintiffs' complaints," and "go to what the Court has already identified as a key issue in this litigation." Dkt. No. 70 at 3. But Plaintiffs notably fail to identify a single fact (let alone a material fact) that is now at issue and not already addressed by the Administrative Record. "When permitted, . . . the Court must permit only that discovery necessary to effectuate the Court's judicial review." *Ali v. Pompeo*, No. 16 Civ. 3691 (SJB), 2018 WL 2058152, at *4 (E.D.N.Y. Mat 2, 2018). Here, Plaintiffs have not identified *any* discovery necessary to effectuate judicial review.

## IV. The Court Should Not Reconsider Its Earlier Decision Upholding Defendants' Privilege Assertions.

Finally, Plaintiffs seek reconsideration of this Court's order upholding assertions of privilege over several emails on which Scott Glabe, Pete Acosta, and Robert Perez were copied. Dkt. No. 70 at 4-5. Submission of a declaration signed by an official does not operate as a blanket waiver over all materials that are protected by the attorney-client privilege, the deliberative-process privilege, and the law-enforcement privilege merely because the official was copied on them. In fact, the Court has already upheld assertions of privilege over documents authored by individuals who also authored critical documents within the Administrative Record, including Acting Secretary Wolf himself. *See, e.g.*, PRIV_038. The "sword and shield" doctrine upon which Plaintiffs rely serves to prevent parties from "rely[ing] on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions." *John Doe Co. v. U.S.*, 350 F.3d 299, 32 (2d Cir. 2003). But nothing in the privileged emails that Plaintiffs now seek could undermine the facts provided in the Acosta, Perez, and Glabe declarations. That is because those declarations principally discuss the GLL Amendment. The GLL Amendment did not exist when any of the privileged emails were drafted.

In sum, Plaintiffs fall short of the "strict" standard applicable to a motion for reconsideration. *Stone v. Theatrical Inv. Corp.*, 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015). The Court should deny their request to compel disclosure of documents that the Court has already determined were properly withheld.

\* \* \*

For the foregoing reasons, Plaintiffs' motion should be denied.[4] We thank the Court for its attention to this matter.

---

[4] In the alternative, Plaintiffs should be required to raise these arguments in the summary judgment briefing, as the arguments they raise therein may obviate the need to address arguments related to the scope of the record.

Respectfully,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:   /s/ Zachary Bannon
ZACHARY BANNON
ELIZABETH KIM
CHRISTOPHER CONNOLLY
Assistant United States Attorneys
86 Chambers St. 3rd Floor
New York, New York 10007
Tel.:   212-637-2728, 2745, 2761
Fax:   212-637-2717
E-mail: Zachary.Bannon@usdoj.gov
           Elizabeth.Kim@usdoj.gov
           Christopher.Connolly@usdoj.gov