

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 4, 2020

**By ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

>   Re:   *New York v. Chad F. Wolf, et al.*, No. 20 Civ. 1127 (JMF) (S.D.N.Y.)
>         *Lewis-McCoy, et al. v. Chad Wolf, et al.*, No. 20 Civ. 1142 (JMF) (S.D.N.Y.)

Dear Judge Furman:

This Office (the "Government") represents Chad F. Wolf, Acting Secretary of Homeland Security; Mark Morgan, Acting Commissioner of U.S. Customs and Border Protection; the Department of Homeland Security ("DHS"); and U.S. Customs and Border Protection ("CBP") (together "Defendants") in the above-referenced actions. Today, consistent with the Court's July 29, 2020, and August 11, 2020, orders, the Government will file a report and corrective declarations related to its July 23, 2020 disclosure. The Government conducted an extensive investigation—reviewing thousands of emails among DHS, CBP, and Department of Justice attorneys, and interviewing key officials about what information they knew during critical moments during the agency decisionmaking process. In order to respond as thoroughly as possible to the Court's concerns, the review delved deeply into privileged documents and communications protected by the attorney-client privilege, law-enforcement privilege, deliberative-process privilege, and work-product protection. The contents of these documents and communications are discussed in detail and at length in the Government's report and CBP's corrective declarations, which explain that our investigation revealed no evidence of fraud on the Court.

Accordingly, we write in accordance with Your Honor's Individual Rule 7(C)(iii) to request a protective order pursuant to Federal Rule of Civil Procedure 5.2(e), permitting the Government to redact privileged portions of its report and CBP's declarations on their public filing while submitting an unredacted report to the Court for its *ex parte* review. In response to the Government's request for their position on this issue, Plaintiffs' counsel state as follows: "Plaintiffs are unable to take a position on the request for a protective order, as Defendants did not notify Plaintiffs of this request until 5:41 pm today. In addition, Defendants' request did not explain how their request to redact employee names is consistent with the Court's order of April 29, 2020, denying the same request in connection with the administrative record." Nevertheless, for the reasons set forth herein, the Court should grant this request.

Defendants' proposed redactions of material protected by the attorney-client privilege, law-enforcement privilege, deliberative-process privilege, and work-product protection are proper. While judicial documents are accorded a presumption of public access, *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006), courts may issue protective orders permitting the redaction of information for "good cause," Fed. R. Civ. P. 5.2(e)(1). "The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007). First, the court must determine whether the documents at issue are "'judicial documents.'" *Id.* at 420 (quoting *Lugosch*, 435 F.3d at 119). Second, the court must determine the "weight of the presumption" of public access. *Id.* Third, the court must weigh countervailing interests against the presumption. *Id.*

Most of the material redacted from the Government's public filings are protected by the attorney-client privilege, law-enforcement privilege, deliberative-process privilege, and work-product protection. The protection of privileged communications and materials constitutes a "countervailing value" that weighs against the presumption of public access. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 47 n.13 (2d Cir. 2019) ("Examples of such countervailing values may include, depending on the circumstances . . . the protection of attorney-client privilege.") (citing *Lugosch*, 435 F.3d at 125); *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995) ("We have recognized the law enforcement privilege as an interest worthy of protection."). In addition, the names of several low-level employees at DHS and CBP have been redacted to protect those individuals' privacy interests. *See, e.g.*, *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993) ("[I]ndividuals, including government employees and officials, have privacy interests in the dissemination of their names.").

These countervailing values supporting the Government's redactions overcome the presumption of public access that attach to the Government's report and CBP's declarations, both written in response to the Court's limited inquiry. The report and declarations are "ancillary to the court's core role in adjudicating a case," and are therefore accorded a weaker presumption of public access than "material introduced at trial, or in connection with dispositive motions." *Brown*, 929 F.3d at 50. With respect to these documents, the presumption of public access "amounts to little more than a prediction of public access absent a countervailing reason." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). For the reasons that follow, CBP and DHS's privilege assertions and the privacy interests of low-level employees provide "countervailing reason[s]," *id.*, that justify redaction of the Government's report and CBP's declaration on the public docket.

**Attorney-Client Privilege:** "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). The Government's report and CBP's corrective declarations reflect a diagnostic assessment of thousands of communications exchanged during the course of this litigation—principally between attorneys from the Department of Justice and DHS and CBP, and between the DHS and CBP Offices of General Counsel and their operational clients. Both relationships have been afforded the protection of the attorney-client privilege. *See, e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."); *Cobell v.*

*Norton*, 213 F.R.D. 69, 73 (D.D.C. 2003) (finding that "letters from Justice Department counsel to the Office of the Solicitor" were attorney-client privileged). And many of the communications relied upon in the Government's report relate to the formulation and execution of litigation strategy—a subject matter core to what the attorney-client privilege is meant to protect. *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F. Supp. 1, 31 (D.D.C. 2016) (concluding that a document revealing "a communication between attorney and client regarding litigation strategy based on information kept confidential between them" is "the kind of document the attorney-client privilege was meant to protect"). Many of the redactions within the report and declarations filed on the public docket reflect confidential material exchanged between agency counsel and the litigators in this case. They are properly withheld as attorney-client privileged.

