UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>        Plaintiff,<br><br> -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>        Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals*<br><br>        Plaintiffs,<br><br> -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security*, et al.,<br><br>        Defendants. | No. 20 Civ. 1142 (JMF) |

**DECLARATION BY PETE R. ACOSTA**

I, Pete R. Acosta, hereby state as follows:

1. I am currently the Director of Trusted Traveler Programs, Admissibility and Passenger Programs, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I began my career with the U.S. Immigration and Naturalization Service in 1996, specifically assigned at that time to Los Angeles International Airport. In 2007, I transferred to a position at CBP Headquarters in Washington, D.C. I was then the Director of the Immigration Advisory, Joint Security, and OFO Police Liaison Officer Programs for the period spanning from 2014 through

2017. Since October 2017, I have been employed in my current role as the Director of Trusted Traveler Programs.

2. In my role as Director of Trusted Traveler Programs, I am responsible for establishing policy to ensure that individuals who apply for participation in one of CBP's Trusted Traveler Programs meet all appropriate qualifications for the program and do not pose a risk to the United States. I am therefore responsible for executing the missions of CBP and, in particular, OFO. The CBP mission includes the enforcement of the customs, immigration, and agriculture laws of the United States and hundreds of other laws on behalf of numerous federal agencies. CBP is the primary law enforcement agency responsible for securing the U.S. border at ports of entry (POEs) and preclearance locations outside the United States, while also facilitating lawful international trade and travel. Among other things, OFO is responsible for coordinating the enforcement activities of CBP at POEs to deter and prevent terrorists and other criminals from entering the United States. The Trusted Traveler Programs (TTPs) are a key part of CBP's law enforcement mission and are designed specifically to facilitate lawful travel by eligible low-risk individuals.

3. I am familiar with the complaints filed in <u>State of New York v. Wolf</u>, Case No. 20-cv-1127 and <u>Lewis-McCoy v. Wolf</u>, Case No. 20-cv-1142, filed in the United States District Court for the Southern District of New York and plaintiffs' claims therein.

4. The Purpose of this declaration is to comply with this Court's Order of July 29, 2020 (Dkt. No. 92) with respect to statements in my declaration filed on June 19th in the above-captioned case (Dkt. No. 68-1) ("Declaration"), which requires me to: "describe with particularity (1) how the prior declaration came to include such statement or statements;

(2) what steps [I] took, prior to signing the declaration, to confirm the accuracy of those statements; and (3) when and how [I] learned that the statements were inaccurate or misleading." Dkt. No. 92 at 6. In addition, I am providing a clarification regarding the declaration signed by former Deputy Executive Assistant Commissioner, Office of Field Operations, filed with this Court on May 21, 2020 (Dkt. No-55-3).

5. I provide the facts and information in this declaration, which are true to the best of my knowledge as of the time of signature. Moreover, I have directed those who assisted in the preparation of this declaration to ensure that all good faith efforts available were taken in the short time available to the agency to address the Court's order.

### A. Statements that Implicate Access to Driver History Information through the International Justice and Public Safety Network (Nlets)

6. The following statements in my Declaration require clarification based on the information that came to light after the declaration was signed:

   a. Paragraph 18, first sentence.

   "Since the inception of the Global Entry program in 2008, CBP has determined whether each applicant meets eligibility requirements for membership by checking the information supplied by the applicant against information contained in various law enforcement databases, including DMV records, and conducting an in-person interview of individuals who are conditionally approved."

   b. Paragraph 20.

   *"In addition to the above databases, CBP queries Nlets for driver license and certain vehicle data.* [FN 7: Such driver license information includes—but is not limited to—customer name, date of birth, mailing address, gender, and license status. Vehicle information includes—but is not limited to—data such as year, make, model, vehicle weight, vehicle identification number, vehicle registration number, effective registration date, registration expiration date, status and certain vehicle related criminal and offenses.] *CBP does so regardless of whether the Trusted Traveler applicant has provided driver license information or whether the applicant has indicated that he or she has a driver license.* Nlets query for DMV information captures information in the applicant's state of residence as well as information from several neighboring states, to the extent such states allow CBP

3

access to DMV information through Nlets. *In instances where driver license information is not provided on the application, Nlets may be queried by using other information that the applicant provides, such as his/her address.* This permits CBP to validate the applicant's identity and to identify certain information pertaining to vehicle-related violations, even if the individual does not have a driver's license. *Driver license and vehicle data allow CBP to detect information regarding violations that the applicant has failed to disclose, which could include driving without a license. Along with the information obtained from other law enforcement databases listed above, driver license and vehicle data help CBP to develop a complete picture of an individual's background and determine whether that individual satisfies the low-risk status requirement for membership. The driver license and vehicle data in Nlets is the only means for CBP to obtain the real-time and accurate versions of such information."* (Emphasis added to highlight statements that require clarification.)

c. Paragraph 22, fourth sentence.

