UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>Plaintiff,<br><br>-v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals*<br><br>Plaintiffs,<br><br>-v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security*, et al.,<br><br>Defendants. | No. 20 Civ. 1142 (JMF) |

## DECLARATION

I, Robert E. Perez, hereby state as follows:

1. I am currently the Deputy Commissioner of U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security. Until November 2018, I was the Executive Assistant Commissioner for Operations Support. I began my career with the U.S. Customs Service in 1992 as a Customs Inspector in Newark, New Jersey. Throughout my career at CBP, I have held various positions at CBP headquarters and in the field, including becoming the first Director of the Customs–Trade Partnership Against Terrorism (C-TPAT) in 2002. I also served as a Port Director and the Director of Field

Operations in Detroit, Michigan, and as a Director of Field Operations at CBP's New York Field Office.

2. In my role as Deputy Commissioner, I am the agency's senior career official, with a primary focus of working closely with the Commissioner to ensure that CBP's mission of protecting the Nation's borders from terrorists and terrorist weapons is carried out effectively in partnership with other Federal, state, local, and foreign entities. Additionally, I provide executive leadership in planning short and long-range strategies, activities, and projects.

3. I am familiar with the complaints filed in *State of New York v. Wolf*, Case No. 20-cv-1127 and *Lewis-McCoy v. Wolf*, Case No. 20-cv-1142, filed in the United States District Court for the Southern District of New York and Plaintiffs' claims therein.

4. The purpose of this declaration is to address four statements included in my previous declaration, filed on June 19, 2020 (Dkt. No. 68-3), that in my opinion would benefit from further clarification given the additional facts that were discovered or subsequent connections that were made as CBP was preparing its response to Plaintiffs' reply brief filed on July 10, 2020 (Dkt. No. 79). This declaration addresses how the four statements came to be included in my previous declaration, the due diligence that my staff and I conducted to ensure accurate representations were being made, and my understanding of how CBP discovered the existence of these additional facts and potential connections.

5. ACP WPP [redacted] ACP WPP. I understand that ACP WPP [redacted] several statements from my original declaration (Dkt. No. 68-3) warrant further clarification

when viewed in the broader context of the litigation. ACP WPP

ACP WPP The statements contained within my declaration filed on

June 19, 2020, (Dkt. No 68-3) that my staff and I have found would benefit from further

clarification are as follows:

A.  Paragraph 6, fourth sentence (Statement A)

"Accordingly, as of the date of this declaration, CBP cannot vet TTP [Trusted
Traveler Program] applicants from the State of New York to determine their
eligibility for TTPs."

B.  Paragraph 15, second sentence (Statement B)

"Even if CBP were to receive New York DMV information for use in TTP vetting,
in order to shield CBP employees from potential criminal liability, the Amendment
would require CBP to silo that information from its databases, preventing law
enforcement officers who may be conducting critical investigations, including those
related to terrorism, from identifying connections between individuals or relevant
information."

C.  Paragraph 16, fourth sentence (Statement C)

"New York's Green Light Law would require CBP to reverse decades of efforts to
achieve the fluid network of information sharing across the government that was
deemed critical by the 9-11 Commission to avoid future threats to our nation's
security."

D.  Paragraph 17, first sentence (Statement D)

"Not only would New York law require CBP to alter its systems, but its policies and
culture would also need to be drastically changed, in direct contravention of the 9-11
Commission's findings and recommendations, to create partitions between CBP
operational offices and DHS components as well as between CBP and its inter-
agency partners."

6.  While I believe Statement A largely remains technically accurate, ACP WPP

ACP WPP

ACP WPP

ACP WPP                                       Had I had the benefit of this understanding, I would have

ensured that this statement was given additional context to prevent any ambiguity that

could cause improper interpretation in support of the arguments put forth by the

government in this litigation.  While I believe Statements B, C, and D remain accurate,

ACP WPP

ACP WPP                                                            To provide clarity and

prevent improper conclusions regarding information sharing practices, I am addressing

in this declaration local agreements that restrict information sharing.  As Statements B,

C, and D all address information sharing and could prompt the same types of connections

to be made to such information sharing agreements, this declaration addresses them

together.

7.  This declaration is based on my personal knowledge, as well as information conveyed to

me by my staff and other knowledgeable CBP personnel in the course of my official

duties and responsibilities.

## I.   Statement A

8.  It is my understanding that Statement A        ACP WPP

ACP WPP





ACP WPP

10. It is my understanding that ACP WPP

ACP WPP



11. I received my declaration, on June

17, 2020, for signature.

