UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK,

                         Plaintiff,

      -v-

CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,

                      Defendants.

No. 20 Civ. 1127 (JMF)

---

R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals,*

                         Plaintiffs,

      -v-

CHAD WOLF, *in his official capacity as Acting Secretary of Homeland Security*, et al.,

                      Defendants.

No. 20 Civ. 1142 (JMF)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' LETTER MOTION FOR A PROTECTIVE ORDER

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728/2745/2761
Fax: (212) 637-2717
E-mail: Zachary.Bannon@usdoj.gov
          Elizabeth.Kim@usdoj.gov
          Christopher.Connolly@usdoj.gov

ZACHARY BANNON
ELIZABETH J. KIM
CHRISTOPHER CONNOLLY
Assistant United States Attorneys
    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................ 1

ARGUMENT ............................................................. 3

    I.    DEFENDANTS ASSERT VALID PRIVILEGE AND PRIVACY PROTECTIONS............................ 3

        A.    Attorney-Client Privilege ........................................ 3

        B.    Work-Product Protection ........................................ 9

        C.    Deliberative-Process Privilege ................................ 13

        D.    Law-Enforcement Privilege ..................................... 14

        E.    Names of Low-Level DHS and CBP Employees......................... 15

    II.    DEFENDANTS DID NOT WAIVE THEIR PRIVILEGES BY SUBMITTING AN UNREDACTED REPORT AND DECLARATIONS TO THE COURT FOR EX PARTE REVIEW..................................... 16

        A.    The Government's Disclosure of Privileged Information Was Not Voluntary. ...........17

        B.    Disclosure of Privileged Information to a Court for Ex Parte Review Does Not Waive Privilege. ..................................................20

CONCLUSION..............................................................22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abdou v. Gurrieri*,
  No. 05 Civ. 3946 (JG) (KAM), 2006 WL 2729247 (E.D.N.Y. Sept. 25, 2006) ..................... 14

*Bekins Record Storage Co. v. Morgenthau*,
  62 N.Y.2d 324 (1984) ........................................................................................................ 6

*Carpenter v. Churchville Greene Homeowner's Ass'n*,
  No. 09 Civ. 6552 (MWP), 2011 WL 4711961 (S.D.N.Y. Sept. 9, 2011)............................... 10

*Cities Service Co. v. FTC*,
  627 F. Supp. 827 (D.D.C. 1984) ........................................................................................ 11

*Clarke v. American Commerce Nat. Bank*,
  974 F.2d 127 (9th Cir. 1992) .............................................................................................. 4

*Curto v. Med. World Commc'ns, Inc.*,
  783 F. Supp. 2d 373 (E.D.N.Y. 2011) ................................................................................ 19

*E. Point Sys., Inc. v. Maxim*,
  No. 3:13-CV-00215 (VAB), 2015 WL 8023569 (D. Conn. Dec. 4, 2015) ............................ 21

*Estate of Fisher v. Comm'r*,
  905 F.2d 645 (2d Cir. 1990) .............................................................................................. 20

*Felske v. Hirschmann*,
  No. 10 Civ. 8899 (RMB), 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012)...................... 16, 17, 18

*FTC v. Boehringer Ingelheim Pharamceuticals, Inc.*,
  180 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................... 4, 5, 17, 21

*Gray v. Cleaning System and Suppliers, Inc.*,
  143 F.R.D. 48 (S.D.N.Y. 1992) .......................................................................................... 12

*Hickman v. Taylor*,
  329 U.S. 495 (1947)....................................................................................................... 2, 11

*Ideal Elec. Co. v. Flowserve Corp.*,
  230 F.R.D. 603 (D. Nev. 2005)........................................................................................... 4

*In re General Motors LLC Ignition Switch Litigation*,
  80 F. Supp. 3d 521 (S.D.N.Y. 2015) ................................................................................... 7

*In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*,
    318 F.3d 379 (2d Cir. 2003) .........................................................................................20

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ........................................................................................ 7

*In re Linerboard Anitrust Litigation*,
    237 F.R.D. 373 (E.D. Pa. 2006) .....................................................................................12

*In re Pacific Pictures Corp.*,
    679 F.3d 1121 (9th Cir. 2012) .......................................................................................18

*In re Parmalat Securities Litigation*,
    No. 04 Md. 1653, 2006 WL 3592936 (S.D.N.Y. Dec. 1, 2006) ..............................................18

*In re Richard Roe, Inc.*,
    68 F.3d 38 (2d Cir. 1995) ..........................................................................................7, 8

*In re Savitt/Adler Litigation*,
    No. 95 Civ. 1842 (RSP) (DRH), 1997 WL 797511 (N.D.N.Y. Dec. 23, 1997) ......................15

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) .......................................................................................13

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998) .......................................................................................11

*In re The City of New York*,
    607 F.3d 923 (2d Cir. 2010) .........................................................................................14

*Inst. for Development of Earth Awareness v. PETA*,
    272 F.R.D. 124 (S.D.N.Y. 2011) ....................................................................................10

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
    800 F. Supp. 2d 202 (D.D.C. 2011) ................................................................................11

*Kelly v. City of New York*,
    No. 01 Civ. 8906 (AGS) (DF), 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003) ...................15, 16

*Kerr v. U. S. Dist. Court for N. Dist. of California*,
    426 U.S. 394 (1976) ...................................................................................................20

*Madanes v. Madanes*,
    199 F.R.D. 135 (S.D.N.Y. 2001) ....................................................................................12

