UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
STATE OF NEW YORK, :
:
:
Plaintiff, :
: 20-CV-1127 (JMF)
-v- :
:
CHAD F. WOLF, *in his official capacity as Acting* :
*Secretary of Homeland Security*, et al., :
:
Defendants. :
:
------------------------------------------------------------------------X
:
R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of* :
*themselves and all similarly situated individuals*, :
:
: 20-CV-1142 (JMF)
Plaintiffs, :
:
-v- : OPINION AND ORDER
:
CHAD F. WOLF, *in his official capacity as Acting* :
*Secretary of Homeland Security*, et al., :
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiffs in these two lawsuits challenge a decision of the U.S. Department of Homeland Security ("DHS") to suspend the eligibility of all New York residents to enroll or re-enroll in the Trusted Traveler Programs ("TTPs") operated by U.S. Customs and Border Protection ("CBP"). DHS's decision (the "TTP Decision") was announced in a February 5, 2020 letter authored by Defendant Chad Wolf, purportedly the Acting Secretary of Homeland Security. *See* ECF No.

75-1 ("AR"), at 1-3.¹  Plaintiffs — the State of New York ("New York") and a since-certified class of New Yorkers — sued a few days later, alleging that DHS's decision violates the Fifth and Tenth Amendments of the United States Constitution, as well as provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*  *See* ECF No. 1 ("New York Compl."), ¶¶ 104-40; 20-CV-1142, ECF No. 24 ("Lewis-McCoy Compl."), ¶¶ 112-16.  Thereafter, Defendants filed a motion to dismiss Plaintiffs' constitutional claims and a motion for summary judgment on Plaintiffs' APA claims; Plaintiffs cross-moved for summary judgment on their APA claims.  *See* ECF Nos. 29, 67, 78; 20-CV-1142, ECF Nos. 32, 73, 84.

On July 23, 2020 — the day before Defendants' opposition to Plaintiffs' cross-motion was due, *see* ECF No. 61 — DHS announced that it was "lift[ing] its ban on the Trusted Traveler Program (TTP) for New York residents," effective immediately.  *New York Amends Dangerous Green Light Law to Cooperate with Federal Law Enforcement on DMV Records*, U.S. DEP'T OF HOMELAND SEC. (July 23, 2020), https://www.dhs.gov/news/2020/07/23/new-york-amends-

---

¹ Unless otherwise noted, all references to docket entries are to 20-CV-1127; citations to the administrative record refer to the Bates-stamped page numbers beginning with the prefix "DHSGLL."  The Court uses the word "purportedly" because there is some doubt whether Wolf was then (and is now) lawfully exercising the authority of Acting Secretary of Homeland Security.  *See, e.g.*, *Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*, No. 19-3283 (RDM), 2020 WL 5995206, at *24 (D.D.C. Oct. 8, 2020) (holding that the appointment of Wolf as Acting Secretary was legally ineffective); *Immigrant Legal Res. Ctr. v. Wolf*, — F. Supp. 3d —, No. 20-CV-05883-JSW, 2020 WL 5798269, at *9 (N.D. Cal. Sept. 29, 2020) (finding that the plaintiffs were "likely to succeed on the merits of their claim that Mr. Wolf was not validly serving in office"); *Casa de Md., Inc. v. Wolf*, — F. Supp. 3d —, No. 8:20-CV-02118-PX, 2020 WL 5500165, at *23 (D. Md. Sept. 11, 2020) (finding that the plaintiffs were "likely to demonstrate" that "Wolf's installation as Acting Secretary" was unlawful); U.S. GOV'T ACCOUNTABILITY OFF., B-331650, DEPARTMENT OF HOMELAND SECURITY — LEGALITY OF SERVICE OF ACTING SECRETARY OF HOMELAND SECURITY AND SERVICE OF SENIOR OFFICIAL PERFORMING THE DUTIES OF DEPUTY SECRETARY OF HOMELAND SECURITY 11 (2020) ("GAO Report") ("Wolf . . . w[as] named to the[] . . . position[] of Acting Secretary . . . by reference to an invalid order of succession.").  The Court need not and does not opine on that question here and, thus, refers to him below as "Acting Secretary Wolf."

