UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>                Plaintiff,<br><br>v.<br><br>CHAD F. WOLF, in his official capacity as Acting Secretary of Homeland Security, et al.,<br><br>                Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY, et al., on behalf of themselves and all similarly situated individuals,<br><br>                Plaintiffs,<br><br>v.<br><br>CHAD WOLF, in his official capacity as Acting Secretary of Homeland Security, et al.,<br><br>                Defendants. | No. 20 Civ. 1142 (JMF) |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' JOINT MOTION FOR INJUNCTIVE RELIEF**

LETITIA JAMES
*Attorney General of the State of New York*

Daniela L. Nogueira
Matthew Colangelo
Elena Goldstein
28 Liberty Street
Office of the New York Attorney General
New York, New York 10005
Phone: (212) 416-6057
daniela.nogueira@ag.ny.gov

*Counsel for Plaintiff in 20 Civ. 1127*

Dated: November 13, 2020

NEW YORK CIVIL LIBERTIES FOUNDATION

Antony P.F. Gemmell
Molly K. Biklen
Jessica Perry
Jordan Laris Cohen
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, New York 10004
212-607-3300
agemmell@nyclu.org

*Counsel for Plaintiffs in 20 Civ. 1142*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................................... 1

ARGUMENT ................................................................................................................................... 4

    I.    This Court should issue an injunction to ensure that the Ban is not reinstated. ..... 4

    II.    To craft the proper injunction, this Court should hold that the Ban violated the APA's notice-and-comment requirements. ............................................................. 7

        A.    The Court should rule on Plaintiffs' notice-and-comment claim. .............. 7

        B.    The Ban violates the APA's notice-and-comment requirements ................ 9

    III.    Scope of Injunction. ............................................................................................. 10

CONCLUSION .............................................................................................................................. 10

# Table of Authorities

**Cases** ............................................................................................................................ Page(s)

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) ................................................................................ 5

*Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485 (D.C. Cir. 1983) ............ 9

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) ................ 8

*Gonnella v. U.S. Sec. & Exch. Comm'n*, 954 F.3d 536 (2d Cir. 2020) .......................................... 9

*Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015) .................................. 5

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ...................................... 6

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ................................................. 5, 6

*New York v. Trump*, No. 20 Civ. 5770 (RCW) (PWH) (JMF), 2020 WL 5422959 (S.D.N.Y. Sept. 10, 2020) ................................................................................................................ 6

*New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019) .................... 4, 5, 6, 7

*New York v. Wolf*, No. 20 Civ. 1127 (JMF), 2020 WL 6047817 (S.D.N.Y. Oct. 13, 2020) .......... 2

*Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308 (S.D.N.Y. 2018) ............................................................................... 5

*Pursuing America's Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) ....................................... 5

*Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22 (2d Cir. 1988) ............ 8

*Sweet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000) ........................................................................... 9

*United States v. Roman*, 770 F. Supp. 229 (S.D.N.Y. 1991) ....................................................... 8

*White v. Shalala*, 7 F.3d 296 (2d Cir. 1993) .............................................................................. 9

*Wong Yang Sung v. McGrath*, 339 U.S. 33, *modified*, 339 U.S. 908 (1950) ................................ 7

**Statutes, Rules, and Regulations**

N.Y. Veh. & Traf. Law § 201(12) ............................................................................................... 4

Part YYY, New York Senate Bill No. 7508 ................................................................................ 4

5 U.S.C. § 706(2) ............................................................................................................... 4, 7, 9

**INTRODUCTION**

For months, federal agencies misled Plaintiffs and this Court in order to defend and enforce a ban against all New York residents ("the Ban") from applying to federal Trusted Traveler Programs ("TTPs"). Despite knowing that New York was not the only jurisdiction that limited federal access to driver data, Defendants insisted that New York's law limiting access properly provided "the rationale" for a ban against New York alone. Even after finally admitting that rationale to be false, Defendants did not stop exploring how to punish New York. To this day, Defendants continue to evaluate whether and how to reinstate requirements that TTP applicants provide them with driver data. As such, beyond vacatur, an injunction is a necessary remedy to ensure that federal agencies will not violate the law again.

First, an injunction is a proper remedy where, as here, it is necessary to effectuate the Court's vacatur of the Ban. Second, to set the scope of the injunction, this Court should hold that the Ban failed to go through to notice-and-comment rulemaking as required for agency action that amounts to a legislative act. Reaching the merits of this question will give full effect to the APA and avoid additional litigation in the future. Accordingly, and finally, the Court should enjoin Defendants from reinstating the Ban or altering application requirements for TTPs to require DMV access or driver information from applicants without going through the requisite notice-and-comment rulemaking process.

