UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>         Plaintiff,<br><br> -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>         Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals*<br><br>         Plaintiffs,<br><br> -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security*, et al.,<br><br>         Defendants. | No. 20 Civ. 1142 (JMF) |

**DECLARATION BY PETE R. ACOSTA**

I, Pete R. Acosta, hereby state as follows:

1. I am currently the Director of Trusted Traveler Programs, Admissibility and Passenger Programs, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I began my career with the U.S. Immigration and Naturalization Service in 1996, specifically assigned at that time to Los Angeles International Airport. In 2007, I transferred to a position at CBP Headquarters in Washington, D.C. I was then the Director of the Immigration Advisory, Joint Security, and OFO Police Liaison Officer Programs for the period spanning from 2014

through 2017. Since October 2017, I have been employed in my current role as the Director of Trusted Traveler Programs.

2. In my role as Director of Trusted Traveler Programs, I am responsible for establishing policy to ensure that individuals who apply for participation in any of CBP's Trusted Traveler Programs meet all appropriate qualifications for the programs and do not pose a risk to the United States. I am therefore responsible for executing the missions of CBP and, in particular, OFO. The CBP mission includes the enforcement of the customs, immigration, and agriculture laws of the United States and hundreds of other laws on behalf of numerous federal agencies. CBP is the primary law enforcement agency responsible for securing the U.S. border at ports of entry (POEs) and preclearance locations outside the United States, while also facilitating lawful international trade and travel. Among other things, OFO is responsible for coordinating the enforcement activities of CBP at POEs to deter and prevent terrorists and other criminals from entering the United States. The Trusted Traveler Programs (TTPs) are a key part of CBP's law enforcement mission and are designed specifically to facilitate lawful travel by eligible low-risk individuals.

3. I am familiar with the complaints filed in State of New York v. Wolf, Case No. 20-cv-1127 and Lewis-McCoy v. Wolf, Case No. 20-cv-1142, filed in the United States District Court for the Southern District of New York, and plaintiffs' claims therein.

4. This declaration is based on my personal knowledge and information presented to me in the course of my duties by my staff and other knowledgeable personnel.

5. On November 24, 2020, defendants filed a letter (Dkt. No. 130)[1] to inform the Court that CBP does not have access to DMV information via Nlets for two territories beyond those identified in previous filings—the Commonwealth of the Northern Mariana Islands (CNMI) and American Samoa. The purpose of this declaration is to explain how this information was omitted from paragraphs 17 and 18 of my September 4, 2020 declaration, Dkt. No. 113-1 ¶¶17-18; paragraph 14 of Robert E. Perez's September 4, 2020 declaration, Dkt. No. 113-2 ¶ 14; and page 7 of the Government's September 4, 2020 report, Dkt. No. 113 at 7, as well to as explain why this information is being brought to the Court's attention at this time. This declaration also seeks to correct prior statements that indicated that CBP determined whether it had access to DMV data via Nlets for *all* domestic jurisdictions.

6. As explained in my September 4, 2020 declaration (Dkt. No. 113-1) filed to comply with this Court's July 29, 2020 Order (Dkt. No. 92), CBP determined that it did not have access to DMV information, in whole or in part, from certain U.S. states, the District of Columbia, Guam, the Virgin Islands, and Puerto Rico. Dkt. No. 113-1 ¶ 17. Determining CBP's access to each domestic jurisdiction's DMV data involved CBP ACP/WPP ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████  Due to what I now understand to have been an oversight, CNMI and American Samoa were inadvertently omitted from this process, and as a result, the two territories were not identified in my declaration.

---

[1] Docket numbers refer to the docket of *New York v. Wolf*, No. 20 Civ. 1127 (JMF) (S.D.N.Y.).

7. For context, as of October 9, 2020, of the more than 9.6 million TTP applicants, there were fewer than 400 active or pending applications from residents of CNMI and American Samoa. This includes fewer than 100 active or pending TTP applications from American Samoa and fewer than 300 active or pending TTP applications from CNMI.

8. Following the discovery in mid-July that CBP did not have access to full DMV information for several domestic jurisdictions beyond New York, CBP sought to remedy any data gaps. On August 4, 2020, CBP initiated outreach to Nlets and regional CBP representatives to determine why some jurisdictions were not providing full access to DMV information and to evaluate alternative methods of obtaining DMV records from these jurisdictions.

9. It is my understanding that on August 10, 2020, while reviewing these outreach efforts, my staff requested that the CBP Office of Information and Technology (OIT) determine whether DMV data was being received from CNMI through Nlets. OIT also included American Samoa in that inquiry, realizing that CNMI and American Samoa were inadvertently excluded from the ACP/WPP described above. CBP then began to include CNMI and American Samoa in its engagement efforts to secure full DMV access from all domestic jurisdictions.

10. While there were some indications that data was not being received from CNMI and American Samoa, the lack of access to DMV information from these territories was not confirmed by September 4, 2020, when my declaration was signed.

11. I understand that OIT conducted further research from August through October to verify the extent to which these jurisdictions shared DMV information through Nlets.

12. When reviewing drafts of my declaration filed on September 4, 2020, I was aware that there may have been issues with receiving DMV data through Nlets from CNMI and American Samoa. This is because between August 10 and August 13, 2020, I was included on email communications related to OIT's outreach efforts that indicated that CBP may not have access to DMV information from these two territories. However, I also understood that OIT was conducting further research in consultation with my team and the National Targeting Center as to whether CBP in fact lacked access to such data. Therefore, I reviewed the declaration by relying on prior ACP/WPP [redacted] that had been vetted and confirmed by CBP several times. I did not include in the declaration the possibility that CNMI and American Samoa may not provide DMV data to Nlets because I viewed that possibility as still under operational review and not yet verified. I now recognize that CBP finalized the declaration before having a definitive understanding of whether CBP was receiving DMV information from CNMI and American Samoa, and that I should have qualified my statements by noting that final confirmation regarding access to information from these two territories was still pending. I understand that CBP did not receive final confirmation from Nlets that no information was being received from these two territories until October 9, 2020.

13. While my September 4, 2020 declaration was reviewed by operational personnel with knowledge of the access concerns regarding CNMI and American Samoa, each of us neglected to identify these additional territories as a point to be addressed in the declaration.

14. While the concerns regarding Nlets returns from CNMI and American Samoa were immediately integrated into internal CBP reporting starting on August 13, 2020, CBP

operational personnel neglected to inform attorneys at CBP's Office of Chief Counsel and the United States Attorney's Office for the Southern District of New York of the information regarding CNMI and American Samoa before I signed the September 4, 2020 declaration and after final confirmation was received regarding these jurisdictions from Nlets on October 9, 2020. This information therefore was not previously brought to the Court's attention.

15. The relevancy of CNMI's and American Samoa's lack of participation in or connection to Nlets to the statements previously made in this litigation did not surface until November 18, 2020, when CBP's Office of Chief Counsel read an email unrelated to this litigation and reviewed an attachment that indicated that CBP did not have access to DMV information from CNMI and American Samoa through Nlets. I have been advised that this is when the Office of Chief Counsel first learned of this information, and it was at this time that I, and others with knowledge of the access concerns regarding CNMI and American Samoa, were alerted to the inconsistency of this information with our previous filings in this litigation.

16. CBP sincerely regrets the error and recognizes the gravity of this omission.

17. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 2nd day of December, 2020

/s/ *Pete R. Acosta*
Pete R. Acosta
Director, Trusted Traveler Programs
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

7