UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK,<br><br>                       Plaintiff,<br><br>    -v-<br><br>CHAD F. WOLF, *in his official capacity as Acting Secretary of Homeland Security,* et al.,<br><br>                Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY et al., *on behalf of themselves and all similarly situated individuals,*<br><br>                     Plaintiffs,<br><br>    -v-<br><br>CHAD WOLF, *in his official capacity as Acting Secretary of Homeland Security*, et al.,<br><br>                Defendants. | No. 20 Civ. 1142 (JMF) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728/2745/2761
Fax: (212) 637-2717
E-mail: Zachary.Bannon@usdoj.gov
         Elizabeth.Kim@usdoj.gov
         Christopher.Connolly@usdoj.gov

ZACHARY BANNON
ELIZABETH J. KIM
CHRISTOPHER CONNOLLY
Assistant United States Attorneys
    – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 1

ARGUMENT ........................................................................................................ 4

   I.   PLAINTIFFS' REQUEST FOR AN INJUNCTION SHOULD BE DENIED. ..................... 5

      A.   Plaintiffs' Request Is Overbroad......................................................... 6

      B.   A Permanent Injunction Would Serve No Purpose. ..................................10

      C.   Plaintiffs Have Failed to Demonstrate that They Are Entitled to a Permanent Injunction. ......................................................................................12

   II.   THE COURT SHOULD NOT RECONSIDER ITS SUMMARY JUDGMENT ORDER. .....................14

CONCLUSION ....................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Allina Health Servs v. Sebelius*,
   746 F.3d 1102 (D.C. Cir. 2014) ............................................................................... 5

*Anderson v. United States*,
   417 U.S. 211 (1976).......................................................................................15, 17

*Ass'n of Mexican-American Educators v. State of Calif.*,
   231 F.3d 572 (9th Cir. 2000) ...............................................................................16

*Bell v. Stephens*,
   No. 05 Civ. 7182 (LTS), 2007 WL 1098713 (S.D.N.Y. Apr. 11, 2007) ................................16

*Cigar Ass'n of Am. v. U.S. FDA*,
   436 F. Supp. 3d 70 (D.D.C. 2020) ........................................................................14

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) .................................................................................. 9

*Columbia Pictures Indus. Inc. v. Am. Broad. Companies, Inc.*,
   No. 70 Civ. 4202 (ELP), 1974 WL 835 (S.D.N.Y. Feb. 4, 1974)..........................................13

*Hershey Creamery Co. v. Hershey Chocolate Corp.*,
   269 F. Supp. 45 (S.D.N.Y. 1967) ..........................................................................12

*In re Surface Min. Regulation Litigation*,
   627 F.2d 1346 (D.C. Cir. 1980) ............................................................................14

*Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)...........................................................................................12

*Indian Educators Fed'n Local 4524 of Am. Fed'n of Teachers, AFL-CIO v. Kempthorne*,
   590 F. Supp. 2d 15 (D.D.C. 2008) ........................................................................13

*INS v. Bagamasbad*,
   429 U.S. 24 (1976)..............................................................................................14

*Merck Eprova AG v. Gnosis S.p.A.*,
   901 F. Supp. 2d 436 (S.D.N.Y. 2012) ...................................................................12

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)......................................................................................passim

*Nat. Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
No. 01 Civ. 274 (JR), 2007 WL 259944 n.5 (D.D.C. Jan. 30, 2007) ......................................15

*New York v. Dep't of Commerce*,
351 F. Supp. 3d 502 (S.D.N.Y. 2019) .................................................... 1, 5, 11, 13

*Nio v. U.S.*,
*DHS*, 385 F. Supp. 3d 44 (D.D.C. 2019) ..........................................................15

*Nken v. Holder*,
556 U.S. 418 (2009)...........................................................................12

*Patsy's Italian Restaurant, Inc. v. Banas*,
658 F.3d 254 (2d Cir. 2011) .................................................................9, 16

*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996) .........................................................................9

*Pouncy v. Advanced Focus LLC*,
No. 15 Civ. 6260 (JMF), 2018 WL 1831845 (S.D.N.Y. Apr. 16, 2018) .................................15

*Schmidt v. Lessard*,
414 U.S. 473 (1974)................................................................................9

*Sheely v. MRI Radiology Network, P.A.*,
505 F.3d 1173 (11th Cir. 2007) ..................................................................13

*Swann v. Charlotte-Mecklenburg Bd. Of Educ.*,
402 U.S. 1 (1971) ...........................................................................6, 14, 16

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
820 F. Supp. 2d 558 (S.D.N.Y. 2011) .............................................................15

