UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CHAD F. WOLF, et al.,<br><br>　　　　　　　　Defendants. | No. 20 Civ. 1127 (JMF) |
| R. L'HEUREUX LEWIS-MCCOY, et al., on behalf of themselves and all similarly situated individuals,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CHAD WOLF, et al.,<br><br>　　　　　　　　Defendants. | No. 20 Civ. 1142 (JMF) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW SUPPORTING THEIR JOINT MOTION FOR INJUNCTIVE RELIEF**

LETITIA JAMES
*Attorney General of the State of New York*

Daniela L. Nogueira
Matthew Colangelo
Elena Goldstein
28 Liberty Street
Office of the New York Attorney General
New York, New York 10005
Phone: (212) 416-6057
daniela.nogueira@ag.ny.gov

*Counsel for Plaintiff in 20 Civ. 1127*

NEW YORK CIVIL LIBERTIES FOUNDATION

Antony P.F. Gemmell
Molly K. Biklen
Jessica Perry
Jordan Laris Cohen
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, New York 10004
212-607-3300
agemmell@nyclu.org

*Counsel for Plaintiffs in 20 Civ. 1142*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.     The Court should enjoin Defendants from reintroducing the Ban. ..................................... 1

         A.     Plaintiffs are entitled to injunctive relief. .............................................................. 1

         B.     An injunction would serve an important function. ................................................ 3

         C.     The injunction Plaintiffs seek is not overbroad. ..................................................... 5

II.    The Court should reach Plaintiffs' notice-and-comment claim in order to craft the most appropriate injunction. ........................................................................................................ 7

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases** ................................................................................................................................ Page(s)

*Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG), 2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020) .. 3

*Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG), 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020) . 3, 5

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ....................................... 10

*DiMaio v. Wolf*, No. 20 Civ. 445 (RJL)  (D.D.C. Aug. 25, 2020) .............................................. 4, 6

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .............................................................. 1

*Immigrant Def. Project v. U.S. Immigration & Customs Enf't*, No. 14 Civ. 6117 (JPO), 2017 WL 2126839 (S.D.N.Y. May 16, 2017) .......................................................................................... 9

*Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67 (2d Cir. 1996) ..................................................... 1

*Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012) ............... 9

*McComb v. Jacksonville Paper Co.*, 336 U.S 187 (1943) .............................................................. 7

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .................................................... 3, 5

*New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), *aff'd in relevant part*, 139 S. Ct. 2551 (2019) ............................................................................................ 2, 3, 5

*N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426 (1941) ...................................................................... 6

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41 (2d Cir. 1996) ....................................................... 7

*Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308 (S.D.N.Y. 2018) ................................................................................................................. 2

*Scott v. Rock*, No. 10 Civ. 5989 (SLT), 2013 WL 12416154 (E.D.N.Y. May 20, 2013) ............... 8

*SEC v. Capital Growth Co., S.A. (Costa Rica)*, 391 F. Supp. 593 (S.D.N.Y. 1974) ...................... 2

*SEC v. Culpepper*, 270 F.2d 241 (2d Cir. 1959) ............................................................................ 2

*State St. Glob. Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435 (S.D.N.Y. 2020) ........................ 8

*Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 (2d Cir. 1994).............................................. 6, 7

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ........................... 9

*Williams v. County of Nassau*, 779 F. Supp. 2d 276 (E.D.N.Y. 2011)........................................... 9

*Wong Yang Sung v. McGrath*, 339 U.S. 33, *modified*, 339 U.S. 908 (1950)................................ 10

**Other Authorities**

*Examining DHS' Management of Trusted Traveler Programs: Hearing Before the H. Comm. on Homeland Sec.*, 116th Cong. 1 (Sept. 30, 2020).......................................................................... 4

iii

**INTRODUCTION**

At virtually no point in this almost year-long litigation have Defendants ever known which states and territories provide them DMV records. As recently as one month ago, they still did not know. But despite the ever-expanding list of states and territories that—like New York—do not share DMV records with either the NLETS database or CBP, Defendants continue, even now, to claim those records are "important to the TTP vetting process." Defendants' extraordinary conduct in this litigation gives every reason to think they will continue clinging to that fiction as a means to reinstate the Ban. Accordingly, Defendants should be enjoined to remedy the defects this Court held underlay the original Ban and to follow the APA's notice-and-comment requirements.