**Law-Enforcement Privilege:** The law-enforcement privilege protects "information pertaining to law enforcement techniques and procedures," in addition to "information that would seriously impair the ability of a law enforcement agency to conduct future investigations." *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (quotation marks omitted). CBP's supplemental declarations and the Government's report discuss the manner in which CBP administers several law-enforcement programs; disclosure of this information would reveal quintessential law-enforcement procedures and techniques. *See, e.g. Abdou v. Gurrieri*, No. 05 Civ. 3946 (JG) (KAM), 2006 WL 2729247, at *3 (E.D.N.Y. Sept. 25, 2006) (documents that "would reveal how the FBI follows up on confidential lead[s] and the tools, techniques and procedures utilized in such an investigation" are law-enforcement privileged); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 67 (1st Cir. 2007) ("internal FBI protocols relating to the use of force" are law-enforcement privileged because "[d]isclosure of such information has the potential to thwart future FBI operations by publicizing the internal operations of that agency"). Indeed, the report and declarations concern many of the same subjects that this Court found to be protected by the law-enforcement privilege in its June 10, 2020, order. *See* Dkt. No. 62 at 5, 9-10. Accordingly, the Government should be permitted to redact similar law-enforcement privileged information on the publicly filed versions of its report and CBP's declarations.

**Deliberative-Process Privilege:** "The deliberative process privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). The Government's report and CBP's declarations relate the contents of internal deliberations from three relevant periods of policy formation at CBP and DHS—issuance of the February 5, 2020 decision; response to New York's April 3, 2020 amendment to its Green Light Law; and rescission of the February 5, 2020 decision. These communications reflect "'recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). They fall squarely within the deliberative-process privilege, reflecting consideration of potential policy responses at the three junctures mentioned above. They should therefore be afforded the protection of the deliberative-process privilege, and the Government should be permitted to withhold them.

**Work-Product Protection:** Finally, the Government's report includes discussion of communications and documents that are protected by the work-product doctrine under Federal

3

Rule of Civil Procedure 26(b)(3) because they "were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). In particular, the report and supplemental declarations convey information directly from the Government's draft filings, circulated between the Government and CBP and DHS. "Recent cases have generally held that draft affidavits, and communications with counsel relating to affidavits, are covered by the work-product rule." Richard L. Marcus, *The Work-Product Rule—Matters Protected by the Work-Product Rule*, 8 Fed. Prac. & Proc. Civ. § 2024 n.23 (3d ed. Apr. 2020); *see also Inst. for Development of Earth Awareness v. PETA*, 272 F.R.D. 124, 124 (S.D.N.Y. 2011) ("The lawyer's drafts, which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation."). Portions of the Government's report and CBP's declarations that directly relate information from documents related to litigation filings are properly redacted from the public docket pursuant to the work-product protection.

**Redaction of Employee Names:** In addition to the privilege assertions discussed above, the Government seeks leave to redact the names of certain low-level employees within CBP and DHS. "[I]ndividuals, including government employees and officials, have privacy interests in the dissemination of their names." *Massey*, 3 F.3d at 624. Names of low-level employees are "largely unrelated to the public interest," and may properly be withheld. *In re Savitt/Adler Litigation*, No. 95 Civ. 1842 (RSP) (DRH), 1997 WL 797511, at *4 (N.D.N.Y. Dec. 23, 1997); *see also id.* ("[T]he public can assess the Attorney General's actions without the names of the individual AAGs."); *Kelly v. City of New York*, No. 01 Civ. 8906 (AGS) (DF), 2003 WL 548400, at *6 (S.D.N.Y. Feb. 24, 2003) ("[T]he public can assess the City's actions in discharging Plaintiffs without the names of the individual employees."). The Government recognizes that the Court rejected similar arguments at an earlier stage of this litigation. *See* Dkt. No. 45. However, the Court's earlier decision concerned redactions to the Administrative Record—a document entitled to a strong presumption of access. Here, by contrast, the report and declarations are "ancillary to the court's core role in adjudicating a case," and are entitled to a lesser presumption of access. *Brown*, 929 F.3d at 50. Further, the redaction of names of CBP and DHS employees is appropriate because it prevents those employees from being connected to a sensitive issue—the Court's investigation into whether a fraud on the Court occurred. *See* Dkt. No. 92 at 4; *cf. Kelly*, 2003 WL 548400, at *6 (permitting redaction of names to prevent their connection to "allegations that have not been fully investigated, substantiated, or proven"). These redactions should be permitted within the report and corrective declarations.

* * *

For the foregoing reasons, we respectfully request that the Court permit the Government to maintain the redactions to its report and CBP's declarations that will be reflected on its public filings.[1] We thank the Court for its consideration of this request.

        Respectfully submitted,

        AUDREY STRAUSS
        Acting United States Attorney for the
        Southern District of New York

By:   */s/ Zachary Bannon*
        ZACHARY BANNON
        ELIZABETH KIM
        CHRISTOPHER CONNOLLY
        Assistant United States Attorneys
        86 Chambers St. 3rd Floor
        New York, New York 10007
        Tel.:   212-637-2728
        Fax:   212-637-2717
        E-mail: Zachary.Bannon@usdoj.gov

cc: *Plaintiffs' counsel* (by ECF)

---

[1] The Government recognizes that the foregoing discussion provides only high-level substantiation of its privilege assertions, rather than line-by-line analysis of the proffered redactions. This was done in the interest of timely submission of this report and its corresponding declarations. The Government is able to provide additional briefing on individual redactions should the Court require it.