"Currently, New York is the only state that has terminated CBP's access to driver license and vehicle data via Nlets, impacting CBP's vetting of TTP applications of New York residents."

d. Paragraph 23

e. "Without access to an applicant's driver license and vehicle data, CBP does not have complete information about an applicant for a TTP. Specifically, CBP is no longer able to access information regarding certain vehicle-related and other violations that only the DMV maintains. While CBP is still able to view certain criminal vehicle-related violations that are reflected in other federal law enforcement databases, real-time, non-criminal driver license and vehicle data about New York residents, as well as some aspects of any New York applicant's criminal history, such as misdemeanor traffic arrests, are only available through the New York DMV feed to Nlets. In addition, CBP checks the information obtained through Nlets against other law enforcement databases available to CBP to determine whether the applicant presents a risk. Such a gap in information precludes CBP from being able to conduct a full assessment of whether the applicant is low risk. This is true even if the applicant does not have a driver license because individuals without driver licenses could still have a record of violations with the DMV (e.g., driving without a license)."

f. Paragraph 26.

"Without access to the information maintained by the New York DMV, CBP can no longer conduct comprehensive vetting of any New York resident TTP applicant. As a result, all pending TTP applications for New York residents were cancelled and application fees refunded as those individuals could no longer satisfy CBP of

4

their low-risk status because CBP could not undertake a complete assessment of any of their applications without the driver license and vehicle data."

7. ACP/WPP

8. WPP

9. ACP/WPP

10. ACP/WPP

11. ACP/WPP

12. ACP/WPP

13. ██████████

14. ██████████

15. ██████████

# ACP/WPP

16. ACP/WPP

17. WPP

    a. The District of Columbia, one U.S. Territory (Puerto Rico) and all states except New York provide responses to CBP for Driver's License query ("DQ").

    b. The District of Columbia, one U.S. Territory (Puerto Rico) and all states except New York, Hawaii and Missouri provide responses to CBP for Vehicle Registration query ("RQ").

    c. The District of Columbia, the U.S. Territories (Puerto Rico, Guam and the U.S. Virgin Islands) and six states (New York, Connecticut, Florida, Illinois, New Jersey and Hawaii), do not provide responses to CBP for queries for Driver History query (the query referred to as "KQ").

18. WPP

    I was not aware that CBP lacked full access to any state's, territory's or District of Columbia's DMV queries that are used for TTP vetting. WPP I now understand that Driver History Query which captures certain vehicle-related violations and is used during vetting of TTP applicants, is not available from the District of

Columbia, the U.S. Territories (Puerto Rico, Guam and the U.S. Virgin Islands), and six states. [ACP/WPP REDACTED] While the Driver's License Query ("DQ") is relevant to TTP vetting for various purposes, including to confirm the applicant's identity, TTP uses disqualifying information that may be derived from Nlets Driver History Query ("KQ") for the assessment of an applicant's eligibility. [WPP REDACTED]

### B. Clarification on Driver's License Queries

19. [ACP/WPP REDACTED]

Paragraph 20.

"In addition to the above databases, CBP queries Nlets for driver license and certain vehicle data. [FN 7: Such driver license information includes—but is not limited to—customer name, date of birth, mailing address, gender, and license status. Vehicle information includes—but is not limited to—data such as year, make,

9

model, vehicle weight, vehicle identification number, vehicle registration number, effective registration date, registration expiration date, status and certain vehicle related criminal and offenses.] *CBP does so regardless of whether the Trusted Traveler applicant has provided driver license information or whether the applicant has indicated that he or she has a driver license.* Nlets query for DMV information captures information in the applicant's state of residence as well as information from several neighboring states, to the extent such states allow CBP access to DMV information through Nlets. *In instances where driver license information is not provided on the application, Nlets may be queried by using other information that the applicant provides, such as his/her address.* This permits CBP to validate the applicant's identity and to identify certain information pertaining to vehicle-related violations, even if the individual does not have a driver's license. Driver license and vehicle data allow CBP to detect information regarding violations that the applicant has failed to disclose, which could include driving without a license. Along with the information obtained from other law enforcement databases listed above, driver license and vehicle data help CBP to develop a complete picture of an individual's background and determine whether that individual satisfies the low-risk status requirement for membership. The driver license and vehicle data in Nlets is the only means for CBP to obtain the real-time and accurate versions of such information." (Emphasis added to highlight statements that require clarification.)