12. As the Deputy Commissioner of CBP, I oversee more than 60,000 employees and their

activities.  In order to effectively carry out my duties, I routinely rely on the expertise of

my staff and other CBP personnel who have the most in-depth knowledge on particular

programs and operations within the Agency.  Therefore, in reviewing the declaration

before signature, I primarily relied upon the expertise of CBP officials and offices that

work on these issues daily and have knowledge, for example, of the details of Trusted

Traveler vetting and information systems and data access.  However, I also relied upon

my professional knowledge of the New York Green Light Law issue,

ACP/WPP My professional experience in overseeing officers conducting vetting and querying information through various systems further informed my review.  At that time, to my knowledge and that of the subject matter experts who work on these issues in the regular course of business, these statements were proffered in good faith as true and accurate.

13. 

14. While CBP officers responsible for vetting TTP applications, including applications to the Global Entry program, do consider DMV record information in their adjudication of

such applications, based on information identified by CBP on July 17, 2020, it is now clear that DMV data is not, and was not at the time of my signature on my previous declaration, available, either in whole or in part, to the TTP vetting officers for a number of jurisdictions, including New York.  As such, Statement A needs to be placed in the context of this new information.  Despite other jurisdictions not providing DMV access via Nlets (in whole or in part), CBP continued to process and approve applications for TTPs without access to such information—including applications from Guam and the Virgin Islands, which are the two jurisdictions that do not provide any DMV data to any user via Nlets (excluding New York which has specifically cut off CBP's access to such information).  As a result, Statement A must be clarified to the extent that the statement suggests broadly that TTP applications cannot be processed without access to DMV data.  However, it must be made clear that such information remains important to TTP vetting—the agency was just not aware that certain data was not being provided at the time.

## II.    Statements B, C, and D



ACP WPP

17. ACP WPP

18. As with Statement A, in reviewing the declaration before signature, I relied, in part,

upon my professional knowledge of the New York Green Light Law issue, including

numerous internal CBP meetings I attended, as well as meetings with officials at DHS.

ACP/WPP

19. In addition to meetings and briefings that I attended and communications with my staff as the Green Light litigation transpired, in reviewing the declaration, I also relied on my personal knowledge, particularly regarding the importance of information sharing in CBP's mission that I have developed in the over 27 years that I have worked for CBP and its legacy agency, in various capacities.  Additionally, I relied upon the expertise of CBP officials and offices that work on these issues daily and have knowledge of the detailed processes of Trusted Traveler vetting and information systems and the importance of facilitating the flow of information to persons with an official need-to-know, to effectively carry out the agency's mission .  At that time, to my knowledge and that of the subject matter experts who work on these issues in the regular course of business, these statements were proffered in good faith as true and accurate.

20. 

ACP WPP

21. ACP WPP

---

[1] CLETS is a California network that allows law enforcement to have access to a variety of databases, both local and national.

22. 

However, it is my understanding that CBP continues to have access to California DMV data via Nlets.

23. 

Although, as noted above, I was generally aware of the CLETS agreements at the time I signed the prior declaration, I did not connect them to the provisions of the Green Light Law as amended. It is my understanding that the restrictions imposed by the CLETS agreements and the California Nlets banner are very different from and much less burdensome than the restrictions imposed by the Green Light Law and its amendment. The CLETS agreements and related restrictions only prohibit CBP from using non-criminal history information for immigration enforcement purposes. Unlike the New York law, they do not prevent DHS

from sharing information amongst its components and with other authorities or from using that information otherwise, and they certainly do not make it a felony to do so. Therefore, in my opinion, the CLETS agreements and related restrictions are different in scope and kind to the limitations of the Green Light Law as amended, which, in contrast, purports to impose criminal penalties for sharing information with CBP for any purpose and terminated CBP's access to any DMV data except in very limited instances.

24. I now understand how the existence of these agreements and conditions upon sharing may require clarification in the context of the instant litigation, and I further understand that New York is not the only state which restricts CBP's use of DMV data for certain purposes. ACP WPP

ACP WPP

I provide the facts and information in this declaration, which I declare to be true to the best of my knowledge, information and belief as of the time of signature. Moreover, I have directed my staff to ensure that all good faith efforts available were taken in the limited time available to the agency to address the Court's order.

Executed on this __4/7th__ day of September, 2020

/s/ _____

Robert E. Perez
Deputy Commissioner
U.S. Customs and Border Protection