*Murphy v. Dep't of Army*,
    613 F.2d 1151 (D.C. Cir. 1979) ........................................................................13

*Perez v. Bangkok Bank Ltd.*,
    No. 87 Civ. 1753 (BAL), 1988 WL 142470 (S.D.N.Y. Dec. 27, 1988) ................... 6

*Poll v. U.S. Office of Special Counsel*,
    208 F.3d 226, 2000 WL 14422 (10th Cir. Oct. 14, 1999) ....................................13

*Public Citizen, Inc. v. Dep't of Ed.*,
    388 F. Supp. 3d 29 (D.D.C. 2019) ...................................................................... 2

*Shoenmann v. FDIC*,
    7 F. Supp. 3d 1009 (N.D. Cal. 2014) ..................................................................18

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ............................................................................ 4

*Transamerica Computer v. IBM*,
    573 F.2d 646 (9th Cir. 1978) ..............................................................................19

*Travelers Indemnity Company v. Excalibur Reinsurance Corporation*,
    No. 11 Civ. 1209 (CSH), 2012 WL 13029602 (D. Conn. May 10, 2012)............... 6

*United States v. Construction Products Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ................................................................................. 9

*United States v. de la Jara*,
    973 F.2d 746 (9th Cir. 1992) ..............................................................................19

*United States v. Hoey*,
    No. 11 Cr. 337 (PKC), 2015 WL 13846912 (S.D.N.Y. Mar. 24, 2015)..................20

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011) ............................................................................... 3

*United States v. Zolin*,
    491 U.S. 554, (1989)..........................................................................................20

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ....................................................................................passim

*Winfield v. City of New York*,
    No. 15 Civ. 5236 (LTS) (KHP), 2018 WL 716013 (S.D.N.Y. Feb. 1, 2018) .........14

**Other Authorities**

Richard L. Marcus, *The Work-Product Rule—Matters Protected by the Work-Product Rule*,
  8 Fed. Prac. & Proc. Civ. § 2024 ........................................................................10

## PRELIMINARY STATEMENT

Defendants (or the "Government") respectfully submit this memorandum of law in support of their letter motion for a protective order.

On July 29, 2020, this Court directed the Government "to file a comprehensive and detailed report," including "a comprehensive record of any and all 'inaccurate' or 'misleading' statements in their prior submissions." Dkt. No. 92 at 5.[1] On September 4, 2020, following an extensive internal investigation that involved review of thousands of emails and draft documents, as well as interviews of U.S. Customs and Border Protection ("CBP") and U.S. Department of Homeland Security ("DHS") personnel, the Government filed its report, along with declarations that were also called for by the Court's order. Given the Court-mandated subject matter of these filings, they each contained privileged material. Accordingly, the Government: (i) filed redacted versions of these records on the public docket, specifying the privilege that justified each redaction; (ii) filed a letter motion for a protective order; and (iii) submitted unredacted versions of the records *in camera* and *ex parte*, as required by the Court's individual rules for the submission of documents subject to redaction. *See* Individual Rule 7(C)(iii). The Government did so to ensure that the Court had full access to the results of the Government's investigation and the means by which to evaluate the Government's privilege assertions.

As discussed in this brief and the Government's letter motion, the Government's motion for a protective order should be granted. The material redacted from the public filings fall principally within the attorney-client privilege and work-product doctrine, in addition to the deliberative-process privilege and law-enforcement privilege.[2] Upholding the Government's

---

[1] All docket entries refer to the docket of *New York v. Wolf*, No. 20 Civ. 1127 (JMF) (S.D.N.Y.).

[2] The Government should also be permitted to withhold the names of low-level CBP and DHS employees appearing in these records.

privilege assertions would serve precisely the interests that these privileges are meant to protect. In this case, "[f]ull and frank communication between attorneys and their clients" allowed the Government to recognize errors in its submissions, provide a disclosure to the Court and the parties, and change its policies to accord with updated information, thereby promoting "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (discussing attorney client privilege). The Government's disclosure to this Court and policy change exemplify why "it is essential that a lawyer work with a certain degree of privacy" such that he can fulfill his duties as "an officer of the court . . . bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (discussing work product doctrine). Candid communication between counsel and client ultimately led to the right result in these cases. Disclosure of privileged material "in this context [would] create[] the risk that agency clients may feel constrained from reaching out to legal counsel for required legal advice due to fear of public disclosure[,] . . . render[ing] it more difficult for agency attorneys to provide sound legal support and advice, which would inhibit the proper functioning of governmental departments." *Public Citizen, Inc. v. Dep't of Educ.*, 388 F. Supp. 3d 29, 43 (D.D.C. 2019).

Further, the Government did not waive these privileges by submitting unredacted versions of the documents *ex parte*. The very nature of the inquiry the Court ordered required the Government to include privileged information in its report and declarations. The Government reviewed a great deal of privileged communications and submitted all pertinent material to the Court in order to ensure a thorough and responsive report, in the interest of candor and completeness. Accordingly, the submission of such materials for *in camera* review does not (and should not) vitiate privilege.

**ARGUMENT**

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER SHOULD BE GRANTED**

**I.     Defendants Assert Valid Privilege and Privacy Protections.**

As explained in the Government's September 4, 2020, letter motion, Dkt. No. 111, the redactions in the publicly filed report and declarations, Dkt. Nos. 113, 113-1, and 113-2, are justified by the attorney-client privilege, work-product protection, deliberative-process privilege, and law-enforcement privilege, as well as by the privacy interests of low-level CBP and DHS employees in their personally identifying information.