dangerous-green-light-law-cooperate-federal-law-enforcement-dmv ("TTP Renewal Announcement").  Later that same day, Defendants wrote to the Court to acknowledge and "correct several statements in [D]efendants' briefs and declarations, and to withdraw [D]efendants' motion to dismiss and motion for summary judgment, along with the materials submitted in support of those motions."  ECF No. 89 ("Defs.' July 23 Ltr."), at 1 (citations omitted).  Defendants have conceded, however, that the cases are not moot due to certain "lingering operational effects" of the TTP Decision, among other things.  ECF No. 94, at 2.  That leaves Plaintiffs' cross-motion for summary judgment on their APA claims, which Defendants do not oppose.  For the reasons that follow, Plaintiffs' motion is granted.

## BACKGROUND

The following background facts, drawn from the admissible materials submitted by the parties and materials of which the Court may take judicial notice, are undisputed except where noted.  *See, e.g.*, *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

**A.  The TTPs and New York's Green Light Law**

Federal law mandates that DHS "establish an international registered traveler program . . . to expedite the screening and processing of international travelers, including United States Citizens and residents, who enter and exit the United States."  8 U.S.C. § 1365b(k)(3)(A).  DHS is required to "ensure that the international registered traveler program includes as many participants as practicable by — (i) establishing a reasonable cost of enrollment; (ii) making program enrollment convenient and easily accessible; and (iii) providing applicants with clear and consistent eligibility guidelines."  *Id.* § 1365b(k)(3)(E).  Consistent with these mandates, CBP operates a number of TTPs for international travelers, including Global Entry, NEXUS, Secure Electronic Network for Travelers Rapid Inspection ("SENTRI"),

and Free and Secure Trade ("FAST").  *See* AR 50.  These TTPs "allow pre-enrolled, low-risk participants to receive expedited border processing, enabling CBP to direct additional scrutiny to the unknown, potentially higher risk, travelers arriving at ports of entry."  *Id.*  By January 2020, "[m]ore than 814,000 NY residents [we]re CBP TTP members and over 62,000 NY residents ha[d] a TTP application pending vetting."  *Id.* at 34.

On June 17, 2019, New York enacted the Driver's License Access and Privacy Act, 2019 Sess. Laws of N.Y. ch. 37 (A. 3675-B), also known as the "Green Light Law."  To the extent relevant here, the Act had two effects.  First, it authorized the New York State Department of Motor Vehicles ("DMV") to issue driver's licenses to New York State residents without regard to citizenship or immigration status.  *See* N.Y. VEH. & TRAF. LAW § 502(8)(b).  And second, it prohibited disclosing or making accessible records or information for driver's license applicants and holders to federal immigration authorities absent a court order or judicial warrant from an Article III judge.  *See id.* § 201.  The law took effect on December 14, 2019.  AR 1.

**B.  The TTP Decision**

Two days after the Green Light Law took effect, then-Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Matthew Albence emailed several DHS officials, including Defendant Mark Morgan, the Acting Commissioner of CBP: "Have we looked at how we can take a DHS-wide approach to deal with this issue? . . . [W]e need to try to take a consolidated approach to look at what services we can immediately pull back from NY as a result of this (. . . I know in other contexts [some have] mentioned things like no longer adjudicating applications, etc.). . . .  I think we need to be aggressive, as this will likely spread to other localities if there is not a strong response from us."  *Id.* at 65.  On December 23, 2019, Albence participated in a meeting with, among others, Morgan and Ken Cuccinelli, the Senior

4

Official Performing the Duties of the Deputy Secretary for DHS, "to discuss the impact that the Green Light Law has on DHS and its components." *Id.* at 67; *see also id.* at 69.[2]