**FACTUAL BACKGROUND**

On February 5, 2020, Defendant Chad Wolf, purportedly the Acting Secretary of Homeland Security,[1] sent New York a three-page letter banning its residents from enrolling or

---

[1] As the Court previously noted, several courts and the U.S. Government Accountability Office have concluded that Defendant Wolf was at the time (and is now) likely unlawfully exercising the authority of Acting Secretary of Homeland Security. *New York v. Wolf*, No. 20 Civ. 1127

1

re-enrolling in TTPs on account of the newly effective Green Light Law that blocked federal access to residents' Department of Motor Vehicle ("DMV") records housed in the NLETS[2] database. *See* DHSGLL001–003. Within days, Plaintiffs filed suit challenging the Ban under the Administrative Procedure Act ("APA") and the Constitution. *See* New York Compl., ECF No. 1;[3] Lewis-McCoy Compl., No. 20 Civ. 1142, ECF No. 1.

For the next several months, Defendants filed brief after brief arguing that they had properly enacted the Ban because "no other state" failed to grant access to driver history documented in DMV records. *See, e.g.*, Defs.' Mem. Supp. Mot. to Dismiss 14, ECF No. 30. Defendants supported those briefs with multiple declarations from agency officials, echoing the same rationale. *See, e.g.*, ECF Nos. 68-1, 68-2, 68-3. At the same time, however, the administrative record showed that, as early as January 14, 2020, Defendants knew that several other jurisdictions either did not participate in NLETS or did not otherwise share DMV data with Defendants. *See* DHSGLL018–019, -032, -072–074.

On July 23, 2020, Defendants finally admitted they were wrong. *See* ECF No. 89. A day

---

(JMF), 2020 WL 6047817, at *1 n.1 (S.D.N.Y. Oct. 13, 2020) (collecting cases). Plaintiffs did not challenge the Ban on that ground in this litigation and refer to Defendant Wolf as "Acting Secretary Wolf" herein, without conceding that Defendant Wolf has exercised any lawful authority as Acting Secretary. *See, e.g.*, Pls.' Mot. for Partial Summ. J., *New York v. U.S. Dep't of Homeland Sec.*, No. 19 Civ. 7777 (GBD), ECF No. 241 (S.D.N.Y. filed Oct. 27, 2020) (arguing that DHS public charge inadmissibility rule is invalid because Wolf's predecessor was not lawfully serving as Acting Secretary, and Wolf lacked authority to ratify the rule); Pls.' Mot. for Partial Summ. J., *New York v. Trump*, No. 17 Civ. 5228 (NGG), ECF No. 275 (E.D.N.Y. filed Aug. 28, 2020) (arguing that interim changes to the Deferred Action for Childhood Arrivals program implemented in July 2020 are invalid because Wolf has never lawfully served in the role of Acting Secretary of Homeland Security).

[2] NLETS is a private, non-profit corporation that maintains a third-party database where numerous types of data are shared between participating state, federal, and international agencies. *See* DHSGLL016, -018, -029, -031.

[3] Unless otherwise noted, docket numbers refer to the docket in *New York v. Wolf*, 20 Civ. 1127.

before their summary judgment reply brief was due, Defendants abruptly rescinded the Ban and retracted each of their outstanding motions, briefs, and declarations. *See id.* By letter to this Court, Defendants explained that—just as the administrative record had made clear for months— "several states, the District of Columbia, and a territory . . . do not currently provide access to driving history information, including driving-related criminal histories." *Id.* at 2. Further, two other territories did not participate in NLETS' DMV data-sharing at all. *Id.*

On July 29, 2020, this Court issued an order regarding Defendants' "deeply troubling revelations." ECF No. 92, at 4. "For the sake of ensuring an accurate record and to help the Court in deciding how to proceed down the line," the Court ordered Defendants to file a report detailing their "inaccurate" and "misleading" statements. *Id.* at 4–5. Defendants ultimately filed a redacted report on September 8, 2020, prompting further briefing. *See* ECF Nos. 111–23.