*Waldman Pub. Corp. v. Landoll, Inc.*,
43 F.3d 775 (2d Cir. 1994) .................................................................6, 8, 10, 16

**Statutes**

5 U.S.C. § 706(2) ................................................................................5

8 U.S.C. § 1365b(k)(3)(C) .......................................................................8

**Rules**

Federal Rule of Civil Procedure 65...............................................................5, 9

**Regulations**

8 C.F.R. § 235.12(b)(2)...........................................................................................................10

## PRELIMINARY STATEMENT

On February 5, 2020, the Department of Homeland Security ("DHS") issued a letter informing the State of New York that its residents would no longer be eligible to participate in Trusted Traveler Programs (the "TTP Decision"). When Defendants' extra-record research revealed that the TTP Decision was based on an incorrect factual premise, they promptly notified the Court and rescinded the TTP Decision. *See* Dkt. No. 89.[1] Defendants then acknowledged that the "rescinded TTP Decision is not legally supportable," Dkt. Nos. 90, 95, and began to remediate the residual effects of the decision, Dkt. No. 121. The Court entered judgment, ordering that "the TTP Decision (to the extent that it is still in effect or having an effect) is formally vacated." Dkt. No. 124 at 14. As this Court has recognized, vacatur is the usual remedy in an Administrative Procedure Act ("APA") case. *See New York v. Dep't of Commerce*, 351 F. Supp. 3d 502, 673 (S.D.N.Y. 2019). Because Defendants acknowledged the legal infirmity of the TTP Decision, rescinded the decision prior to the Court's entry of judgment, and have worked diligently to ensure that its effects are eliminated, the "drastic and extraordinary remedy" that Plaintiffs seek—a permanent injunction—would "not have any meaningful practical effect independent of . . . vacatur." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Moreover, Plaintiffs have failed to establish that they are entitled to a permanent injunction as a matter of law. Accordingly, Plaintiffs' motion should be denied.

## BACKGROUND

In December 2019, New York's Driver's License Access and Privacy Act (the "Green Light Law") took effect, restricting U.S. Customs and Border Protection's ("CBP's") and U.S.

---

[1] Citations refer to the docket of New York v. Wolf, No. 20 Civ. 1127 (JMF) (S.D.N.Y.).

Immigration and Customs Enforcement's ("ICE's") access to Department of Motor Vehicles ("DMV") records for New York residents.  Shortly thereafter, DHS conducted an internal assessment of the Green Light Law's impact on its components.  Dkt. No. 65-1 at DHSGLL09-41. One component, CBP, informed DHS that the Green Light Law impaired its ability to vet TTP applicants because it eliminated CBP's ability to validate driver's license and registration information, *id.* at DHSGLL10, and prevented CBP from determining whether applicants committed certain criminal offenses that would bear on their eligibility, *id.* at DHSGLL62. Following completion of the internal assessment, DHS issued the TTP Decision, which informed the New York DMV that:

> Because the [Green Light Law] prevents DHS from accessing New York DMV records in order to determine whether a TTP applicant or re-applicant meets program eligibility requirements, New York residents w[ould] no longer be eligible to enroll or re-enroll in CBP's Trusted Traveler Programs.

*Id.* at DHSGLL03.

New York and a proposed class of New York residents then commenced the instant actions, challenging the TTP Decision under the APA, and the Fifth and Tenth Amendments to the United States Constitution.  Dkt. No. 1.  Based on their belief in the accuracy of the TTP Decision's original rationale, Defendants defended against these lawsuits by arguing that the TTP Decision was justified given the unique nature of the data restrictions imposed by the Green Light Law. *See* Dkt. No. 30 at 14; Dkt. No. 68 at 20.  However, in the course of Defendants' preparation of their summary judgment opposition papers, CBP performed additional research beyond that which it had performed before issuing the TTP Decision, which revealed for the first time information that undermined Defendants' position in the litigation and the rationale for the TTP Decision. *See* Dkt. No. 113 at 3.  Specifically, a cross-jurisdictional analysis through Nlets revealed that Guam and the Virgin Islands do not provide driver's license information; those jurisdictions, as well as

Hawaii, and Missouri, do not provide vehicle registration information; and five states, three territories and the District of Columbia do not provide driver's history information, including certain aspects of an individual's vehicle-related criminal history.[2]   Dkt. No. 113-1 ¶ 17.[3]

Upon learning this information, Defendants promptly rescinded the TTP Decision, advised the Court of this newly discovered information, and withdrew their motions to dismiss and for summary judgment.   Dkt. No. 89. Defendants also conceded that "the rescinded TTP Decision is not legally supportable."  Dkt. No. 90.[4]  Moreover, since the rescission of the TTP Decision, CBP has worked diligently to identify and eliminate its residual effects, successfully restoring all but fifty TTP applications that cannot be restored until those applicants create online accounts,[5] and extending benefits to those individuals whose TTP membership expired during the period when the TTP Decision was in place. Dkt. No. 121.  Notably, Plaintiffs have not identified any additional relief that could be afforded to remedy past harms suffered by New York TTP applicants, *see* Dkt. Nos. 122, 123, despite being invited to do so by the Court, Dkt. No. 122.