**ARGUMENT**

**I.    The Court should enjoin Defendants from reintroducing the Ban.**

**A.    Plaintiffs are entitled to injunctive relief.**

Plaintiffs satisfy the traditional factors for granting a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); ECF No. 129, at 5–6 ("Pls.' Mem."). Defendants contend Plaintiffs have sustained no irreparable injury from the Ban. ECF No. 135, at 12–13 ("Defs.' Opp."). But irreparable injury is that "for which a monetary award cannot be adequate compensation," *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996), and Defendants themselves already conceded the Ban subjected Plaintiffs to precisely such injury, *see* ECF No. 121, at 1 & n.2 ("Defs.' Oct. 8 Ltr.") (describing applications that cannot be restored to TTP portal). There is no reason to think a new iteration of the Ban would not cause the same injury again.

Nor is there any genuine dispute of material fact that the Ban caused New York both competitive injuries and sovereign harm, and would do so again if reinstated. Pls.' Mem. at 5–6;

1

ECF No. 124, at 10 (noting that Plaintiffs' motion for summary judgment was unopposed); *see Planned Parenthood of N.Y.C., Inc.*, *v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 342–43 (S.D.N.Y. 2018); *SEC v. Capital Growth Co., S.A. (Costa Rica)*, 391 F. Supp. 593, 598 (S.D.N.Y. 1974) ("[A] reasonable likelihood of future violations and thus a likelihood of irreparable harm . . . may be inferred from these past violations even if defendants have ceased their prior illegal activities.") (citing *SEC v. Culpepper*, 270 F.2d 241, 245 (2d Cir. 1959)). Defendants protest that Plaintiffs supported their showing of irreparable harm in part on the allegations in their complaints and legal arguments opposing Defendants' motion to dismiss. Defs.' Opp. at 13. But Defendants *unilaterally withdrew* their motion to dismiss, motion for summary judgment, and all materials submitted in support of those motions. ECF No. 89, at 1 ("Defs.' July 23 Ltr."). Having affirmatively abandoned any effort to contest the sufficiency of the allegations in Plaintiffs' complaints, Defendants should not now be heard to oppose Plaintiffs' reliance on those uncontested allegations.[1]

      Defendants also contend Plaintiffs have not established that the balance of hardships weighs in their favor. Defendants acknowledge that "there is generally no public interest in the perpetuation of unlawful agency action." Defs.' Mem. at 13 (quoting *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 676 (S.D.N.Y. 2019), *aff'd in relevant part*, 139 S. Ct. 2551 (2019)). Nonetheless, they claim that there is no "reasonable concern" about the "perpetuation of unlawful agency action" because DHS rescinded the Ban and admitted it was "not legally supportable." Defs.' Mem. at 13. But in the same breath, Defendants continue to insist that "DMV records are important to the TTP vetting process," *id.* at 7, despite the growing list of

---

[1] To the extent the Court disagrees, Plaintiffs contend that post-judgment discovery would be appropriate.

jurisdictions that Defendants now concede do not share DMV data.  *See* ECF No. 130 (American Samoa and the Commonwealth of the Northern Mariana Islands); ECF No. 113-1 at ¶ 18 (six states, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands).  And— adjourned only by the agency's voluntary stay pending disposition of this motion—CBP "is continuing to evaluate the means by which it can obtain DMV information in order to vet all Trusted Traveler Program applicants."[2]  ECF No. 110.  The balance of hardships tips decidedly in Plaintiffs' favor.