20. With respect to the second sentence of paragraph 20, while available DMV records may be manually queried through Nlets by TTP vetting officers to complete risk assessments and determine program eligibility and admissibility for TTP applicants, LEP  TTP does not, as a matter of policy, require that vetting officers initiate manual queries of Nlets for every TTP applicant, but as a matter of practice, a vetting officer may, at their discretion, initiate a manual query of available DMV records through Nlets. The manual query also allows the TTP vetting officer to select a region in order to query multiple states at the same time.

21. The vetting officers are experts in assessing risk and LEP

10

It is, therefore, correct that <span style="background:black;color:white">LEP</span> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, the second sentence in paragraph 20 of the Declaration requires clarification because such queries are <span style="background:black;color:white">LEP</span> ▮ Instead, the driver's license query may be manually done as part of the option to query DMV records. Moreover, whether or not such a manual query is conducted is based upon the TTP vetting officer's risk assessment of the TTP applicant.

22. I would also like to clarify the fourth sentence regarding searches of Nlets using an address. Nlets cannot be searched solely by address, but rather the address is often used by the analyst to determine the specific location or region within which to begin a search in Nlets by name. These queries assist the officer performing vetting to determine if an individual had violations or other information that would potentially preclude the individuals from being approved for TTP participation. This also allows for validation of identity, address and others factors that assist in the full vetting of the application. In order to be fully transparent, I would like to point out that the address is used to support a search and by this statement in my declaration, I did not intend to suggest that an address can be used to search Nlets on its own.

23. <span style="background:black;color:white">ACP/WPP</span> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24. The inclusion of this statement stemmed from a misunderstanding between myself, NTC, and OIT. In reviewing the declaration at the time of signing, I understood that the

automated queries run by OIT for presentation to the vetting officers, were run for all TTP applicants. (Manual queries of Nlets by vetting officers could be initiated to resolve any concerns a vetting officer might have or to resolve discrepancies in their findings; however, I understood the initial data presented to the vetting officer uniformly included DMV data results.) WPP

Because of this misunderstanding, I did not raise any concerns at the time the declaration was reviewed prior to signing, resulting in its inclusion in the final declaration without proper clarification.

### C. Clarification Regarding Declaration by John P. Wagner[1]

25. The following statement was contained in a Declaration by John P. Wagner filed with this Court on May 21, 2020 (Dkt. No. 55-3) (hereinafter "Wagner Declaration"):

Paragraph 7

> "I am making this declaration for the purpose of asserting law enforcement privilege over CBP information that is contained in and has been redacted from the following 2 documents:
>
> a. Consolidated Trusted Traveler Programs Handbook [DHSGLL048-DHSGLL061] [FN3: We have listed the full page range of this document that was produced in the administrative record for clarity. However, some pages within this range were produced without redactions. Therefore, this declaration explains assertions of law enforcement privilege only for the pages that contain law enforcement information that was redacted in the administrative record].
>
> b. "FW: Green Light Law" email thread [DHSGLL062-DHSGLL064] [FN 4: While this email thread spans from DHSGLL062 to DHSGLL064, only DHSGLL062 contains information over which CBP has asserted law

---

[1] Mr. Wagner retired from public service on July 17, 2020 and is no longer employed at CBP.

enforcement privilege. Therefore, this declaration only references DHSGLL062 in the below analysis.]"

26. The clarification I am providing is limited to the treatment of certain information on Administrative Record page 56 (AR 56), which is a page from the Consolidated Trusted Traveler Programs Handbook. (The page with updated redactions is included as Appendix A.) The information was redacted from the public record filed with this court on April 24, 2020, as subject to law enforcement privilege and the applicable privilege was described in paragraph 11 of the Wagner Declaration. CBP continues to maintain law enforcement privilege on remaining information redacted in the Administrative Record which has its own, distinct, rationale for protection which are not at issue here. I understand that the agency also continues to maintain law enforcement privilege over a portion of information on AR 56 of the Administrative Record for reasons specified in paragraphs 9 and 11 of the Wagner Declaration.

27. ACP/WPP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I also understand that based on his over 25 year career at CBP, Mr. Wagner had extensive professional knowledge of the "enforcement and administration of customs and immigration laws" and he oversaw "various programs and initiatives that facilitate travel and trade, including the CBP Trusted Traveler Programs."[2]

28. AR 56 contains information CBP may consider and evaluate when vetting TTP membership applications and query codes associated with such information, as well as a list of non-CBP systems that may be accessed for vetting. CBP used codes on AR56 to

---

[2] *See generally* Declaration by John P. Wagner, May 21, 2020 at paragraph 3 (Dkt. No. 55-2).

initiate queries in TECS (not an acronym), CBP's primary border security system.[3] As such, prior to FY17, CBP afforded the highest degree of protection to the codes due to cybersecurity risks. I now understand that, after the modernization of TECS was completed in FY17, CBP stopped using the specific type of codes found at AR 56, and started using graphical user interfaces. The new interfaces allow a user to click and trigger a particular query in TECS. ▮WPP▮