The Court's September 14, 2020, order states that the Government's submission "by [its] own admission . . . fail[s] to specify which asserted privilege applies to which redaction(s), let alone show with specificity why the redactions are justified," and directs the Government to "identify with specificity the grounds upon which they assert privilege for each proposed redaction in their report and declarations." Dkt. No. 116 at 2. But the Government did, in fact, specify which privilege applies to each redaction: each assertion of privilege is clearly marked on the publicly filed versions of the report and declarations. Dkt. 113. For the reasons set forth below, those privilege assertions are justified and should be upheld.

**A.     Attorney-Client Privilege**

**1.     Defendants' Attorney-Client Privilege Assertions Should Be Upheld.**

A significant portion of the redactions in the Government's report and declarations are supported by the attorney-client privilege, which protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). The purpose of this privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests

3

in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. Further, as noted in the Government's letter motion for a protective order, "[i]n the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." Dkt. No. 111 at 2 (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)). Here, Defendants' assertions of the attorney-client privilege can be grouped into five categories.

(1)     *Communications Concerning Litigation Declarations* (Dkt. No. 113-1 ¶¶ 7, 9-13, 19, 27; Dkt. No. 113-2 ¶¶ 8-12, 15-18):  This category relates to communications between agency counsel and their operational clients regarding the preparation of declarations to support the Government's motions.   Courts have found communications between lawyers and their clients about draft declarations that concern "how the facts should be presented" in the declaration and other "changes to the drafts" to be protected by the attorney-client privilege.  *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 606-08 (D. Nev. 2005).  Because the communications in this category all relate to the process by CBP and DHS counsel prepared declarations in this litigation, and reflect legal advice regarding the content of the declarations, they are privileged.

(2)     *Communications Concerning Litigation Filings* (Dkt. No. 113 at 4 ¶ 2, 12 ¶ 4, 13, n.11, 14 ¶ 3, 15 ¶ 3; Dkt. No. 113-1 ¶ 29): The redacted material in this category concerns communications between Department of Justice ("DOJ") attorneys and the client agencies during the course of preparing filings in this litigation (other than those related to the preparation of the Government's summary judgment submissions, which are discussed in the subsection below), and the research underlying those communications.    This material is privileged because "a communication between attorney and client regarding litigation strategy based on information kept confidential between them" is "the kind of document the attorney-client privilege was meant to protect."  *FTC v. Boehringer Ingelheim Pharamceuticals, Inc.*, 180 F. Supp. 3d 1, 31 (D.D.C.

4

2016); *see also Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[C]orrespondence" that reveals "litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege."); *Upjohn Co.*, 449 U.S. at 391 (attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").

(3)     *Communications Concerning the July 23 Letter* (Dkt. No. 113 at 2, n.3, n.4, 6 ¶ 2, 15 § A; Dkt. No. 113-1 ¶¶ 14-16, 18; Dkt. No. 113-2 ¶¶ 5, 13, 20-24):  These redactions concern communications between CBP and DHS counsel and the client agencies, and research conducted by CBP and DHS counsel, in connection with the preparation of the Government's summary judgment submissions.   These redactions also concern communications between agency counsel and DOJ attorneys during which agency counsel presented the results of their research and sought legal advice regarding the appropriate course of action in the litigation.   These communications ultimately resulted in the submission of the Government's July 23 letter.

As with communications concerning the other litigation filings discussed above, these were "communication[s] between attorney and client regarding litigation strategy based on information kept confidential between them."  *FTC*, 180 F. Supp. 3d at 31.   And while the attorney-client privilege does not necessarily protect the *facts* revealed by agency counsel's research, *see, e.g.*, Dkt. No. 113-1 ¶ 17(a)-(c), it does protect the communications that conveyed them, *see, e.g.*, *Upjohn*, 449 U.S. at 395-96 ("The protection of the privilege extends only to *communications* and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing.") (quotation marks and alterations omitted).   These communications in particular are precisely the type of communications the attorney-client privilege is meant to protect: these "full

and frank" discussions allowed Defendants to recognize the mistakes in their prior filings, prompted the Government's July 23 letter disclosing prior inaccurate and misleading statements and withdrawing Defendants' motions, and informed DHS's decision to restore New York residents' access to Trusted Traveler Programs. *See Upjohn*, 449 U.S. at 389 (the privilege's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice").

(4)     *Communications Subsequent to the Green Light Law Amendment* (Dkt. No. 113 at 12 ¶ 2, 14 ¶ 2): These redactions relate to communications between DHS and CBP counsel and their client agencies, and communications between DHS and CBP counsel and DOJ attorneys, concerning the possibility of settlement in light of New York's April 2020 amendment of the Green Light Law. "A letter from client to attorney regarding settlement negotiations" is "'the classic situation' of confidential attorney-client communication." *Perez v. Bangkok Bank Ltd.*, No. 87 Civ. 1753 (BAL), 1988 WL 142470, at *1 (S.D.N.Y. Dec. 27, 1988) (quoting *Bekins Record Storage Co. v. Morgenthau*, 62 N.Y.2d 324, 329-30 (1984)); *see also Travelers Indemnity Company v. Excalibur Reinsurance Corporation*, No. 11 Civ. 1209 (CSH), 2012 WL 13029602, at *5 (D. Conn. May 10, 2012) (finding privileged "discussion of Traveler's confidential settlement negotiations with the broker").