On December 30, 2019, Acting Secretary Wolf sent a memorandum directing each DHS operational component head "to conduct an assessment of the impact of" laws passed by "[c]ertain state legislatures . . . restricting their respective [DMV] agencies from sharing information with [DHS]." AR 4. Later that same day, CBP responded with a memorandum assessing the Green Light Law's impact on its operations. *See id.* at 6-8. The assessment stated that the law would impact CBP's ability to "[v]alidate[e] NY driver's licenses presented as part of the interview process for issuance of the TTP cards," but provided no further details on what this impact would entail. *Id.* at 6. CBP followed up with another memorandum on January 8, 2020, *see id.* at 9-13, explaining that "CBP access to NY DMV records" via a third-party database known as NLETS "has been discontinued" as a result of the Green Light Law, *id.* at 9, and that "NLETS enables CBP to validate NY driver's license identity during the interview process for issuance of the TTP cards," *id.* at 10-11. On January 27, 2020, after receiving responses from each DHS component, the Senior Official Performing the Duties of the Under Secretary of the Office of Strategy, Policy, and Plans sent Acting Secretary Wolf a memorandum summarizing the Green Light Law's operational impact. *See id.* at 31-41. The only TTP-related impact identified was, once again, that "[a]ccess to DMV information through [NLETS] helps CBP in confirming identity and making eligibility determinations for issuance of its TTP cards." *Id.* at 34. The memorandum further acknowledged that, in addition to New York, several other

---

[2]    As with Wolf's appointment as Acting Secretary, there is some reason to doubt the legality of Cuccinelli's appointment as Senior Official Performing the Duties of the Deputy Secretary, *see* GAO Report 2, 10-11, but the Court need not and does not address the issue here.

states and territories "also restrict access of DMV information for immigration enforcement purposes." *Id.* at 32.

On February 4, 2020, Pete Acosta, CBP's Trusted Traveler Programs Director, sent an email stating that "[t]he NY Green Light law would prevent CBP from receiving information relating to criminal convictions involving motor vehicles." *Id.* at 62. This is the first appearance of this concern in the administrative record. The next day, Acting Secretary Wolf announced the TTP Decision in a letter to two New York State officials, *see id.* at 1-3, explaining that, effective immediately, "New York residents will no longer be eligible to enroll or re-enroll in CBP's Trusted Traveler Programs" because the Green Light Law "prevents DHS from accessing New York DMV records in order to determine whether a TTP applicant or re-applicant meets program eligibility requirements," *id.* at 3. The Green Light Law, he wrote, "prevents DHS from accessing relevant information that only New York DMV maintains, including some aspects of an individual's criminal history" and therefore "compromises CBP's ability to confirm whether an individual applying for TTP membership meets program eligibility requirements." *Id.* at 2.

## C. Procedural History

Within days of the TTP Decision's announcement, Plaintiffs filed these lawsuits. On April 3, 2020, New York amended its Green Light Law to provide for the sharing of DMV information with federal immigration authorities "as necessary for an individual seeking acceptance into a trusted traveler program, or to facilitate vehicle imports and/or exports." Act of April 3, 2020, 2020 N.Y. Sess. Laws ch. 58, pt. YYY (S. 7508-B). On April 15, 2020, Defendants moved to dismiss Plaintiffs' constitutional claims. *See* ECF No. 29. In their brief opposing that motion, Plaintiffs requested that the Court take judicial notice of the amendment to the Green Light Law, arguing that, in light of the amendment, "the sole policy aim that