As litigation over Defendants' false statements was ongoing, Defendants publicly and repeatedly stated that they were continuing to explore how to reinstate the Ban. On July 24, 2020, just one day after rescinding the Ban, Acting Secretary Wolf stated that his agency would "continue to work with our Department of Justice colleagues to see what we can do, perhaps through the legal system, to address" its objections to New York's Green Light Law.[4] On August 31, 2020, Defendants filed a letter in these actions apprising the Court that Customs and Border Protection ("CBP") is also "continuing to evaluate the means by which it can obtain DMV information." ECF No. 110. And, on September 30, 2020, CBP Deputy Commissioner Robert Perez testified before Congress that the agency is working on obtaining DMV

---

[4] Adam Shaw, *DHS Lifts New York Ban on Trusted Traveler Program*, Fox News (July 23, 2020), https://www.foxnews.com/politics/dhs-new-york-trusted-traveler-programs-green-light-law (second video).

3

information and asserted that New York remains "unique"[5]—even though New York amended its law to permit sharing DMV data with Defendants "as necessary" for TTP vetting.  *See* Part YYY, New York Senate Bill No. 7508; N.Y. Veh. & Traf. Law § 201(12) (McKinney 2020).

On October 13, 2020, this Court granted Plaintiffs' now-unopposed motion for summary judgment.  The Court reasoned that the Ban was arbitrary and capricious under the APA, declining to reach Plaintiffs' other claims while noting that "Defendants undermined the 'core constitutional and democratic values' underlying the APA." ECF No. 124, at 13.  The Court also noted that "there are circumstances in which additional remedies are appropriate in APA cases," directing the parties to submit a joint letter proposing whether and how to address the question of remedies.  *Id.*  The parties proposed additional briefing, ECF No. 125, and Defendants agreed not to reinstate the Ban pending adjudication of the remedies question, ECF No. 127.

## ARGUMENT

**I.      This Court should issue an injunction to ensure that the Ban is not reinstated.**

A permanent injunction against Defendants is warranted here because injunctive relief is both equitable and necessary to effectuate the Court's vacatur of the Ban.  Although vacatur and remand are the typical remedies for an APA violation, courts are not limited to those remedies when circumstances demand more.  *See* 5 U.S.C. § 706(2); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 671–72 (S.D.N.Y. 2019), *aff'd in relevant part*, 139 S. Ct. 2551 (2019).  To the contrary, "courts often enjoin future action by government officials where the principles of equity support such relief." *Dep't of Commerce*, 351 F. Supp. 3d at 673; *see also*

---

[5] *See Examining DHS' Management of Trusted Traveler Programs*, video at 50:35 and 52:30, House Comm. on Homeland Sec. (Sept. 30, 2020), https://homeland.house.gov/examining-dhs-management-of-trusted-traveler-programs.

*Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 342 (S.D.N.Y. 2018) (granting permanent injunction in APA litigation).

Whether permanent injunctive relief should be granted "turns on the traditional four factors, namely whether the plaintiff proves '(1) that it [will suffer] an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Dep't of Commerce*, 351 F. Supp. 3d at 673 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010)). But where the government is a party, the last two factors merge, because "the government's interest *is* the public interest." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

Here, each of these factors weighs in favor of injunctive relief. In a number of obvious ways, the Ban causes irreparable harm for which no remedy at law exists. As Plaintiffs have argued, the Ban singles out New Yorkers for disfavored treatment on the basis of the New York legislature's enactment of legislation in an area of core state sovereignty, *see* Pls.' Mem. Opp. Defs.' Mot. Dismiss 5–6, ECF No. 46 (describing dignitary harms to Plaintiffs based on interference with and infringement on state sovereignty); *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."). The Ban also "places New York at a competitive disadvantage for recruiting and retaining business as compared to all other states . . . ." New York Compl. ¶ 99; *see Planned Parenthood*, 337 F. Supp. 3d at 342–43 ("A rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm.") (quoting *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015)). Even Defendants seemingly concede they cannot remedy all the harm

5

caused by the Ban. *See* Defs.' Ltr. 1 & n.2, ECF No. 121 (describing applications that cannot be restored to TTP portal). And the balance of hardships weighs in Plaintiffs' favor, because "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *New York v. Trump*, No. 20 Civ. 5770 (RCW) (PWH) (JMF), 2020 WL 5422959, at *33 (S.D.N.Y. Sept. 10, 2020) (three-judge court) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