---

[2] Plaintiffs continue to insist that "the administrative record had made [this] clear for months." Dkt. No. 129 at 3. As explained in detail in Defendants' brief in support of their letter motion for a protective order, the Administrative Record did not contain the information uncovered during CBP's analysis.  *See* Dkt. No. 117 at 8-9.

[3] Defendants have since learned that two additional jurisdictions—American Samoa and the Commonwealth of the Northern Mariana Islands—do not participate in Nlets either. *See* Dkt. No. 130.

[4] In earlier filings, Plaintiffs suggested that the six days between CBP's discovery of this information and Defendants' disclosure to this Court was an improper delay, comparable to a delay in disclosing exculpatory material during an ongoing criminal trial.  *See* Dkt. No. 120 at 6 n.2. However, the six days Defendants took to ensure the accuracy of information that altered their litigation position in these cases, and that led to the rescission of a significant agency action, evinces no impropriety.

[5] CBP contacted these individuals by phone, provided them with instructions for setting up a new account, and advised them that their applications would be restored once their new accounts were created. Dkt. No. 121 at 1 n.2.

On October 13, 2020, the Court issued an opinion granting Plaintiffs' unopposed motion for summary judgment. Dkt. No. 124. The Court addressed antecedent justiciability questions, *id*. at 9 n.2, 11-12, and concluded "that Plaintiffs are entitled to summary judgment on the ground that the TTP Decision was arbitrary and capricious," *id*. at 11. It reached this conclusion after finding that "Defendants' *own* admissions establish that, at the very least, DHS entirely failed to consider an important aspect of the problem[,]" and DHS "offered an explanation for its decision that ran counter to the evidence before the agency" by issuing a decision "premised on an erroneous foundation." *Id*. at 12 (quotation marks and alterations omitted; emphasis in original). The Court did not address Plaintiffs' other APA claims: (1) that Defendants violated the rulemaking provisions of the APA, Dkt. No. 1 ¶¶ 114-22; (2) that the TTP Decision was contrary to several statutory and regulatory provisions, *id*. ¶¶ 123-29; and (3) that the TTP Decision was arbitrary and capricious for other reasons, *id*. ¶¶ 71-80, 130-34.

As a result, the Court vacated and remanded the TTP Decision, to the extent that it was still in effect or had a remaining effect. Dkt. No. 124 at 14. The Court directed the parties to confer and submit a joint letter addressing whether there was need or basis for additional remedies. *Id*. The parties could not reach an agreement and proposed remedial briefing. Dkt. No. 125. Plaintiffs submitted a brief asking the Court to permanently enjoin Defendants from: (1) "reinstating any ban on TTP enrollment based on a state or individual's provision of DMV records without first curing those defects in this Court's summary judgment opinion"; and (2) "amending the TTP regulations without following the APA's notice-and-comment requirements." Dkt. No. 129 at 10.

## ARGUMENT

Plaintiffs' request for a permanent injunction should be denied. Plaintiffs seek an injunction against "any ban on TTP enrollment based on a state or individual's provision of DMV records," rather than an injunction against a policy targeting New York related to its Green Light

Law. Dkt. No. 129 at 10.  As an initial matter, this request is overbroad when compared with the Court's summary judgment order and thus violates fundamental principles of equitable relief.  The legal principles Plaintiffs identify to purportedly limit their request (Defendants must consider all important aspects of the problem and the evidence before them) are not sufficiently definite under Federal Rule of Civil Procedure 65 to alert DHS as to whether a new policy related to use of DMV records in TTP vetting would violate an injunction.  Indeed, had Plaintiffs' request been tailored to the scope of the policy set forth in the TTP Decision, an injunction would not be necessary because it would "not have any meaningful practical effect independent of . . . vacatur." *Monsanto*, 561 U.S. at 165.  Further, Plaintiffs' request for judgment on their notice-and-comment rulemaking claim simply asks the Court to reconsider the issues before it when it granted summary judgment in their favor, without providing a legally sufficient reason for doing so.  The Court limited its summary judgment ruling to those issues necessary to afford Plaintiffs full relief—an exercise in discretion decidedly appropriate in the procedural posture presented by Plaintiffs' unopposed motion for summary judgment.  There is no reason for the Court to reconsider its summary judgment ruling now.