### B.     An injunction would serve an important function.

A permanent injunction is also appropriate because it would have a "meaningful practical effect independent of . . . vacatur," namely, preventing Defendants from re-instituting a ban on New Yorkers' enrollment in the Trusted Traveler programs "*without* curing the problems identified in [the Court's summary judgment opinion]."  *Dep't of Commerce*, 351 F. Supp. 3d at 676 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).

Here, as in *Department of Commerce*, an injunction would prevent the agency from taking the same action in a manner which the Court has held to be unlawful.  Defendants contend there is "no risk that DHS will reinstate its decision by simply re-issuing its letter under a new

---

[2] Just weeks ago, DHS attempted to reinstate an unlawful agency action mere hours after it was invalidated by a federal district court.  On November 14, the Eastern District of New York held that DHS's July 2020 efforts to change the DACA program were unlawful because Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security when he issued the changes, and because Mr. Wolf lacked authority to ratify any of his former actions after the fact.  *See Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG), 2020 WL 6695076, at *1, *8–9 (E.D.N.Y. Nov. 14, 2020).  DHS, "undeterred, issued yet another 'Succession Order' just hours after the court issued its opinion on November 14, and Mr. Wolf once again attempted to ratify his prior actions as Acting Secretary on November 16.  Of course, for the exact same reasons, those documents have no legal significance."  *Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG), 2020 WL 7121849, at *1 n.2 (E.D.N.Y. Dec. 4, 2020) (citations omitted).  It is thus far from fanciful—particularly in light of CBP's professed intentions in this case—to believe the agency may try again here unless enjoined.

date or by changing it in some immaterial way." Defs.' Opp. at 10 (internal quotation marks and alterations omitted).³ But as Defendants' brief only makes clearer, there is a substantial risk Defendants will reinstitute a TTP ban based on an applicant's or their state's provision of DMV information—contrary to or without considering evidence regarding the extent to which such information is available in other foreign and domestic jurisdictions or is in fact necessary for TTP vetting. *See, e.g.*, Defs.' Opp. at 6–7 ("DHS has continuously maintained that DMV records are important to the TTP vetting process."). An injunction would thus have the effect of preventing DHS from irrationally imposing a DMV information requirement that would have the same adverse impact on New Yorkers as the TTP Ban.

Defendants incorrectly suggest that this Court in *Department of Commerce* established a two-part test for whether an injunction would have a practical effect independent of vacatur, requiring both that an injunction prevent the defendant from reinstituting the same decision and that some "exigency" such as a "looming deadline" make it necessary for the plaintiff to seek immediate recourse from the court through the enforcement of an injunction. Defs.' Opp. at 11. While the Court concluded that an injunction would have a practical effect for each of those two reasons, it did not indicate both reasons were *necessary* for its conclusion, much less required in

---

³ Defendants assert that an agreement in a similar case in the District Court for the District of Columbia would prevent DHS from reimposing a similar ban against New Yorkers. Defs.' Mem. at 10–11 (citing Settlement Agreement, ECF No. 30-2 at 3 ¶ 2, *DiMaio v. Wolf*, No. 20 Civ. 445 (RJL), (D.D.C. Aug. 25, 2020) ("*DiMaio* Agreement"). While the agreement prevents Defendants from restricting TTP participation based on "New York's *refusal*, as described in the [Ban], to provide Defendants with access to New York State DMV records," *DiMaio* Settlement Agreement at 3 ¶ 2 (emphasis added), that language might permit Defendants to restrict such participation based on the unavailability of DMV information (rather than termination of previous access) from states including New York—a distinction that Deputy Commissioner Perez made in his testimony before the House Committee on Homeland Security regarding the Ban. *See Examining DHS' Management of Trusted Traveler Programs: Hearing Before the H. Comm. on Homeland Sec.*, 116th Cong. 1 (Sept. 30, 2020).

every APA case for an injunction to issue. *See Dep't of Commerce*, 351 F. Supp. 3d at 676. Indeed, as the Court noted, the Supreme Court in *Monsanto* admonished only "that a district court vacating agency action under the APA should not grant an injunction if doing so would 'not have *any* meaningful practical effect independent of its vacatur.'" *Id.* (quoting *Monsanto*, 561 U.S. at 165) (emphasis added).