▮

29. ▮ACP/WPP▮

30. ▮ACP/WPP▮

▮ These materials in the public domain list the actual query code, as well as at least a general description of what type of responsive information that query would yield through TECS. For example, in several Privacy Impact Assessments published by U.S. Citizenship and Immigration Services regarding its programs, TECS query codes are discussed in fairly specific detail,

---

[3] For more information on TECS please see Final Rule for Privacy Act Exemptions, 74 Fed. Reg. 45072 (August 31, 2009)

14

in the context of those USCIS programs, including the type of responsive information that the SQ11 and SQ94 codes provide to the user. [4]

31. In addition, I understand that a list of specific types of information CBP may review when vetting TTP applications listed on AR56 was previously published in 2019 in a report by Office of Inspector General (OIG) titled "CBP's Global Entry is Vulnerable to Exploitation," OIG-19-49.[5] The report lists 21 sources of information that CBP may query when it vets TTP applicants and provides detailed description of information obtained from each system. Information in the OIG report along with the information published by CBP in various privacy documents regarding the TTPs,[6] leaves little information on AR56 over which assertion of law enforcement privilege is justified.

---

[4] *See* Privacy Impact Assessment Update for the USCIS Person Centric Query Service Supporting Immigration Status Verifiers of the USCIS Enterprise Service Directorate/Verification Division, at 4, June 8, 2011, DHS/USCIS/PIA-010(e), *available at* https://www.dhs.gov/xlibrary/assets/privacy/privacy-pia-uscis-pcqssisv-esdvd.pdf; *see also* Privacy Impact Assessment Update for the USCIS Electronic Information System (USCIS ELIS) DHS/USCIS/PIA-056(b), at 4, March 14, 2020 *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis056b-march2020.pdf; Privacy Impact Assessment for the Travel and Employment Authorization Listings (TEAL), at 3, November 3, 2009, *available at* https://www.dhs.gov/sites/default/files/publications/privacy_pia_cis_teal.pdf.

[5] Office of Inspector General, U.S. Department of Homeland Security, CBP's Global Entry Program Is Vulnerable to Exploitation, OIG-19-49, Appendix 3, June 24, 2019, *available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-49-Jun19.pdf.

[6] Privacy Impact Assessments, Global Enrollment System, DHS/CBP/PIA-002, *available at* http://dhs.gov/publication/global-enrollment-system-ges.

15

32. Based on the discovery that certain information contained on AR56 has officially been released into the public domain, and the fact that the TECS codes on their own no longer present a cybersecurity risk, I understand that CBP determined that the privilege assertion over most of the information on that page is not justified and it no longer intends to assert privilege over such information on AR 56. As such, CBP is providing this court with an updated copy of AR 56, reflecting the revised redactions.

33. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

/s/ PETE R ACOSTA

Digitally signed by PETE R ACOSTA
Date: 2020.09.04 14:43:20 -04'00'

Pete R. Acosta
Director, Trusted Traveler Programs
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

# APPENDIX A

## 5.1 Risk Assessments

All risk assessments for participation in TTPs will be conducted by the VC. CBP officers at the VC will electronically vet each application through the use of automated queries. (b) (7)(E) (b) (7)(E)                                                                                               . These vetting queries include, but are not limited to, the following systems:

| Risk Assessment Queries | |
|---|---|
| Code | System |
| CIS | Central Index System |
| INTERPOL | International Criminal Police Organization |
| IO95 | Inspections Results |
| IO04 | Inspections Results |
| SQ11 | Person Query |
| SQ13 | Vehicle Query* including a check on the Vehicle Identification Number (VIN) |
| SQAD | Applicant address |
| SQ16 | Applicant business/employer |
| SQPQ | Crossing Record History |
| SQDD | MRD Query, Passport. Alien Registration card |
| NN16 | FBI records, criminal history, wants and warrants, protection orders |
| NN11 | State records for criminal history, wants and warrants, protection orders, vehicle registration* and driver's license |
| NN13 | Trailers, boats, misc. articles |
| NN17 | Canadian criminal history, wants and warrants, vehicle registration and driver's license |

* Required for SENTRI vehicles. For other programs, queries will be run if the information is available.

Other systems checks may be conducted on a case-by-case basis and include, but are not limited to:
- EARM -Enforcement Alien Removal Module, formerly known as DACS;
- CLAIMS – Computer Linked Application Management System;
- ISRS – Image Storage and Retrieval System;
- CLASS – Consular Lookout and Support System;
- SEVIS - Student Exchange Visitor Identification System.

**For Official Use Only / Law Enforcement Sensitive**

DHSGLL056