(5)     *Communications Concerning the Report and Corrective Declarations* (Dkt. No. 113 at 4 ¶ 2, 12 ¶ 1, 15-16; Dkt. No. 113-1 ¶¶ 19, 23, 30; Dkt. No. 113-2 ¶ 6): The final category of attorney-client redactions concern communications made during the course of the Government's investigation conducted pursuant to the Court's July 29, 2020, order. "So long as obtaining or providing legal advice was one of the significant purposes of [an] internal investigation, the attorney privilege applies, even if there were also other purposes for the investigation and even if

the investigation was mandated by regulation rather than simply an exercise of company discretion." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758-59 (D.C. Cir. 2014); *see also In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) (same). Here, the Government conducted an investigation into the events giving rise to its July 23 letter at the request of the Court, as part of an inquiry into whether a fraud had been perpetrated; accordingly, a significant concern that animated the Government's investigation was "the very prospect of [further] legal action." *In re General Motors*, 80 F. Supp. 3d at 530. Attorney-client communications during this phase of the litigation are therefore privileged.

### 2. The Crime-Fraud Exception Is Inapplicable and Does Not Vitiate Defendants' Assertion of the Attorney-Client Privilege.

Plaintiffs' invocation of the crime-fraud exception to the attorney-client privilege is completely misplaced. Dkt. No. 114 at 4. "[A] party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). Plaintiffs cannot satisfy this high standard for two fundamental reasons.

First, "the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of [a] crime or fraud." *Id.* (emphasis in original). Nothing on the face of the report supports such a determination. To the contrary, following an extensive investigation, the report found "no indication of any intent to deceive the Court." Dkt. No. 113 at 3. It follows, then, that the redacted portions of the report would not reveal communications that were themselves produced "in furtherance of [a] crime or fraud." *In re Richard Roe*, 68 F.3d at 40. Plaintiffs have not shown, and certainly cannot show, that "there is probable cause to believe that the particular communication[s]" in question were "intended in

some way to facilitate or to conceal . . . criminal activity." *Id.* Indeed, these communications were provided to the Court in their entirety *ex parte*.

Second, and more broadly, the crime-fraud exception applies only when "there is probable cause to believe that a crime or fraud has been attempted or committed." *Id.* The circumstances here simply do not support such a probable cause finding. It strains credulity to believe that Defendants perpetrated a fraud for four months of litigation—up to the eve of the filing of their final brief in support of summary judgment—only to abandon that fraud based on a cursory (and inaccurate) assertion in Plaintiffs' brief, and notwithstanding the fact that (according to Plaintiffs) the fraudulent nature of Defendants' actions was plain all along from the face of the Administrative Record. In pressing this improbable sequence of events, Plaintiffs continue to selectively cite portions of other DHS components' operational assessments discussing other types of information-sharing restrictions, *see, e.g.* Dkt. No. 115 at 2 n.4,[3] while ignoring documents within the Administrative Record that supported that Government's prior position in the litigation concerning the uniqueness of New York's restriction, *see, e.g.*, AR09 ("At this time, CBP continues to receive DMV data from other states who have restricted access to ICE."); AR018 ("Some states do not participate in Nlets, *therefore methods for obtaining DMV information vary in those states.*") (emphasis added). If it was evident from the face of the Administrative Record that New York's data restrictions on CBP were not unique, it is unclear why Plaintiffs never identified the District of Columbia, New Jersey, Illinois, Hawaii, Florida, Connecticut, Guam, the Virgin Islands, and

---

[3] Within this citation, Plaintiffs inaccurately portray the nature of the data restriction appearing on page 74 of the Administrative Record. Specifically, Plaintiffs cite this page for the proposition that "CBP lacked access to DMV database information from California and Connecticut prior to the effective date of New York's Green Light Law." Dkt. No. 115 at 2 n.4. However, AR74 concerns data restrictions imposed on ICE—not CBP—as is clear from the email located at page 72 of the Administrative Record. *See* AR72.

Puerto Rico as the jurisdictions that also did not provide access to driving-related criminal histories via Nlets or otherwise. *See* Dkt. No. 113-1 ¶ 17(c); *see also id.* ¶¶ 17(a)-(b) (discussing access to driver's license and vehicle registration information). And if it were obvious, it is unclear why an amicus brief signed by four of those jurisdictions also failed to alert the Court to this fact. *See* Dkt. No. 81-1 at 5.[4]

The Government became aware of previously undiscovered information in the course of preparing its reply brief, promptly and independently disclosed that information to the Court, withdrew its motions (thus conceding defeat in this litigation), and swiftly reversed course on its policy. The crime-fraud exception does not apply because there was no underlying fraud, and therefore no communications in furtherance of a fraud. To the contrary, as soon as Defendants learned that their prior positions were untenable, they voluntarily disclosed that information and changed their policy.

**B.      Work-Product Protection**

   **1.      Defendants Properly Assert Work-Product Protection.**

A largely overlapping subset of redactions are supported by the work-product protection, which shields communications and documents that "were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Defendants' work-product assertions can be divided into similar categories as the attorney-client assertions.

---

[4] To be sure, amici acknowledged New Jersey's restriction on driver's information. *See* Dkt. No. 81-1 at 5. But New Jersey's information-sharing law was not in effect at the time DHS was formulating the February 5 decision, and in any event, the agency acknowledged and considered the potential impact of New Jersey's law during the course of its pre-decisional deliberations. *See* AR04.