Defendants purport to rely upon — access to DMV records for vetting applicants — no longer even arguably exists." ECF No. 46, at 21 & n.12; *see also id.* at 2 n.1, 7 n.3. In their reply, filed on May 6, 2020, Defendants disagreed. The amendment, they argued, should not "alter the Court's analysis" because "New York has not yet restored CBP's access to the DMV records" so "the unimplemented amendment fails to remedy the informational gap created by the Green Light Law." ECF No. 49, at 1 n.1. On June 17, 2020, Defendants produced the initial administrative record, ECF No. 66, and two days later moved for summary judgment on Plaintiffs' APA claims. *See* ECF No. 67. In their brief, and in a sworn declaration submitted by CBP's Deputy Commissioner, Defendants again argued that "New York's Amendment to the Green Light Law during the course of this litigation does not change the result." ECF No. 68 ("Defs.' MSJ Mem."), at 24; *see also* ECF No. 68-3 ("Perez Decl."), ¶ 6. Defendants produced a corrected administrative record on June 29, 2020. AR. On July 10, 2020, Plaintiffs cross-moved for partial summary judgment on their APA claims. *See* ECF No. 78.

On July 23, 2020, in a rather surprising turn of events, DHS announced that it would "lift its ban on the [TTP] for New York residents," citing as the basis for the policy reversal New York's decision (three months earlier) to "amend[] the Green Light Law to expressly allow for information-sharing of NY DMV records 'as necessary for an individual seeking acceptance into a trusted traveler program, or to facilitate vehicle imports and/or exports'" — i.e., the very same statutory amendment that Defendants had previously maintained was inadequate to affect the basis for the TTP Decision. TTP Renewal Announcement (quoting S. 7508-B). Later that same day, the Court ordered the parties to "confer and advise the Court what effect that announcement [had] on these cases, including whether or when they should be dismissed as moot." ECF No. 88. Later that evening, Defendants wrote to the Court to explain that they had recently learned

that several "statements and representations" made in the course of this litigation were "inaccurate in some instances and [gave] the wrong impression in others." Defs.' July 23 Ltr. 2. "These revelations," they conceded, "undermine[d] a central argument in [D]efendants' briefs and declarations to date: that CBP is not able to assure itself of an applicant's low-risk status because New York fails to share relevant DMV information with CBP for TTP purposes." *Id.* "Because this argument supplies *the* rationale for the TTP Decision," Defendants continued, "and supports [D]efendants' defense of the TTP Decision, [D]efendants have determined that the proper course of action is to withdraw their motion to dismiss and motion for summary judgment." *Id.* (emphasis added).

On July 28, 2020, Defendants wrote to advise the Court of their view that "these actions are now moot and should be dismissed" because the rescission of the TTP ban for New York residents "afforded [P]laintiffs the full relief they seek." ECF No. 90 ("Defs.' July 28 Ltr."), at 1. In doing so, Defendants reiterated their conclusions that "the rescinded TTP Decision is not legally supportable" and "that a central argument in [Defendants'] defense of [the TTP Decision] was premised on an erroneous foundation." *Id.* at 2. Plaintiffs filed a letter contending that the cases were not moot, both "because DHS's lifting of the Ban satisfies the voluntary cessation exception to the mootness doctrine," ECF No. 91, at 1 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000)), and because "Plaintiffs may be entitled to additional relief for Defendants' imposition and maintenance of a ban that they have now conceded was without factual foundation," *id.* at 2 (citing *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012)). In light of these dueling letters, the Court set a formal briefing schedule on "the question of whether these cases should be dismissed as moot,"

noting that, "[i]n the event the Court determines the cases are not moot, Plaintiffs' cross-motion for summary judgment shall be treated as unopposed." ECF No. 92, at 4.

Defendants then reversed course yet again. In a letter filed on August 7, 2020, they conceded that — contrary to the position they had taken days earlier — "DHS's rescission of the TTP Decision has not yet mooted these cases" because "the effects of the TTP Decision have" not "been 'completely and irrevocably eradicated.'" ECF No. 94, at 1 (quoting *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)). Defendants explained, for example, that "New York residents whose membership lapsed during the period in which the TTP Decision was in place were unable to submit a renewal application that would have entitled them to benefit from the [18-month] grace period," and "[a]s such, [these] New York residents . . . will not have membership benefits until their new membership renewal applications have been finally adjudicated and approved." *Id.* at 2. In a separate letter filed that same day, Defendants acknowledged that their "July 23, 2020 and July 28, 2020 letters reflect the formal position of DHS" and may be "considered by the Court as admissions by counsel" in connection with Plaintiffs' summary judgment motion. ECF No. 95, at 2 (first citing *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009); then citing *Best v. District of Columbia*, 291 U.S. 411, 415 (1934)).[3]