Beyond the equities, the Court must also determine permanent injunctive relief will be useful. *See Dep't of Commerce*, 351 F. Supp. 3d at 676 ("[A] district court vacating agency action under the APA should not grant an injunction if doing so would 'not have any meaningful practical effect independent of its vacatur.'") (quoting *Monsanto*, 561 U.S. at 165)). Here, the typical APA remedy of vacatur will not alone redress Plaintiffs' injuries or assure the efficacy of the Court's order invalidating the Ban. The Court's opinion granting Plaintiffs' motion for summary judgment identified two defects in the TTP decision—the agency entirely failed to consider important aspects of the problem, and made a decision counter to the evidence before the agency—based on the fact that several states and territories do not provide driving-related criminal history or do not participate in NLETS. *See* ECF No. 124, at 11–13. But it is not clear anything currently prevents Defendants from re-instituting an equally defective ban on New Yorkers' enrollment in the Trusted Traveler programs based on substantially similar reasoning or a substantially similar record. To the contrary, there is every reason to think Defendants will do so absent an injunction: Defendants continue—even now—to resist the obvious conclusion that DMV data is not necessary for TTP vetting, *see* ECF No. 113, at 4, and CBP still "is continuing to evaluate the means by which it can obtain DMV information in order to vet all Trusted

Traveler Program applicants," ECF No. 110.  Because only an injunction will prevent Acting Secretary Wolf "from arriving at the same decision *without* curing the problems identified in [the Court's summary judgment opinion]," injunctive relief is "necessary to make the Court's vacatur effective," and thus a warranted response.  *Dep't of Commerce*, 351 F. Supp. 3d at 676.

**II.     To craft the proper injunction, this Court should hold that the Ban violated the APA's notice-and-comment requirements.**

The Court granted Plaintiffs' unopposed cross-motion for summary judgment "on the ground that the TTP Decision was arbitrary and capricious."  ECF No. 124, at 11.  Plaintiffs had separately alleged claims for relief and sought summary judgment pursuant to 5 U.S.C. § 706(2)(D), on the ground that the Ban was implemented without observance of procedure required by law because the agency did not provide any notice or opportunity for public comment.  *See* Pls.' Mem. Supp. Summ. J. 9–15, ECF No. 79 ("Pls.' Mem.").

Notwithstanding that the Court has already invalidated the Ban on arbitrary-and-capricious grounds, the Court should also reach the merits of Plaintiffs' procedural APA claim, as doing so is necessary to determine the proper scope of injunctive relief.  And on reaching the merits of that claim, the Court should conclude that Defendants may not alter application requirements for TTPs without adhering to the APA's notice-and-comment requirements.

**A.  The Court should rule on Plaintiffs' notice-and-comment claim.**

First, one of the APA's central purposes is "to introduce greater uniformity of procedure and standardization of administrative practice among the diverse agencies whose customs had departed widely from each other."  *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41, *modified*, 339 U.S. 908 (1950).  To that end, the Supreme Court has warned that "it would be a disservice to our form of government and to the administrative process itself if the courts should fail, so far as the terms of the [APA] warrant, to give effect to its remedial purposes."  *Id*.

7

Here, giving effect to the APA requires ensuring that Defendants—like all other federal agencies and officials governed by the APA—follow the "uniformity of procedure" that the law sets out. *Id.* Without a Court ruling that the Ban violated the APA's notice-and-comment requirements, Defendants will be free to again deviate from the proper procedure and perform the exact evil that the APA was designed to prevent. *Id.* (discussing the "greater uniformity of procedure" as one of "several administrative evils sought to be cured or minimized" by the APA); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020) ("Procedural requirements . . . serve[] important values of administrative law," often by "ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority."). This Court should not permit Defendants to skirt their legal obligations.

Second, deciding Plaintiffs' notice-and-comment claim now will avoid further litigation in the future and assure the effectiveness of the Court's order invalidating the Ban. As Plaintiffs have explained above, *see supra*, at 3–4, Defendants have emphatically and repeatedly reiterated not only their intent to impose new obligations related to DMV records, but also their position that New York is somehow "unique"—which has always been demonstrably false, and is only more starkly so following Defendants' "deeply troubling revelations." ECF No. 92, at 4. Given Defendants' stated intent to re-impose the same or similar requirements in the future, a ruling from the Court on the APA's procedural requirements in this context will eliminate the need for likely duplicative litigation in the future.

When judicial economy favors reaching a question on the merits, courts have often done so. *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988) ("In the interest of judicial economy, however, we reach the merits of this issue."); *United States v. Roman*, 770 F. Supp. 229, 231 (S.D.N.Y. 1991) (deciding to "reach[] the merits . . . to avoid

8

further litigation"); *see also Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1488 (D.C. Cir. 1983) ("Because the interests of judicial economy will be served by a decision on the merits at this time, we also reach the dispositive substantive issue[.]").  Doing so here would ensure that the parties and future courts will not needlessly re-litigate questions presented here.