## I.   Plaintiffs' Request for an Injunction Should Be Denied.

After determining that the TTP Decision was arbitrary and capricious, the Court vacated that decision and remanded the matter to DHS.  Dkt. No. 124 at 14.  As set forth in 5 U.S.C. § 706(2), this is "the 'normal remedy' in a successful APA challenge."  *New York*, 351 F. Supp. 3d at 671 (quoting *Allina Health Servs v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)).  And while "some courts have held that equitable principles can justify departure from the remedy seemingly mandated by the APA's text," *id.* at 672, equitable principles do not support departure from the usual APA remedy here.

A.     **Plaintiffs' Request Is Overbroad.**

As a preliminary matter, Plaintiffs' request for an injunction is overbroad. "As with any equity case, the nature of the violation determines the scope of the remedy." *Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 16 (1971). Accordingly, "[i]njunctive relief should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994). Plaintiffs' request for a permanent injunction prohibiting Defendants from instituting "any ban on TTP enrollment based on a state or individual's provision of DMV records," Dkt. No. 129 at 10, contravenes this limiting principle of equitable relief.

The Court found that the TTP Decision was arbitrary and capricious because "Defendants' *own* admissions establish[ed] that" the decision failed to consider an important aspect of the problem and ran counter to the evidence. Dkt. No. 124 at 12 (emphasis in original). Those admissions involved the fact that other jurisdictions restrict CBP's access to DMV records, undermining the argument that the TTP Decision's geographical limitation could be justified "because New York fails to share relevant DMV information with CBP for TTP purposes." Dkt. 89 at 2. Although DHS concluded that the TTP Decision was not tenable because of the information brought to light by CBP's additional analysis,[6] DHS has continuously maintained that

---

[6] Plaintiffs suggest that CBP's Deputy Commissioner Robert Perez spoke inaccurately when he described the manner in which the data restrictions imposed by New York's Green Light Law remain unique. Dkt. No. 129 at 4 n.5 (citing *Examining DHS' Management of Trusted Traveler Programs*, video at 52:30, House Comm. on Homeland Sec. (Sept. 30, 2020), https://homeland.house.gov/examining-dhs-management-of-trusted-traveler-programs). They base this suggestion on the fact that New York amended its Green Light Law on April 3, 2020 to provide DMV information "as necessary for individuals seeking acceptance into a trusted traveler program, or to facilitate vehicle imports and/or exports." But this amendment remains unimplemented. The New York DMV has informed DHS that it has not yet received clearance to resume the provision of information under its now eight-month-old law.

DMV records are important to the TTP vetting process, *see, e.g.*, Dkt. No. 113-2 ¶ 14, a position supported by the record, *see* Dkt. No. 65-1 at DHSGLL10, 62; Dkt. No. 75-1 at DHSGLL52. [7] Nevertheless, Plaintiffs seek a permanent and extra-textual restraint on DHS's ability to reevaluate its need for DMV records in the TTP vetting process. Dkt. No. 129. This request is not "narrowly tailored" to the APA violation found by the Court at summary judgment.

The Supreme Court's decision in *Monsanto Co. v. Geertson Seed Farms* is instructive. In *Monsanto*, plaintiffs challenged an agency decision "to *completely* deregulate" a particular product. 561 U.S. at 159 (emphasis in original). Plaintiffs prevailed and the district court entered an order "enjoining a *partial* deregulation of any kind" of the product. *Id.* at 164 (emphasis added). The Supreme Court reversed, finding that a partial deregulation was within "the authority vested in the agency by law." *Id.* at 160. It held that "[u]ntil [the agency] actually seeks to effect a partial deregulation, any judicial review of such a decision is premature," and that "the broad injunction entered . . . essentially pre-empts the very procedure by which the agency could determine" whether a partial deregulation was appropriate. *Id.* at 160, 164. Because "any party aggrieved by a hypothetical future deregulation decision w[ould] have ample opportunity to challenge it, and to seek appropriate preliminary relief," the Supreme Court held that "the District Court did not properly exercise its discretion in enjoining a partial deregulation of any kind." *Id.* at 164. [8]

Here, based on the Court's vacatur of a policy that precluded New York residents from seeking membership or re-enrollment in TTPs because of the passage of the Green Light Law,

---

[7] For this reason, CBP previously disclosed to the Court that it "is continuing to evaluate the means by which it can obtain DMV information in order to vet all Trusted Traveler Program applicants, including from state and territorial governments, third parties, or applicants themselves." Dkt. No. 110.