### C. The injunction Plaintiffs seek is not overbroad.

Also meritless is Defendants' claim that Plaintiffs' request for injunctive relief is overbroad. The injunction Plaintiffs seek is narrowly tailored to fit Defendants' legal violations and makes clear what Defendants must do to comply with its terms.

Defendants mischaracterize the injunction Plaintiffs have requested, suggesting that Plaintiffs seek a categorical prohibition on the consideration of DMV records. Defs.' Opp. at 6. But setting aside the accuracy of Defendants' claim that "DMV records are important to the TTP vetting process," *id.* at 7,[4] they exaggerate the scope of the injunction Plaintiffs seek. Plaintiffs' proposed injunction would *not* bar Defendants ever from requiring or reevaluating whether to require DMV records; instead, it would require only that Defendants first "consider[] all important aspects of the problem and make[] a decision consistent with the evidence . . . ." Pls.' Mem. at 10. Nothing prevents Defendants from taking these baseline steps, which distinguishes this case from *Monsanto*. *See* 561 U.S. at 159–64 (vacating an injunction that *entirely* barred even a partial deregulation of a pesticide-resistant alfalfa in response to an APA challenge to the total deregulation of that product). Plaintiffs' tailored proposal closely tracks the specific legal violations this Court identified. *See Batalla Vidal*, 2020 WL 7121849, at *2 (ordering narrow

---

[4] The continued disclosures that CBP has not known—and perhaps still does not know—which states and territories provide DMV records calls into question the importance of those records in TTP vetting. *See* ECF No. 130; ECF No. 113-1 at ¶ 18.

5

injunctive relief in an APA challenge to cure Defendants' unlawful conduct).

Defendants also contend Plaintiffs' requested injunction is insufficiently tailored in geographic scope because it would apply beyond New York. But in emphasizing that the Ban "only affected New York residents based on a New York law," Defs.' Opp. at 8, Defendants invite an unduly cramped view of the defects this Court identified in the Ban. While the Ban was limited to New York by its terms, its underlying rationale—Defendants' false claim that DMV records are important to TTP vetting—is not, and could be deployed in any number of future iterations of the Ban whether or not those iterations target New York alone. Defendants do not explain why this Court should ignore the longstanding, "salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts," *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 436 (1941), and the Court should reject Defendants' argument accordingly. *See also Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 (2d Cir. 1994) ("The decree [a permanent injunction] need not be so precise as to predict exactly what [the defendant] will think of next.") (internal quotation marks and citation omitted)).[5]

Defendants further claim an injunction requiring them to cure several specific defects in

---

[5] Defendants contend that the Green Light Law Amendment has not been implemented, arguing that the "New York DMV has informed DHS that it has not yet received clearance to resume the provision of information." Defs.' Opp. at 6 n.6. But the status of discussions between DHS and the New York DMV over whether DHS has met statutory conditions to trigger the amendment is entirely beside the point. By Defendants' own agreement, implementation of the Green Light Law Amendment has nothing to do with whether New York residents may enroll or re-enroll in Trusted Traveler programs: In related litigation in the District Court for the District of Columbia, DHS filed a settlement agreement just a few days ago that provides, "Defendants shall not prohibit residents of New York from participating in Global Entry and other Trusted Traveler Programs on the basis of New York's refusal, as described in the February 5 Letter, to provide Defendants with access to New York State DMV records." Am. Settlement Agreement, *DiMaio*, No. 20-CV-445 (RJL), ECF No. 36-1 at 3 ¶ 2, (D.D.C. filed Dec. 11, 2020).