(1)     *Communications Concerning Litigation Declarations* (Dkt. No. 113-1 ¶¶ 7-13, 19, 27; Dkt. No. 113-2 ¶¶ 8-12, 15-18):   This category of work-product assertions relates to the preparation of declarations submitted in support of the Government's motions.   "Courts have held that draft affidavits of parties to a litigation, prepared in consultation with counsel, are attorney work product."   *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09 Civ. 6552 (MWP), 2011 WL 4711961, at *9 (S.D.N.Y. Sept. 9, 2011) (collecting cases). Further, "communications with counsel relating to affidavits" are also "covered by the work-product rule."   Richard L. Marcus, *The Work-Product Rule—Matters Protected by the Work-Product Rule*, 8 Fed. Prac. & Proc. Civ. § 2024 n.23 (3d ed. Apr. 2020).   And "[t]he lawyer's drafts, which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation."   *Inst. for Development of Earth Awareness v. PETA*, 272 F.R.D. 124, 124 (S.D.N.Y. 2011).   Accordingly, these redactions are proper because they concern the process by which Defendants' declarations were drafted and revised.

(2)     *Communications Concerning Litigation Filings* (Dkt. No. 113 at 3, 4 ¶ 2, 12 ¶ 4, 13, n.11, 14 ¶ 3, 15 ¶ 3; Dkt. No. 113-1 ¶¶ 28-29):   These redactions reflect communications between DOJ attorneys and agency counsel during the course of preparing filings in this litigation. They include comments on draft litigation filings (other than those related to the preparation of the Government's summary judgment submissions, which are discussed in the paragraph immediately below).   This material falls within the core of the work-product protection, which is designed to allow an attorney to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" by "assemb[ing] information," "sift[ing] what he considers to be the relevant from the irrelevant facts," "prepar[ing] his legal theories," and "plan[ning] his

strategy without undue and needless interference." *Hickman*, 329 U.S. at 510-11; *see also In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) ("Protection is needed because an attorney preparing for trial must assemble much material that is outside the attorney-client privilege.") (quotation marks omitted). Communications surrounding the preparation of litigation filings are routinely found to be protected. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 800 F. Supp. 2d 202, 212 (D.D.C. 2011) ("e-mail messages forwarding and transferring . . . draft memoranda and draft pleadings" that "contain analysis, discussions, questions, suggestions, revisions, . . . requests for additional legal research, requests for supporting evidence for various legal claims, and discussions about alternate proposals for claims of relief" are work-product protected) (quotation marks omitted).

(3)     *Communications Concerning the July 23 Letter* (Dkt. No. 113 at 2, n.3, n.4, 6 ¶ 2, 7 ¶ 2, 15 § A; Dkt. No. 113-1 ¶¶ 14-18; Dkt. No. 113-2 ¶¶ 5, 13, 20-24):  These redactions concern the collection of information by agency counsel to support the Government's summary judgment submissions, which ultimately led to the Government's July 23 letter.  They are protected by the work-product protection because they reflect the process by which agency counsel "assemb[led] information" and "sift[ed] what [they] consider[ed] to be the relevant from the irrelevant facts." *Hickman*, 329 U.S. at 510-11.

(4)     *Communications Subsequent to the Green Light Law Amendment* (Dkt. No. 113 at 12 ¶ 2):  This redaction is supported by the work-product protection because it summarizes emails exchanged between agency counsel and DOJ attorneys in order to assist the Government in ongoing settlement negotiations.  *See, e.g.*, *Cities Service Co. v. FTC*, 627 F. Supp. 827, 832 (D.D.C. 1984) ("[A]ny attorney's notes or working papers which relate to . . . possible settlement

discussions pertaining to foreseeable litigation are protected under the attorney work-product privilege.").

(5)     *Communications Concerning the Report and Corrective Declarations* (Dkt. No. 113 at 4 ¶ 2, 15-16; Dkt. No. 113-1 ¶¶ 19, 23-24, 30; Dkt. No. 113-2 ¶ 6): Finally, these redactions fall within the work-product protection because they relate to the contents of the internal investigation undertaken by the Government pursuant to the Court's July 29 order. "Generally, documents created as part of an internal investigation . . . are considered to be made in anticipation of litigation for the purposes of the work product doctrine." *In re Linerboard Anitrust Litigation*, 237 F.R.D. 373, 381 (E.D. Pa. 2006). As one court in this district noted, "excessively narrow discovery rulings with respect to the . . . work product privilege may discourage internal investigations at the request of counsel, turning such inquiries into inquiries for the benefit of both parties and chilling development of valid claims or defenses." *Gray v. Cleaning System and Suppliers, Inc.*, 143 F.R.D. 48, 49 (S.D.N.Y. 1992). Because these redactions protect information discussing aspects of the Government's internal investigation, they are subject to the work-product protection.

2.     **The Crime-Fraud Exception Is Inapplicable and Does Not Vitiate Defendants' Work-Product Protection.**

As with the attorney-client privilege, Plaintiffs' contention that the work-product protection should be vitiated by the crime-fraud exception is mistaken. Dkt. No. 114. "The crime-fraud exception applies to the work-product doctrine just as it does to the attorney-client privilege." *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001). For the reasons stated above, Plaintiffs' crime-fraud arguments are wholly unsupportable.