---

[3] On October 8, 2020, Defendants wrote "to update the Court on [CBP's] efforts to resolve the residual effects of the rescinded policy at issue in these lawsuits," noting that some of the lingering operational effects of the TTP Decision have been remedied. ECF No. 121, at 1. That same day, the Court ordered Plaintiffs to respond, noting that "[b]ecause Defendants do not suggest otherwise, the Court assumes that, notwithstanding these developments, there are other 'lingering operational effects' of the TTP Decision that mean these cases are still not moot." ECF No. 122 (quoting ECF No. 94, at 2). The next day, Plaintiffs filed a letter contending that the case remained not moot, given that (1) "Defendants do not purport to have fully undone the impact of their unlawful conduct" and (2) "recent statements by Defendants and their representatives continuing . . . to defend their purported rationale for the TTP Ban give further reason to think Defendants will reinstate the Ban," suggesting the applicability of the voluntary cessation doctrine. ECF No. 123, at 1. In light of the foregoing, the Court concludes this case is not moot.

**LEGAL STANDARDS**

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). In ruling on a motion for summary judgment, a court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Rule 56(e) of the Federal Rules of Civil Procedure provides that if a party "fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co.*, 373 F.3d at 242. "In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow appellate review," although this does not require that the district court write an "elaborate essay[] using talismanic phrases." *Jackson v. Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014).

**DISCUSSION**

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Through these provisions, the APA "establishes a scheme of 'reasoned

10

decisionmaking.'" *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) ("*State Farm*")).  "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id.* Under the APA, therefore, courts must "hold unlawful and set aside" agency action that is "arbitrary" and "capricious."  5 U.S.C. § 706(2).  "Normally, an agency rule" or decision would qualify as "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.  Agency action can also fail arbitrary-and-capricious review if the agency does not reveal the actual "'basis' of its action," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-69 (1962)), fails to provide a "coherent explanation" of its decision, *Clark County v. FAA*, 522 F.3d 437, 443 (D.C. Cir. 2008) (Kavanaugh, J.), or fails to justify departures from past practice (by, for example, failing to persuasively distinguish contrary precedent), *Mfrs. Ry. Co. v. Surface Transp. Bd.*, 676 F.3d 1094, 1096 (D.C. Cir. 2012) (Kavanaugh, J.).  In short, arbitrary-and-capricious review implements the APA's requirement "that an agency's exercise of its statutory authority be *reasonable and reasonably explained*." *Id.* (emphasis added).

Applying these standards here, the Court concludes that Plaintiffs are entitled to summary judgment on the ground that the TTP Decision was arbitrary and capricious.  As an initial matter, the Decision is reviewable under the APA substantially for the reasons argued by Plaintiffs, *see* ECF No. 79 ("Pls.' Mem."), at 7-9, namely, because, in light of the governing statutes, "this is