### B. The Ban violates the APA's notice-and-comment requirements.

On the merits, as Plaintiffs explained in their unopposed[6] motion for summary judgment, Pls.' Mem. 9–14, the APA's notice-and-comment requirements plainly apply to the Ban.  By creating new requirements that are not found in CBP's governing statute, its published rules, or the Intelligence Reform and Terrorism Prevention Act of 2004 that delegated rulemaking authority to CBP (via DHS), the Ban "amounts to a legislative act" that may only be enacted following notice to the public and an opportunity to comment.  *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993) ("The central question is essentially whether an agency is exercising its rule-making power to clarify an existing statute or regulation, or to create new law, rights, or duties in what amounts to a legislative act."); *see also* Pls.' Mem. 10–14.

As such, under the four factors identified in *Sweet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000), the Ban is the exact type of legislative rule that must go through notice-and-comment rulemaking.  *See also Gonnella v. U.S. Sec. & Exch. Comm'n*, 954 F.3d 536, 547 (2d Cir. 2020) (examining *Sheahan* factors).  Specifically, the first and fourth factors establish that the Ban is a legislative rule subject to notice-and-comment requirements.  It is both (a) an addition to pre-

---

[6] Defendants withdrew their motion to dismiss, motion for summary judgment, and all materials submitted in support of those motions on July 23, 2020, *see* ECF No. 89, and did not oppose Plaintiffs' cross-motion for summary judgment, *see* ECF No. 92, at 4.  Plaintiffs' argument that the Ban is invalid under Section 706(2)(D) for failure to comply with the APA's notice-and-comment requirements is therefore entirely unopposed.

existing law without which "there would not be an adequate legislative basis," *id.* at 547 (internal quotation marks omitted), and (b) effectively an amendment to a prior legislative rule, i.e. to CBP's pre-existing requirements for TTP applicants, *id.*; *see also* Pls.' Mem. 10–14.

Finally, the APA's "good cause" exception to notice-and-comment rulemaking is inapplicable where, as here, Defendants concede that they did not make a contemporaneous finding of good cause, incorporate a statement of good cause, or identify any emergency supplying good cause.  *See* Pls.' Mem. 14–15; 5 U.S.C. § 553(b)(B).  By failing to undergo notice-and-comment rulemaking or establish "good cause," the Ban therefore violates the APA.

### III.    Scope of Injunction

Plaintiffs submit that the injunction should prohibit Defendants from reinstating any ban on TTP enrollment based on a state or individual's provision of DMV records, unless the agency cures the defects identified by the Court in its summary judgment opinion (*i.e.*, the agency considers all important aspects of the problem and makes a decision consistent with the evidence before the agency).  *See* ECF No. 124, at 11–12.  Plaintiffs also respectfully submit that the Court should reach the merits of Plaintiffs' notice-and-comment claim and further enjoin Defendants from amending the TTP eligibility requirements without abiding by the APA's notice-and-comment requirements.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court permanently enjoin Defendants from (1) reinstating any ban on TTP enrollment based on a state or individual's provision of DMV records without first curing those defects identified in this Court's summary judgment opinion, and (2) amending the TTP regulations without following the APA's notice-and-comment requirements.

Dated: November 13, 2020
       New York, New York

                                          Respectfully Submitted,

                                          LETITIA JAMES
                                          *Attorney General of the State of New York*

By:    */s/ Daniela L. Nogueira*
        Daniela L. Nogueira
        Matthew Colangelo
        Elena Goldstein
        28 Liberty Street
        Office of the New York Attorney General
        New York, New York 10005
        Phone: (212) 416-6057
        daniela.nogueira@ag.ny.gov

        *Counsel for Plaintiff in 20 Civ. 1127*


                                          NEW YORK CIVIL LIBERTIES
                                            FOUNDATION

By:    */s/ Antony P.F. Gemmell*
        Antony P.F. Gemmell
        Molly K. Biklen
        Jessica Perry
        Jordan Laris Cohen
        Christopher T. Dunn
        125 Broad Street, 19th Floor
        New York, New York 10004
        212-607-3300
        agemmell@nyclu.org

        *Counsel for Plaintiffs in 20 Civ. 1142*