[8] Following the same reasoning, the Supreme Court also concluded that "the order enjoining any deregulation whatsoever does not satisfy the traditional four-factor test for granting permanent injunctive relief." *Id.* at 162.

Plaintiffs seek to permanently restrain DHS from adopting a policy that conditions TTP membership on the agency's ability to obtain and review relevant DMV records from any jurisdiction. But the Intelligence Reform and Terrorism Prevention Act of 2004 and the Global Entry regulations vest DHS with broad authority to set the scope of information required from a TTP applicant. *See* 8 U.S.C. § 1365b(k)(3)(C); 8 C.F.R. § 235.12(b)(2). As in *Monsanto*, Plaintiffs' request for broad relief "essentially pre-empts the very procedure by which the agency could determine" the extent to which it relies upon DMV records. 561 U.S. at 164. And, as in *Monsanto*, Plaintiffs "will have ample opportunity to challenge" any new policy and "seek appropriate preliminary relief" should a new policy related to DMV records be adopted. *Id.*

Plaintiffs' request for a permanent injunction is overbroad in another manner as well. While the policy at issue in this litigation only affected New York residents based on a New York law, Plaintiffs seek to enjoin DHS from "reinstating *any* ban on TTP enrollment based on *a state or individual's* provision of DMV records . . . ." *See* Dkt. 129 at 13 (emphasis added). Plaintiffs' request encompasses a policy affecting another state or territory, should DHS determine that such a policy is appropriate and necessary in the future. As such, Plaintiffs' request is not "narrowly tailored" to the APA violation found in these matters. *Waldman Pub. Corp.*, 43 F.3d at 785. Moreover, Plaintiffs' request for a blanket limitation on DHS's authority to condition TTP membership on receipt of DMV records is "premature." *Monsanto*, 561 U.S. at 160.

Plaintiffs purport to constrain their broad request by two qualifiers: the injunction should not apply to new policies so long as "the agency considers all important aspects of the problem and makes a decision consistent with the evidence before the agency." Dkt. No. 129 at 13. These suggested constraints, however, are not sufficient to tailor Plaintiffs' proposed injunction to the

APA violation found by the Court in this litigation, nor to put DHS on notice of the conduct that would be prohibited by Plaintiffs' requested injunction.

"Injunctions are serious orders . . . and such an order must give notice of the specific conduct ordered or prohibited." *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 263 (2d Cir. 2011). Federal Rule of Civil Procedure 65(d) accordingly requires that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." "Rule 65(d) is satisfied only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quotation marks and citations omitted); *see also Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.").

The two limitations offered by Plaintiffs—both of which simply recite fundamental precepts of administrative law—do not meaningfully constrain the otherwise overbroad scope of the injunction that they request. Indeed, the Second Circuit has held that "under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996); *Mickalis Pawn Shop*, 645 F.3d at 144 ("An injunction may not enjoin all possible breaches of the law." (quotation marks omitted)). Accordingly, Plaintiffs' proposed constraints, which essentially amount to no more than an admonition that DHS engage in reasoned decisionmaking in implementing a policy related to the use of DMV records for TTP vetting, do not meaningful circumscribe the relief Plaintiffs seek. These constraints are insufficient to put DHS on notice of the manner in which it would be permanently enjoined.

In short, the injunction sought—enjoining "any ban on TTP enrollment based on a state or individual's provision of DMV records," Dkt. No. 129 at 10—is not "narrowly tailored to fit specific legal violations" at issue in these cases, *Waldman Pub. Corp.*, 43 F.3d at 785. Plaintiffs' request for a permanent injunction therefore should be denied.

## B.    A Permanent Injunction Would Serve No Purpose.

Even injunctive relief limited to the violation found by the Court—enjoining DHS from reenacting the TTP Decision (or a policy materially indistinguishable from it)—is not warranted in these cases. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto*, 561 U.S. at 165. "If a less drastic remedy (such as partial or complete vacatur . . . )" is sufficient to remedy a violation, "no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* at 165-66. Here, the Court vacated the TTP Decision and a further injunction will "not have any meaningful practical effect independent of its vacatur." *Id.* at 165.