their decision-making before reinstituting a TTP ban does not suffice to "put DHS on notice of the manner in which it would be permanently enjoined." Defs.' Opp. at 9. But that claim fails in view of the Court's summary judgment decision in this case, which articulates with particularity the specific deficiencies in Defendants' implementation of the Ban. *See generally* ECF No. 124. Defendants note that "an injunction must be more specific than a simple command that the defendant obey the law." Defs.' Opp. at 9. (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)). But it is equally true that "an injunction that follows the language of the statute may be appropriate . . . where the context clarifies the scope . . . ." *Sterling Drug*, 14 F.3d at 748; *see also McComb v. Jacksonville Paper Co.*, 336 U.S 187, 192 (1943) ("Decrees of that generality [enjoining future statutory violations] are often necessary . . . where a proclivity for unlawful conduct has been shown."). Such is the case here. Unlike the injunction at issue in *Peregrine Myanmar*, this is decidedly *not* a case in which "it will be impossible for [DHS] . . . to know in advance" what conduct violates the injunction Plaintiffs seek. 89 F.3d at 51 (partially vacating injunction barring litigant, a non-lawyer, from threatening "spurious" lawsuits). Whatever may be said about Defendants' administrative decision-making, they are presumably capable of understanding on what basis the Court found the Ban unlawful— not least because that finding flowed directly from their own admission to the same effect. *See* ECF No. 124 at 12 ("In short, Defendants themselves now acknowledge that the TTP decision . . . 'is not legally supportable.'") (quoting Defs.' July 28 Ltr. 2)).

II.     **The Court should reach Plaintiffs' notice-and-comment claim in order to craft the most appropriate injunction.**

Contrary to Defendants' assertions, Defs.' Opp. at 14–17, Plaintiffs' motion for injunctive relief is not a request for reconsideration. At the Court's invitation, ECF No. 124, at 13–14, Plaintiffs seek "additional remedies," *id.* at 14, some of which would require the Court to

7

reach the merits on a fully briefed question that the Court has not previously addressed, *see* Pls.' Mem. at 7–9. Plaintiffs have not asked the Court to revisit a legal question it has already decided or offered new arguments on a question that the Court has fully considered. As there is nothing for the Court to consider anew, it should not construe Plaintiffs' motion as one for reconsideration. *Cf. Scott v. Rock*, No. 10 Civ. 5989 (SLT), 2013 WL 12416154, at *2 (E.D.N.Y. May 20, 2013) (declining to construe a motion for a stay and abeyance as a motion for reconsideration despite multiple references to "reconsideration").

      Defendants emphasize that Plaintiffs' "notice-and-comment claims were before the Court when it decided Plaintiffs' motion for summary judgment," Defs.' Opp. at 15, but Plaintiffs could not have foreseen at the time they originally briefed their notice-and-comment claim that it would be important to their remedy. When Plaintiffs filed their cross-motion for partial summary judgment, ECF No. 79, they could not have predicted that (1) Defendants would later admit the Ban was "not legally supportable," ECF No. 90, at 2, rescind the Ban, and withdraw their motions to dismiss and for partial summary judgment, ECF No. 89; (2) as a result, the Court would consider Plaintiffs' cross-motion for partial summary judgment unopposed, with little apparent reason to reach all claims; and (3) despite these developments, Defendants would continue—repeatedly, for months, both in legal documents and sworn testimony before Congress, *see* Pls.' Mem. at 3–4—to express their intention to reinstate some form of the Ban if not given access to DMV data. In such circumstances, Plaintiffs' motion should not be construed as one for reconsideration. *See State St. Glob. Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 441 n.3 (S.D.N.Y. 2020) (declining to construe motion as one for reconsideration because movant "may not have foreseen . . . [what] would play a decisive role in the Court's decision").

Even if Plaintiffs' motion for injunctive relief could be so construed, reconsideration is appropriate. "Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and internal quotation marks omitted).