C.     **Deliberative-Process Privilege**

1.     **Defendants' Deliberative-Process Privilege Assertions Are Proper.**

Defendants properly assert the deliberative-process privilege over three redactions in the report, *see* Dkt. No. 113 at 12, 14, and one redaction in the declaration of Deputy Commissioner Robert Perez, *see* Dkt. No. 113-2 ¶ 10.  As explained in the declaration of David R. Dorey, the three redactions in the report reflect deliberative, pre-decisional communications within DHS regarding potential policy responses to New York's amendment of the Green Light Law.  *See* Declaration of David R. Dorey ¶¶ 5-7.  The redacted material in the declaration of Deputy Commissioner Perez summarizes deliberative, pre-decisional communications between CBP and DHS assessing data-restriction laws enacted by other states.  *See id.* ¶ 4.  These are matters that the deliberative-process privilege is designed to protect, both because they reflect "factors considered" in determining agency policy, *see, e.g., Poll v. U.S. Office of Special Counsel*, 208 F.3d 226, 2000 WL 14422, at *2-3 (10th Cir. Oct. 14, 1999) (Table Op.), and because they reflect communications between an agency and its counsel concerning policy formulation in the midst of legal controversy, *see, e.g., Murphy v. Dep't of Army*, 613 F.2d 1151, 1154 (D.C. Cir. 1979).

2.     **Plaintiffs Cannot Overcome the Privilege.**

Plaintiffs' contention that the deliberative-process privilege should be overridden, Dkt. No. 114, overestimates the significance of these minor redactions to the remaining aspects of this litigation.  These redactions do not "shed light on government misconduct," as Plaintiffs suggest. *Id.* (quoting *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997)).  Moreover, ordering the disclosure of internal discussions of potential policy implications surrounding the enactment of New York's amendment to the Green Light Law is more likely to cause "future timidity" on the part of "government employees who will be forced to recognize that their secrets are violable," than to benefit Plaintiffs in the remaining issues in this litigation.  *See Winfield v. City of New York*,

No. 15 Civ. 5236 (LTS) (KHP), 2018 WL 716013, at *6 (S.D.N.Y. Feb. 1, 2018) (quotation marks omitted).[5]

### D.      Law-Enforcement Privilege

#### 1.      Defendants' Law-Enforcement Privilege Assertions Are Valid.

Defendants' law-enforcement privilege assertions all derive from paragraphs 20-22 of the updated declaration of Pete R. Acosta.  *See* Dkt. No. 113-1 ¶¶ 20-22; Dkt. No. 113 at 6.  As explained in the declaration of William A. Ferrara, these redactions all concern the factors considered by CBP officers when determining whether it is necessary to query driver's records for a particular TTP applicant.  *See* Declaration of William A. Ferrara ¶¶ 8-13.  The redactions are proper because they protect "law enforcement techniques and procedures" and because their disclosure could "impair the ability of a law enforcement agency to conduct future investigations." *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (quotation marks omitted); *see also Abdou v. Gurrieri*, No. 05 Civ. 3946 (JG) (KAM), 2006 WL 2729247, at *3 (E.D.N.Y. Sept. 25, 2006) (documents that "would reveal how the FBI follows up on confidential lead[s] and the tools, techniques and procedures utilized in such an investigation" are law-enforcement privileged) (quotation marks omitted).

#### 2.      Plaintiffs Cannot Overcome the Privilege.

Earlier in this litigation, the Court found that similar information in the TTP Handbook was law-enforcement privileged, but ordered it disclosed to Plaintiffs subject to a protective order

---

[5] Although Plaintiffs argue that "this litigation is extremely consequential" and that the withheld deliberative information "is relevant to further proceedings in this case," Dkt. No. 114 at 3, the only remaining issue for which they could use this information is to seek attorney's fees or other sanctions.  The Government has conceded the merits of this case and is awaiting entry of judgment.

because of its significance to the merits of these matters. Dkt. No. 62 at 9-10.[6] Contrary to Plaintiffs' argument (Dkt. No. 114 at 4), the analysis that led to this limited disclosure does not apply to these redactions at this stage of the litigation. The Court's earlier determination turned on its assessment that resolution of the merits of Plaintiffs' claims "requires an understanding of the vetting process and relevant standards, especially concerning criminal offenses." Dkt. No. 62 at 10. Now, after Defendants have withdrawn their motions and New York residents are eligible to apply for Trusted Traveler Programs, Plaintiffs have no further need for law-enforcement privileged information. At most, it appears that Plaintiffs seek this information to support their claim for attorney's fees. But the technical information redacted from the report and declarations has no bearing on the issue of bad faith, and there is accordingly no reason to order disclosure of this law-enforcement information.

E.     **Names of Low-Level DHS and CBP Employees**

The Government also seeks to protect the names of low-level DHS and CBP employees. These redactions are reflected on page 18 of the report. Dkt. No. 113 at 18. As explained in the Government's letter motion, because the names of low-level employees are "largely unrelated to the public interest," they may properly be withheld. *In re Savitt/Adler Litigation*, No. 95 Civ. 1842 (RSP) (DRH), 1997 WL 797511, at *4 (N.D.N.Y. Dec. 23, 1997); *see also id.* ("[T]he public can assess the Attorney General's actions without the names of the individual [Assistant Attorneys General].""); *Kelly v. City of New York*, No. 01 Civ. 8906 (AGS) (DF), 2003 WL 548400, at *6 (S.D.N.Y. Feb. 24, 2003) ("[T]he public can assess the City's actions in discharging Plaintiffs

---

[6] Plaintiffs erroneously argue that the Court "rejected multiple assertions of the law enforcement privilege" in the TTP Handbook. Dkt. No. 114 at 4. In fact, the Court found that "the [law-enforcement privilege] attaches, but the strong presumption against disclosure is overcome." Dkt. No. 62 at 9.

without the names of the individual employees."). Redaction of these names is particularly important in the context of the Government's report because it prevents these employees from being connected to sensitive circumstances: the Court's investigation into fraud. *Cf. Kelly*, 2003 WL 548400, at *6 (permitting redaction of names to prevent their connection to "allegations that have not been fully investigated, substantiated, or proven"). Moreover, Plaintiffs did not address Defendants' arguments in favor of redacting the names of low-level employees in their September 10 opposition papers. *See generally* Dkt. No. 114. Therefore, they have conceded them. *Felske v. Hirschmann*, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

\* \* \*

For the foregoing reasons, the redactions in the Government's publicly filed report and declarations are justified by the asserted privileges and interests, and this material should therefore be subject to a protective order.