11

not a case in which there is no law to apply," *Dep't of Commerce*, 139 S. Ct. at 2569 (internal quotation marks omitted).  And second, the Decision was plainly arbitrary and capricious.  Putting aside evidence that the TTP Decision was pretextual, *see* Pls.' Mem. 31-34, Defendants' *own* admissions establish that, at the very least, DHS "entirely failed to consider an important aspect of the problem" and "offered an explanation for its decision that r[an] counter to the evidence before the agency."  *State Farm*, 463 U.S. at 43.  The TTP Decision itself stated that New York residents would immediately be categorically ineligible for TTP applications or re-applications "[b]ecause the [Green Light Law] prevent[ed] DHS from accessing New York DMV records" containing "relevant information that only New York DMV maintains, including some aspects of an individual's criminal history."  AR 2-3.  According to DHS, the Green Light Law thereby "compromise[d] CBP's ability to confirm whether an individual applying for TTP membership meets program eligibility requirements."  *Id.* at 2.  As Defendants belatedly acknowledged, however, "several states, the District of Columbia, and a territory . . . do not currently provide access to driving history information, including driving-related criminal histories . . . [and] two territories do not participate in [NLETS] DMV-related queries, such that DMV records are not available to CBP (or other [NLETS] users).  Nevertheless, CBP has continued to accept, vet, and, where appropriate, approve TTP applications from these states and territories."  Defs.' July 23 Ltr. 2.  As Defendants conceded, these facts contradict "*the* rationale for the TTP Decision," *i.e.*, "that CBP is not able to assure itself of an applicant's low-risk status because New York fails to share relevant DMV information with CBP for TTP purposes."  *Id.* (emphasis added).

In short, Defendants themselves now acknowledge that the TTP Decision "was premised on an erroneous foundation" and "is not legally supportable."  Defs.' July 28 Ltr. 2.  For that

reason alone, the TTP Decision cannot stand. *See* 5 U.S.C. § 706 (providing that, where the APA has been violated, "the reviewing court *shall* . . . hold unlawful *and set aside* agency action" found to violate its terms (emphases added)). Of course, the usual APA remedy — vacatur and remand, *see, e.g.*, *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 6772 n.84 (S.D.N.Y. 2019), *aff'd*, 139 S. Ct. 2551 (2019) — is somewhat of an empty gesture here, as the TTP Decision has already been rescinded. But, as noted above, both sides agree that the case is not moot and, at a minimum, declaring the TTP Decision to be unlawful and formally vacating it ensure that it cannot be reinstated. Moreover, there are circumstances in which additional remedies are appropriate in APA cases. *See id.* at 672-73. Accordingly, as set forth below, the parties shall confer and submit a joint letter addressing whether there is a need or basis for other remedies and, if there is disagreement on the issue, proposing a procedure to resolve it.

## CONCLUSION

By making a decision that may well have been pretextual, and was certainly arbitrary and capricious, Defendants undermined the "core constitutional and democratic values" underlying the APA. *New York*, 351 F. Supp. 3d at 518. Making matters worse, when forced by Plaintiffs to defend their decision in court, Defendants initially did so by repeating their misleading, if not false, representations, in some instances under oath.[4] To their credit, Defendants eventually admitted that their decision had been legally indefensible. But it is hard to imagine that they would have done so but for the "thorough, probing, [and] in-depth review" that they faced by virtue of Plaintiffs' lawsuits. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,

---

[4] The Court is currently considering what additional steps, if any, to take with respect to Defendants' admitted misrepresentations. *See* ECF Nos. 92, 96, 100-09, 111-20. The Court's jurisdiction to do so is unaffected by entry of judgment in Plaintiffs' favor. *See* ECF No. 92, at 5 n.3 (citing cases).

415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The result is a vivid reminder of the "important" role that courts play "in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

For the reasons stated above, Plaintiffs' unopposed motion for summary judgment is GRANTED, the TTP Decision (to the extent that it is still in effect or having an effect) is formally VACATED, and the matter is remanded to DHS. **Within one week of this Opinion and Order**, the parties shall confer and submit a joint letter addressing whether there is a need or basis for additional remedies and, if there is disagreement, proposing a procedure to resolve it. If the parties agree that there is no need or basis for other remedies, Plaintiffs shall submit a proposed judgment consistent with this Opinion and Order (on ECF and, simultaneously, by email in Microsoft Word format) **by the same date**.

The Clerk of Court is directed to terminate 20-CV-1127, ECF No. 78 and 20-CV-1142, ECF No. 84.

SO ORDERED.

Dated: October 13, 2020
New York, New York

JESSE M. FURMAN
United States District Judge