Notably, these cases are not in a similar posture to *New York v. Department of Commerce*, where this Court found that the Government had violated the APA after presiding over a trial and determined that an injunction "would have two practical effects beyond vacatur." 352 F. Supp. 3d at 676. First, unlike in *Department of Commerce*, there is no risk that DHS will "reinstate [its] decision by simply re-issuing [its letter] under a new date or by changing [it] in some immaterial way." *Id.* Here, DHS rescinded the TTP Decision even before the Court vacated it, evincing no intent to re-institute a policy with no material distinction. Dkt. No. 89. Further, DHS has admitted that the TTP Decision was "not legally supportable" as issued. Dkt. No. 90. Any reissuance would suffer from the same admitted defects. And DHS already agreed in related litigation in the District of Columbia that it "shall not prohibit residents of New York from participating in Global Entry and other Trusted Traveler Programs on the basis of New York's refusal, as described in the [TTP

Decision], to provide [DHS] with access to New York State DMV records." *DiMaio v. Wolf*, No. 20 Civ. 445 (RJL), Dkt. No. 30-2 at 3 ¶ 2 (D.D.C. Aug. 25, 2020).[9]

Second, in *Department of Commerce*, this Court found that it was "critical" to "make it easier for Plaintiffs to seek immediate recourse from this Court" because of the "looming . . . deadline" to print Census questionnaires. *New York*, 351 F. Supp. 3d at 676. This Court reached its conclusion after finding that the plaintiffs risked serious "irreparable" harm in the form of "loss of political representation and the degradation of information," as a result of the agency policy. *Id.* at 675. Here, no such exigency justifies the extraordinary relief sought by Plaintiffs and DHS has already demonstrated that it has remediated all of the residual effects of the TTP Decision, save for those that require a handful of individual applicants to create online accounts. Dkt. No. 121 at 1 n.2. Indeed, Plaintiffs' motion does not seek any additional relief to remedy the *past* injuries of New York residents, *see* Dkt. No. 129, indicating that Plaintiffs are satisfied with the matter in which the residual effects of the TTP Decision have been remediated. There is therefore no basis here to depart from the traditional remedies available in APA cases. "[A]ny party aggrieved by a hypothetical future [agency action] will have ample opportunity to challenge it, and to seek appropriate preliminary relief, if and when such a decision is made." *Monsanto*, 561 U.S. at 164.[10]

---

[9] By opinion dated November 17, 2020, the court in *DiMaio* declined to incorporate DHS's settlement agreement into an order dismissing the case, "find[ing] that the attorney fees agreed to by the parties" were "*not* reasonable." *DiMaio v. Wolf*, No. 20 Civ. 445 (RJL), Dkt. No. 35 at 2. However, Defendants in *DiMaio* have explained that they "understand themselves to be bound by the terms of the Settlement Agreement," whether court approved or not. *Id.*, Dkt. No. 32 at 2.

[10] Moreover, as Plaintiffs themselves suggested, it does not appear that Plaintiffs would have any hesitation in commencing an action to challenge any future agency action that they deem improper. *See* Dkt. No. 129 at 4-5 ("On February 5, 2020, Defendant Chad Wolf…sent New York a three-page letter banning its residents from enrolling or re-enrolling in TTPs on account of the newly effective Green Light Law . . . . Within days, Plaintiffs filed suit challenging the Ban under the Administrative Procedure Act ('APA') and the Constitution.").

The circumstances underlying these cases are unusual. But their peculiarities reinforce the fact that vacatur of the TTP Decision is sufficient to safeguard Plaintiffs' interests. "The historic purpose of an injunction is to ensure that past wrongdoing is not repeated, not to further punish the wrongdoer. Accordingly, an injunction is unnecessary if there is no reasonable likelihood that the conduct at issue will be repeated." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 461 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014) (quotation marks omitted). Plaintiffs' request for an injunction accordingly should be denied.

## C.    Plaintiffs Have Failed to Demonstrate that They Are Entitled to a Permanent Injunction.

Plaintiffs' request for a permanent injunction should also be denied because they have failed to demonstrate that they are entitled to such relief. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). When the Government is the party opposing the injunction, the final two factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

First, Plaintiffs have failed to establish that they will suffer irreparable injury absent an injunction or that remedies available at law are inadequate to compensate for that injury. Although Plaintiffs assert that the TTP Decision "causes irreparable harm for which no remedy at law exists" in "obvious ways," they fail to present any evidence of such harms. *See* Dkt. No. 129 at 5; *Hershey Creamery Co. v. Hershey Chocolate Corp.*, 269 F. Supp. 45, 59 (S.D.N.Y. 1967) ("The plaintiff,

here, cannot succeed in meeting its burden of proof by mere assertions of irreparable injury without

a showing of prima facie supporting evidentiary facts."); *Sheely v. MRI Radiology Network, P.A.*,