Here, as noted above, the factual circumstances have changed dramatically since Plaintiffs filed their cross-motion for partial summary judgment in July. Plaintiffs' motion sets out these new facts and explains why the Court should use its broad equitable powers to prevent Defendants from rewriting TTP application requirements without going through notice-and-comment rulemaking. As such, Plaintiffs easily meet the standard for a motion for reconsideration. *See Immigrant Def. Project v. U.S. Immigration & Customs Enf't*, No. 14 Civ. 6117 (JPO), 2017 WL 2126839, at *2 (S.D.N.Y. May 16, 2017) (if "data was not available . . . at the time of the earlier motion for partial summary judgment, all the more reason that the Court should consider this information to be 'new evidence' and entertain a motion to reconsider"). Reaching Plaintiffs' notice-and-comment claim is warranted to account for these new circumstances, which will not only serve the interests of justice, but also give the APA effect and preserve judicial resources. *See* Pls.' Mem. at 7–9; *Immigrant Def. Project*, 2017 WL 2126839, at *3 (finding "that this situation is one where reconsideration based on the 'availability of new evidence' is warranted in order to prevent 'manifest injustice'"); *cf. Williams v. County of Nassau*, 779 F. Supp. 2d 276, 280 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal.").

Defendants contend that Plaintiffs are only speculating as to what Defendants will do and, regardless, "will have ample opportunity to challenge" any new policy under the APA and "seek appropriate relief." Defs.' Opp. at 15–16. Any argument painting Plaintiffs' fears of future federal action as speculative are meritless, however. Defendants have repeatedly made their intentions clear, in both formal and informal fora. *See* Pls.' Mem. at 3–4.

Similarly, the argument that Plaintiffs "will have ample to opportunity to challenge" a new policy without an injunction requiring notice-and-comment rulemaking is baseless. Indeed, Defendants announced the Ban without giving Plaintiffs any opportunity, much less "ample" opportunity, to challenge it before it went into effect and caused harm to New York and its residents. Plaintiffs then proceeded to spend six months litigating the Ban before Defendants finally admitted it was unlawfully predicated on false statements—a result this Court found "hard to imagine . . . but for the 'thorough, probing, [and] in-depth review' that they faced by virtue of Plaintiffs' lawsuits." *See* ECF No. 124, at 13 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)).

Given Defendants' repeated statements of their intention to instate a new DMV data policy, *see* Pls.' Mem. at 3–4, an injunction against imposing new DMV data requirements on states or applicants without notice-and-comment is the best means of ensuring that both Plaintiffs and the courts do not have to waste resources on another affront to the APA. Such an injunction would be neither vague, *see supra* Part I.C, nor unwarranted, but critical to crafting specific, narrowly tailored relief from the exact evil the APA was enacted to prevent, *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 41, *modified*, 339 U.S. 908 (1950).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their request for a permanent injunction.

DATED:  December 14, 2020            Respectfully submitted,

| | |
|---|---|
| LETITIA JAMES<br>Attorney General of the State of New York | NEW YORK CIVIL LIBERTIES<br>   FOUNDATION |
| By: */s/ Daniela L. Nogueira*<br>Daniela L. Nogueira<br>Matthew Colangelo<br>Elena Goldstein<br>Office of the New York State Attorney General<br>28 Liberty Street<br>New York, NY 10005<br>Phone: (212) 416-6057<br>daniela.nogueira@ag.ny.gov | By: */s/ Antony P.F. Gemmell*<br>Antony P.F. Gemmell<br>Molly K. Biklen<br>Jessica Perry<br>Jordan Laris Cohen<br>Christopher T. Dunn<br>125 Broad Street, 19th Floor<br>New York, NY 10004<br>Phone: (212) 607-3300<br>agemmell@nyclu.org |
| Attorneys for the Plaintiff in 20 Civ. 1127 | Attorneys for the Plaintiffs in 20 Civ. 1142 |