## II. Defendants Did Not Waive Their Privileges by Submitting an Unredacted Report and Declarations to the Court for *Ex Parte* Review.

The Government also has not waived the privileges that apply to portions of the report and declarations. The Government filed public versions of those documents that redacted privileged material; provided *ex parte*, unredacted versions for the Court's review; and filed a letter motion supporting their assertions of privilege and seeking permission for privileged material to remain under seal. Dkt. Nos. 111-13. The Government's submissions complied with the Court's rules for filing documents subject to redaction. *See* Individual Rule 7(C)(iii). Plaintiffs, in their response to the Government's request for a protective order, did not argue that the Government's *ex parte* submission constituted a waiver of privilege. *See generally* Dkt. No. 114. Nonetheless, the Court ordered the Government to "address whether, insofar as the Court did not order them to submit allegedly privileged documents in connection with the report, disclosure of the unredacted

documents to the Court constitutes waiver of any or all of the privileges asserted." Dkt. No. 116 at 2.

On its face, the nature of the inquiry ordered by the Court necessitated the discussion of privileged communications. Indeed, one of the categories of information that the Court ordered the Government to include in its "comprehensive and detailed report" was to "[s]ummarize[], with respect to each [inaccurate or misleading] statement, what due diligence, if any, counsel for Defendants conducted before filing the document(s) containing the statement to determine whether the statement was accurate." Dkt. No. 92 at 5. The Government simply could not provide a complete account of the inaccurate and misleading statements in its submissions without addressing attorney-client communications, pre-decisional and deliberative communications and materials, attorney work-product information, and law-enforcement information. It would therefore place the Government in an untenable position were the Court to find that the Government's good-faith attempt to conduct the inquiry mandated by the Court necessarily waived otherwise applicable privileges. The law does not support such a finding—disclosure of privileged materials to a Court for *ex parte* review does not waive privilege.

## A.   The Government's Disclosure of Privileged Information Was Not Voluntary.

On July 29, 2020, the Court ordered the Government to make a "comprehensive record of any and all 'inaccurate' or 'misleading' statements in their prior submissions." Dkt. No. 92 at 5. That report was to include, among other things: (1) "what due diligence, if any, counsel for Defendants conducted before filing" certain litigation documents, *id.*; (2) "when and how counsel for Defendants learned about the inaccurate and misleading statements, including but not limited to who at DHS contacted counsel about the statements," *id.* at 5-6; and (3) "who, when, and how DHS discovered that the record in these cases contained inaccurate and misleading statements," *id.* at 6. Similarly, the Court ordered each declarant who had executed a declaration that contained

an inaccurate or misleading statement to file a new declaration explaining "what steps the declarant took, prior to signing the declaration, to confirm the accuracy of the statement or statements," and "when and how the declarant learned that the statement or statements were inaccurate or misleading." *Id.*

An inquiry into the research and diligence conducted by counsel underlying litigation filings necessarily implicates both attorney-client privileged communications and work-product protected documents. *Compare Upjohn Co.*, 449 U.S. at 391 (attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."), *with* Dkt. No. 112 at 12 § C (discussing requests for, and provision of, information for legal advice); *also compare Shoenmann v. FDIC*, 7 F. Supp. 3d 1009, 1014 (N.D. Cal. 2014) (collecting cases holding that draft declarations and emails related to those drafts "constitute work product and are protected from disclosure"), *with* Dkt. No. 112-1 ¶¶ 7-8 (discussing the research underlying draft declaration). Further, the Court-mandated inquiry into when and how individuals discovered relevant information necessarily implicated periods of policy formulation at DHS, requiring discussion of deliberative-process privileged communications. *See, e.g.*, Dkt. No. 112 at 12. And the Government's report and declarations could not address inaccuracies in law-enforcement privileged statements without addressing related law-enforcement privileged information. *See, e.g.*, Dkt. No. 112-1 ¶¶ 20-21.

To ensure a thorough account, the Government's response to the Court-ordered inquiry required the discussion of privileged materials. "Involuntary disclosures do not automatically waive the attorney-client privilege." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012); *see also In re Parmalat Securities Litigation*, No. 04 Md. 1653 (LAK) (HBP), 2006 WL

3592936, at *4 (S.D.N.Y. Dec. 1, 2006) ("While voluntary or even inadvertent disclosure of documents may result a waiver of privilege, involuntary or compelled disclosure does not give rise to a waiver."). "[F]or example, . . . 'a party does not waive the attorney-client privilege for documents which he is *compelled* to produce.'" *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992) (quoting *Transamerica Computer v. IBM*, 573 F.2d 646, 651 (9th Cir. 1978)) (emphasis in original). "When the disclosure is involuntary," courts "find the privilege preserved if the privilege holder has made efforts reasonably designed to protect and preserve the privilege." *Id.* at 750 (quotation marks omitted). Here, the Government made every effort to preserve its privileges by redacting and labeling every privileged portion of the report and declarations on the public docket, supporting those redactions by motion, and submitting unredacted documents for the Court's *ex parte* review. *Cf. Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373, 378-79 (E.D.N.Y. 2011) (attorney-client privilege was waived when plaintiff filed memoranda "on the publicly-accessible electronic docket, without undertaking to file the documents under seal or *in camera*, and . . . served copies of the [memoranda] upon Defendants' counsel directly").