505 F.3d 1173, 1182 n.10 (11th Cir. 2007) ("[W]hether a permanent injunction is

appropriate . . . turns on whether the plaintiff can establish by a preponderance of the evidence that

this form of equitable relief is necessary."). Moreover, Plaintiffs' reliance on unsupported

allegations in their Complaint and legal arguments presented in their brief in opposition to

Defendants' motion to dismiss, without more, is insufficient to meet their burden. *Columbia*

*Pictures Indus. Inc. v. Am. Broad. Companies, Inc.*, No. 70 Civ. 4202 (ELP), 1974 WL 835, at *6

(S.D.N.Y. Feb. 4, 1974) ("In substance the Court is confronted with assertions of injury without

persuasive evidentiary substantiation and this is insufficient to sustain plaintiffs'

burden."), *aff'd*, 501 F.2d 894 (2d Cir. 1974); *cf. New York*, 351 F. Supp. 3d at 675 ("As

discussed…above, Plaintiffs *proved at trial* that, if the citizenship question is added to the 2020

census questionnaire, they will suffer serious harm in the form of lost political representation, lost

federal funding, and degradation of information that is an important tool of state sovereignty.")

(emphasis added).

Second, Plaintiffs have failed to meet their burden to demonstrate that the balance of

hardships weigh in their favor. While "there is generally no public interest in the perpetuation of

unlawful agency action" and "there is a substantial public interest in having governmental agencies

abide by the federal laws that govern their existence and operations," *New York*, 351 F. Supp. 3d

at 676 (alterations omitted), the unique circumstances of these cases militate against the issuance

of a permanent injunction.   Because DHS rescinded the TTP Decision on its own, Dkt. No. 89,

and even openly admitted that the TTP Decision was "not legally supportable," Dkt. No. 90, the

"perpetuation of unlawful agency action" is not a reasonable concern here. *Cf. Indian Educators*

*Fed'n Local 4524 of Am. Fed'n of Teachers, AFL-CIO v. Kempthorne*, 590 F. Supp. 2d 15, 20 (D.D.C. 2008) ("[A]bsent some indication that the Secretary [of Interior] intends to violate the declaratory judgment, the plaintiffs have not convinced the Court that a declaratory judgment alone is insufficient to protect the public interest."). Plaintiffs therefore cannot show that the balance of hardships necessitates the imposition of permanent injunctive relief.

<div align="center">* * *</div>

Plaintiffs have failed to demonstrate that they are entitled to the extraordinary relief of a permanent injunction. Plaintiffs' request should be denied not only because it is overbroad and unnecessary based on the circumstances of these cases, but also because they have not, and cannot, demonstrate that they are entitled to such equitable relief as a matter of law.

## II.   The Court Should Not Reconsider Its Summary Judgment Order.

As discussed above, the Court's summary judgment opinion addressed antecedent jurisdictional issues of mootness, Dkt. No. 124 at 9 n.3, and reviewability, *id.* at 11-12, before concluding that the TTP Decision was arbitrary and capricious, requiring its vacatur, *id.* at 12-13. Plaintiffs now argue that the Court should have also ruled on their claim that the TTP Decision violated the notice-and-comment provisions of the APA. Dkt. No. 129 at 7-9.

Plaintiffs do not—and could not—argue that the Court was *required* to address this issue. "As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976). In fact, courts routinely decline to address procedural APA challenges after vacating an action on the ground that it is arbitrary and capricious. *In re Surface Min. Regulation Litigation*, 627 F.2d 1346, 1360 n.16 (D.C. Cir. 1980) ("We need not address this procedural challenge because of our determination that the disputed interim regulation itself is without support in the record and therefore arbitrary and capricious."); *see also, e.g., Cigar Ass'n of Am. v. U.S. FDA*, 436 F. Supp.

<div align="center">14</div>

3d 70, 83 n.7 (D.D.C. 2020); *Nio v. U.S. DHS*, 385 F. Supp. 3d 44, 60 (D.D.C. 2019); *Nat. Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, No. 01 Civ. 274 (JR), 2007 WL 259944, at \*3 n.5 (D.D.C. Jan. 30, 2007).  This practice accords with the principle that it is "inadvisable . . . to reach out . . . to pass on important questions . . . when simpler, and more settled, grounds are available for deciding the case at hand."  *Anderson v. United States*, 417 U.S. 211, 218 (1976).