Moreover, the Government's actions comported with the Court's individual rules, *see* Individual Rule 7(C)(iii), procedures followed at other junctures in these cases, *see, e.g.*, Dkt. Nos. 36-38, and the protocol previously ordered by the Court when it considered material over which privileges were asserted, *see* Dkt. No. 51. In short, because the Government's production of privileged materials to the Court for its *ex parte* review was not voluntary, but rather was compelled by the Court, and because the Government took clear steps to assert its privileges and maintain them while still providing the Court with the materials necessary to evaluate both the Government's investigation and its assertion of privilege, there is no waiver here.

**B.    Disclosure of Privileged Information to a Court for Ex Parte Review Does Not Waive Privilege.**

The Court should not find waiver of the Government's privileges here for a second, related reason: the law is clear that submission of privileged materials to a court *ex parte* for its review does not constitute a waiver of privilege.  "The Supreme Court has repeatedly looked with favor upon the practice of *in camera* review of various privileges against disclosure."  *Estate of Fisher v. Comm'r*, 905 F.2d 645, 650 (2d Cir. 1990) (citing cases); *see also In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (collecting cases and noting that "*in camera* review" was "a practice both long-standing and routine in cases involving claims of privilege").  Accordingly, the law is clear that "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege."  *United States v. Zolin*, 491 U.S. 554, 568 (1989).  And the Supreme Court has long expressed the view that *in camera* review is "highly appropriate and useful" for assertions of privilege made by the government.  *See Kerr v. U. S. Dist. Court for N. Dist. of California*, 426 U.S. 394, 406 (1976).  Furthermore, the value of *in camera* submissions has been recognized in contexts beyond the resolution of privilege claims, such as where the disclosure of privileged information to the Court was necessary for a party to explain its position.  *See, e.g.*, *United States v. Hoey*, No. 11 Cr. 337 (PKC), 2015 WL 13846912, at *3 (S.D.N.Y. Mar. 24, 2015) ("*In camera* submissions enable the lawyer to explain the reasons for withdrawal [of representation] to the Court without concern that an applicable privilege is waived or without alerting the adversary to information that could harm the client."); *see id.* ("Protection against unfounded grounds for withdrawal supports the need for judicial review of those grounds *in camera* without fear of waiver of any privilege.").  The same interest that requires submission of privileged information *ex parte* to support a motion to withdraw as attorney—

20

providing necessary information to the Court without publicly disclosing material that could harm the client—also supports the *ex parte* submission of privileged information here.

The Government's submissions of the unredacted report and declarations therefore did not waive the applicable privileges. Again, the Government's disclosure of privileged information was necessitated by the nature and scope of the Court's July 29, 2020, order. Had the Government filed a report and declarations without addressing privileged communications, it would have been able to proffer no more than conclusory statements in response to the Court's order; such a response would have not only defied the Court's order, but also would have undermined the very purpose of the Court's inquiry. *See* Dkt. No. 92 at 5 ("[T]he Court finds that a limited inquiry is appropriate now, if only to aid the Court in deciding later whether and to what extent a more detailed inquiry is warranted."). But while the Government disclosed privileged communications for *in camera* review in order to enable the Court to conduct its inquiry and "to help the Court in deciding how to proceed down the line," *see id.* at 5, the Government made every effort to preserve its privileges, as discussed above. *Cf. E. Point Sys., Inc. v. Maxim*, No. 13 Civ. 00215 (VAB), 2015 WL 8023569, at *4 (D. Conn. Dec. 4, 2015) (attorney-client privilege was waived when plaintiff disclosed the allegedly privileged exhibit by, *inter alia*, "publicly filing it in this case, making no effort to file it under seal or *in camera*"). The Government should not lose its ability to protect its privileges based on its efforts to provide the Court with a "comprehensive record of any and all 'inaccurate' or 'misleading' statements in their prior submissions," particularly where, as here, the Government made every effort to protect those privileges. If the Government's compliance with the Court's Individual Rules for seeking leave to file redacted documents constitutes a waiver of privilege, it is unclear how the Government could have sought permission to file portions of its report and its declarations under seal.

* * *

Defendants' disclosure of privileged communications to the Court for its *in camera* review was necessitated by the nature of the Court's ordered inquiry and did not constitute a waiver of privilege.

## CONCLUSION

For the foregoing reasons, Defendants' motion for a protective order should be granted.

Dated: September 21, 2020
      New York, NY

<div style="margin-left: 50%;">

Respectfully,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:    /s/ Zachary Bannon
      ZACHARY BANNON
      ELIZABETH J. KIM
      CHRISTOPHER CONNOLLY
      Assistant United States Attorneys
      86 Chambers St. 3rd Floor
      New York, New York 10007
      Tel.:    212-637-2728, 2745, 2761
      Fax:    212-637-2717
      E-mail: Zachary.Bannon@usdoj.gov
               Elizabeth.Kim@usdoj.gov
               Christopher.Connolly@usdoj.gov

</div>