Instead, Plaintiffs effectively argue that the Court *should* rule on their notice-and-comment claims.  But their notice-and-comment claims were before the Court when it decided Plaintiffs' motion for summary judgment and the Court's order did not invite a request for reconsideration. *See* Dkt. No. 124 at 14 ("[T]he parties shall confer and submit a joint letter addressing whether there is need or basis for additional *remedies . . . .*") (emphasis added).  Moreover, Plaintiffs fail to explain how their request meets the standard for obtaining reconsideration.  *See Pouncy v. Advanced Focus LLC*, No. 15 Civ. 6260 (JMF), 2018 WL 1831845, at \*1 (S.D.N.Y. Apr. 16, 2018) ("Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3").  Plaintiffs do not suggest, for example, that the Court overlooked their notice-and-comment arguments.  *Cf.* Local Civil Rule 6.3 ("There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.").  Nor have Plaintiffs argued that reconsideration is necessary "to correct a clear error or prevent manifest injustice."  *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quotation marks omitted).

The interests Plaintiffs identify to support their argument that the Court should now rule on their notice-and-comment claims are plainly insufficient to justify reconsideration of the Court's decision.  Plaintiffs argue that judicial economy supports addressing their claim because doing so "will eliminate the need for likely duplicative litigation in the future."  Dkt. No. 129 at

11.  But this theory is dependent on Plaintiffs' speculation that DHS will enact a new policy so similar to the TTP Decision that a ruling now would be dispositive of the issues presented in that later challenge.  Far from supporting judicial economy, Plaintiffs' request risks a ruling that may ultimately prove to be advisory.  *Cf. Ass'n of Mexican-American Educators v. State of Calif.*, 231 F.3d 572, 590 (9th Cir. 2000) (en banc) ("declin[ing] to issue an advisory opinion" on an issue not necessary to the court's decision).

Plaintiffs' second argument—that "Defendants will be free to again deviate from the proper procedure" and violate the values supported by the APA absent a ruling on their notice-and-comment claim—suffers from the same speculation.  Should DHS enact a new policy related to the use of DMV records in TTP vetting, that policy will be subject to challenge under the APA according to its own terms.  As previously noted, Plaintiffs "will have ample opportunity to challenge" any new policy and "seek appropriate preliminary relief" should a new policy related to DMV records be adopted.  *Monsanto*, 561 U.S. at 164.  Neither interest carries the "heavy burden" to justify alteration of the Court's summary judgment ruling.  *Bell v. Stephens*, No. 05 Civ. 7182 (LTS), 2007 WL 1098713, at *1 (S.D.N.Y. Apr. 11, 2007).

The infirmity of Plaintiffs' request is heightened by the nature of the relief they seek—an injunction that DHS shall not, without undergoing notice and comment rulemaking, "alter application requirements for TTPs," Dkt. No. 129 at 7; "amend[] the TTP eligibility requirements," *id.* at 10; or "amend[] the TTP regulations," *id.* at 10.  These requests do not "give notice of the specific conduct ordered or prohibited," as is required by Rule 65(d).  *Patsy's Italian Restaurant, Inc.*, 658 F.3d at 263.  And for many of the same reasons discussed above, they are not "narrowly tailored to fit specific legal violations."  *Waldman Pub. Corp.*, 43 F.3d at 785.  Namely, Plaintiffs

do not even purport to limit the relief they seek to a policy regarding the use of DMV records in TTP vetting, the subject of this litigation.

<p style="text-align:center">* * *</p>

In July, DHS admitted that the TTP Decision had been issued based on an inaccurate understanding of the facts. Dkt. No. 89. The Court issued an opinion at summary judgment that addressed necessary jurisdictional issues before vacating the TTP Decision as arbitrary and capricious for reasons consistent with DHS's admissions. This course of action was consistent with the Supreme Court's guidance that it is "inadvisable . . . to reach out . . . to pass on important questions . . . when simpler, and more settled, grounds are available for deciding the case at hand." *Anderson*, 417 U.S. at 218. Plaintiffs present no reason for the Court to reconsider its summary judgment ruling and their request for a ruling on their notice-and-comment claim should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a permanent injunction should be denied.

Dated: December 7, 2020
      New York, NY

<div style="margin-left:40%">

Respectfully,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:   /s/ Zachary Bannon
      ZACHARY BANNON
      ELIZABETH J. KIM
      CHRISTOPHER CONNOLLY
      Assistant United States Attorneys
      86 Chambers St. 3rd Floor
      New York, New York 10007
      Tel.:    212-637-2728, 2745, 2761
      Fax:    212-637-2717
      E-mail: Zachary.Bannon@usdoj.gov
             Elizabeth.Kim@usdoj.gov
             Christopher.Connolly@usdoj.gov

</div>

<p style="text-align:center">17</p>